**CLAUDIA M. QUINTANA**
City Attorney, SBN 178613
**BY:  TIMOTHY R. SMYTH**
Deputy City Attorney, SBN 258661
**CITY OF VALLEJO**, City Hall
555 Santa Clara Street, P.O. Box 3068
Vallejo, CA  94590
Tel:     (707) 648-4545
Fax:     (707) 648-4687
Email: timothy.smyth@cityofvallejo.net

Attorneys for Defendants, CITY OF VALLEJO,
ROBERT HERNDON, JAMES MELVILLE, and JOSEPH COELHO

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| JASON ANDERSON,<br><br>              Plaintiff,<br><br>       vs.<br><br>CITY OF VALLEJO, a municipal corporation; ROBERT HERNDON, individually and in his capacity as a Police Corporal for the Vallejo Police Department, individually and in his capacity as a Police Corporal for the Vallejo Police Department; JAMES MELVILLE, individually and in his capacity as a Officer for the Vallejo Police Department; JOSEPH COELHO, individually and in his capacity as a Officer for the Vallejo Police Department; and DOES 1-50, inclusive, individually, jointly and severally**,**<br><br>              Defendants. | Case No.  2:17-cv-00137-JAM-DB<br><br>**DEFENDANTS CITY OF VALLEJO, OFFICERS HERNDON, MELVILLE AND COELHO MEMORANDUM OF POINTS OF AUTHORIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**<br><br>DATE:              September 10, 2019<br>TIME:              1:30 p.m.<br>CRTRM:          6, 14th Floor<br><br>TRIAL DATE:      December 2, 2019 |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   STANDARD FOR SUMMARY JUDGMENT ..................................................... 1

III.  STATEMENT OF FACTS ........................................................................ 3

IV.   ARGUMENT ...................................................................................... 6

    A.    QUALIFIED IMMUNITY MANDATES SUMMARY JUDGMENT ON
    PLAINTIFF'S SECTION 1983 CLAIMS AGAINST DEFENDANT OFFICERS
    HERNDON, COELHO, AND MELVILLE ....................................................... 6

    B.    PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION FAIL AS
    DEFENDANTS HAD PROBABLE CAUSE TO EFFECTUATE A TRAFFIC STOP
    AND ARREST OF PLAINTIFF. .................................................................. 8

    C.    PLAINTIFF'S 1983 CLAIM FOR EXCESSIVE FORCE FAILS AS THE
    DEFENDANT OFFICERS' USE OF FORCE WAS REASONABLE UNDER THE
    TOTALITY OF THE CIRCUMSTANCES AND THERE IS NO CLEARLY
    ESTABLISHED LAW TO PUT THEM ON NOTICE THAT THEIR RESPECTIVE
    CONDUCT WOULD VIOLATE THE CONSTITUTION ........................................ 11

V.  CONCLUSION ..................................................................................... 25

# **TABLE OF AUTHORITIES**

## Cases

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Austen v. City of Los Angeles*, , 2017 U.S. Dist. LEXIS 57006 at *2 (C.D. Cal. 2017) . . . . . . . . . . . . . . . . . 21

*Board of the County Comm'rs v. Brown*, 520 U.S. 397 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 ( 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*City and Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*City of L.A. v. Heller*, 475 U.S. 796, 106 S. Ct. 1571 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Columbia v. Wesby*, 138 S.Ct. 577 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6,  8,  11,  16

*Cornell v. City & Cty. of S.F.*, 17 Cal. App. 5th 766, 225 Cal. Rptr. 3d 356 (Ct. App. 2017) . . . . . . . . . . . . . 23

*Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Devereaux v. Abby*, 263 F.3d 1070 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Dubner v. City & Cty. of S.F.*, 266 F.3d 959 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Easley v. City of Riverside*, 890 F.3d 851 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Delaware v. Prouse*, 440 U.S. 648 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Elliot v. Leavitt*, 99 F.3d 640 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Estate of Elkins v. California Highway Patrol*, 2016 WL 3648944 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Estate of Larsen v. Murr*, 511 F.3d 1255 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Felarca v. Birgeneau*, 891 F.3d. 809 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6,  16

*Flores v. County of L.A.*, 758 F.3d 1154 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Gant v. County of Los Angeles*, 765 F.Supp.2d 1238 (C.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Garcia v. United States*, 2018 WL 1448744 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Garrison v. Burke*, 165 F.3d 565 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Case No. 2:17-cv-00137-JAM-DB**                    **DEFENDANTS' MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT OF MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

**-ii-**

1    *Gibson v. County of Washoe*, 290 F.3d 1175 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

2    *Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

3    *Graham v Connor*, 490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

4    *Hamby v. Hammond*, 821 F.3d 1085 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

5    *Horstman v. City of Hillsboro*, 2018 WL 1736046 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

6    *Hunter v. Bryant*, 502 U.S. 224 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

7    *Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

8    *Keyes v. Washington County Land Use and Transportation*, 2017 U.S. Dist. LEXIS 127029 . . . . . . . . . . .   20

9    *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

10   *Kisela v. Hughes*, 138 S.Ct. 1148 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 16

11   *Longoria v. Pinal Cty.*, 873 F.3d 699 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

12   *Losee v. City of Chico*, 738 Fed. Appx. 398, (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

13   *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

14   *Matsushita Elec. Industrial Co v. Zenith Radio Corp*, 475 US 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . .   2

15   *Mattos v. Agarano*, 661 F.3d 443 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

16   *McSherry v. City of Long Beach*, 584 F.3d 1129 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

17   *Messerschmidt v. Millender*, 132 S.Ct. 1235 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

18   *Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

19   *Pearson v. Callahan*, 555 U.S. 223 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

20   *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

21   *Plumhoff v.  Richard*, 134 S.Ct. 2012 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

22   *Pollard v. City of Columbus*, 780 F.3d 395 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

23   *Quintanilla v. City of Downey*, 84 F.3d 353 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

24   *Reese v. Cty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

25   *Ryburn v. Huff*, 132 S.Ct. 987 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

26   *S. B. v. Cty. of San Diego*, 864 F.3d 1010 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

27   *Saucier v. Katz*, 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

28   *Scott v. Harris*, 550 U.S. 372, 380 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 14

**Case No. 2:17-cv-00137-JAM-DB**                    **DEFENDANTS' MEMORANDUM OF POINTS AND**
                                                     **AUTHORITIES IN SUPPORT OF MOTION FOR**
                                                     **PARTIAL SUMMARY JUDGMENT**

*Severi v. County of Kern*, 2017 U.S. Dist. LEXIS 209613 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

*Sharp v. Cty. of Orange*, 871 F.3d. 901 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

*Shoyoye v. County of Los Angeles,* 203 Cal.App. 4th 947 (Cal. Ct. App. 2012) . . . . . . . . . . . . . . . . . . . . . . . 24

*Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Reese*, 2 F.3d 870 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Soriano*, 361 F.3d 494 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Van Ort v. Estate of Stanewich*, 92 F.3d 831 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Velarde v. Union City Police Dep't*, 2015 U.S. Dist. LEXIS 151935 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . 23

*Velazquez v. City of Long Beach*, 793 F.3d 1010 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Waggy v. Spokane County*, 594 F.3d 707 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*White v. Pauly*, 137 S. Ct. 548 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Whren v. United States*, 517 U.S. 806 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wilson ex rel. Bevard v. City of West Sacramento*, 2014 U.S. Dist. LEXIS 56013 . . . . . . . . . . . . . . . . . . . . . 21

## Statutes

42 U.S.C. Section 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 11, 18, 22, 23

California Civil Code Section 52.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 23, 24, 25

California Vehicle Code section 2800 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 15

California Vehicle Code section 34507.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 11

California Vehicle Code section 34601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## Rules

Federal Rules of Civil Procedures Rule 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Federal Rules of Civil Procedures Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

# I.  INTRODUCTION

Defendants City of Vallejo, Officer Joseph Coelho, Robert Herndon and James Melville ask the court here for summary judgment or, alternatively, partial summary judgment in their favor on plaintiff's eight (8) claims for relief in this action.  Defendants bring this motion for relief on the following grounds:

1.    *Plaintiff's First Cause of Action for Unlawful Detention and Second Cause of Action for Unlawful Seizure in Violation of the Fourth Amendment fail as a matter of law.*  There is no genuine issue of material fact that the officers had probable cause to effectuate a traffic stop, and consequently to arrest Plaintiff when he did not stop when prompted by the officers, and there was no clearly-established law to put the officers on notice that their actions may not be lawful.

2.    *Plaintiff's Third Cause Of Action For Violation Of Fourth Amendment – Excessive Force As To Each Defendant Fails As A Matter Of Law.*  There is no genuine issue of material fact that the force used by each respective officer involved was reasonable under the totality of the circumstances, and no clearly established law existed telling all reasonable officers that their respective actions were unlawful.

3.    *Plaintiff's Fourth Cause Of Action For Monell Against Defendant City Of Vallejo Fails As A Matter Of Law*. Respondeat superior cannot form the basis of municipal liability and there is no evidence of a policy, custom, or practice which caused a constitutional violation by the City of Vallejo, and no violation of plaintiff's constitutional rights can be shown.

4.    *Plaintiff's State Law Claims Fail As A Matter Of Law*.  Plaintiff cannot show the acts of the defendant officers were unreasonable, and Plaintiff's Fifth Cause Of Action for Violation of Civil Code Section 52.1 fails as Plaintiff cannot show the Defendants used force specifically intending to violate the Plaintiff's Fourth Amendment Rights.

# II.  STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as to all or any part of a claim shall be rendered if there is no genuine issue of material fact and the

---

Case No. 2:17-cv-00137-JAM-DB

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

-1-

moving party is entitled to judgment as a matter of law.  The Court may grant partial summary judgment against those claims which plaintiff has failed to provide evidence of a genuine issue of material fact.  *See* Fed. R. Civ. P. 56(a).  Material facts are those that affect the outcome of the case.  *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to material fact is considered "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  As the Supreme Court emphasized, "[w]hen the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts…where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* (*citing Matsushita Elec. Indus. Co v. Zenith Radio Corp.,* 475 US 574, 586-587 (1986)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Rule 56 does not require the moving party to negate the elements of the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  "[T]he moving party need only point out that there is an absence of evidence to support the non-moving party's case." *Devereaux v. Abby,* 263 F.3d 1070, 1076 (9th Cir. 2001) [internal quotations omitted].  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." .  Where a sufficient showing is not made, the moving party is entitled to judgment as a matter of law.  *Celotex, supra.* at 323.

As explained in detail below, Defendants have carried their burden under Rule 56(c) by demonstrating that Plaintiff cannot succeed on his claims at trial.  Plaintiff cannot produce

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

evidence to create a genuine issue of material fact as to the lawful nature of his arrest and force used to detain him as he relies solely on his self-serving account of events contrary to the physical evidence.  Further, as to the City of Vallejo, Plaintiff has produced no facts or evidence that the City of Vallejo caused a constitutional injury by a policy, custom or practice.

### III. STATEMENT OF FACTS

On June 9, 2015, Vallejo Police Officer James Melville was in full uniform on traffic patrol riding a fully marked police motorcycle equipped with emergency lights and sirens. (UMF No. 1).  On this day, Officer Coelho and Officer Herndon were each in full uniform on patrol driving a fully marked police cruiser equipped with emergency lights and sirens. (UMF No. 2).  On this day the Plaintiff was hauling the vehicles for his business Anderson Auto Transport, as a "motor carrier of property", which was licensed with the California Department of Transportation.  (UMF No. 4).  No license or trade information was displayed on the side of Plaintiff's vehicle on this day.  (UMF No. 5).

While on patrol riding on Sonoma Boulevard in the City of Vallejo, Officer Melville observed Plaintiff operating a commercial truck towing vehicles on a trailer without any business license information or trade name posted on the side of the truck, which is a violation of Vehicle Code section 34507.5.  (UMF No. 5).  Officer Melville pulled alongside the Plaintiff and ordered him to pull over to the side of the road through the window.  (UMF No. 6).  Plaintiff did not pull over, and a slow pursuit commenced.  (UMF No. 6).  Plaintiff did not pull over after Officer Melville ordered him to do so, so Officer Melville pulled behind Plaintiff and then requested backup over the dispatch radio for a failure to yield at the intersection of Arkansas Street and Sonoma Boulevard.  (UMF No. 7).

Approximately 36 seconds later, Officer Melville communicated the pursuit proceeding through the intersection of Nebraska Street and Sonoma Boulevard with the Plaintiff refusing to pull over.  (UMF No. 8).  Officer Melville activated his lights and sirens for the pursuit of Plaintiff for approximately 2 minutes, which can be clearly heard over the dispatch audio at the 0:53 mark.  (UMF No. 9)

Case No. 2:17-cv-00137-JAM-DB

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

Officer Herndon, identified on the dispatch audio as "2 Paul 2", arrived at approximately the 1:40 mark on the audio and positioned himself directly behind the Plaintiff.  (UMF No. 10). Officer Coelho, identified on the audio as "2 Paul 6", arrived at approximately the 1:56 mark on the audio and positioned himself behind Officer Herndon's cruiser in the pursuit. Officer Melville fell back on his motorcycle to the rear position behind Officer Coelho.  (UMF No. 11). The pursuit ended at approximately the 2:20 mark on the audio at 3400 Sonoma Boulevard.  This is approximately a half-mile away from the intersection of Arkansas Street and Sonoma Boulevard where Officer Melville originally radioed for backup.  (UMF No. 12).

After Plaintiff's truck came to a stop, he immediately exited from the driver's side of the vehicle. (UMF No. 17).  Within 20 seconds of the Officers pulling up, Plaintiff had began shouting at the Officers something to the effect of "let me do my job!"  This is captured on the audio at or about the 2:40 mark.  Officer Melville radioed to dispatch that he observed fighting at that time. (UMF No. 18).

Based on the fact Plaintiff had failed to yield to Officer Melville for a traffic stop, the fact Plaintiff had not yet been searched, and that an individual exiting his vehicle in a traffic stop is highly unusual in their respective experience and training, Officers Herndon and Coelho perceived Plaintiff to be a potential threat.  As such, each drew their firearm and ordered Plaintiff to show his hands and to stop moving.  (UMF No. 19).  Officers Herndon and Coelho observed Plaintiff continue on foot to the rear of his vehicle near a toolbox attached to his trailer.  He began positioning himself into a space between his truck and the attached trailer where the toolbox was located. (UMF No. 20).  Plaintiff then began to open the toolbox at the rear of his trailer.  At this time, Officers Herndon and Coelho again ordered Plaintiff to show his hands. (UMF No. 21).

Officers Herndon and Coelho then observed Plaintiff begin reaching into the toolbox. Around this time, Officer Herndon deployed his taser, striking the Plaintiff and causing him to fall to the ground. (UMF No. 22).  Plaintiff resisted the taser and it took a cycle of approximately 6 seconds for him to go down to the ground.  (UMF No. 23).  After Officer Herndon's taser completed its first cycle, Officers Herndon and Coelho ordered Plaintiff to roll over and place his

hands behind his back. However, the officers observed the Plaintiff appear to try getting back up. Officer Herndon then ran a short, 3-second cycle on the Plaintiff. (UMF No. 24). Officer Herndon manually stopped the taser from running a full five-second cycle so as to use only enough force to effectively stop Plaintiff from getting up. While this second cycle was running, Officer Herndon continued ordering Plaintiff to roll over and place his hands behind his back. (UMF No. 25).

At soon as the second cycle ended it appeared to Officer Herndon that Plaintiff again was attempting to get up and was not complying with his commands to roll over. He then ran a short, two-second cycle of my taser on Plaintiff. He again manually stopped the taser from running a full five-second cycle so as to use only enough force to effectively stop Plaintiff from getting up. (UMF No. 26). After this third cycle, Plaintiff placed his hands behind his back and Officer Coelho was able to place Plaintiff into handcuffs. (UMF No. 27). Officer Melville was not involved in handcuffing Plaintiff or placing him into custody. (UMF No. 13).

Approximately 20 seconds after Officer Melville's message that Plaintiff was fighting over the radio, Plaintiff was detained and in custody. As soon as Plaintiff was detained, Officer Coelho transmitted a message over the radio that Plaintiff was in custody. This was captured in the audio at the 2:59 mark. (UMF No. 14). After being placed into custody, Plaintiff was transported to Kaiser for medical clearance by Officer Coelho. Once cleared, Officer Coelho transported Plaintiff to the Vallejo Police Department. (UMF No. 15).

At the hospital, Plaintiff was diagnosed only with abrasions to his right anterior shoulder area where the taser prongs made contact. Plaintiff did not complain of pain or communicate any other force techniques used on his person to the treating physician. (UMF No. 28)

The "2011 Electronic Control Weapon Guidelines" relied upon as source material by Plaintiff's expert which specifies 52 specific guidelines, including the recommendations that a taser "should be used no more than three cycles that should not exceed 15 seconds total." (UMF No. 29). The Plaintiff's expert categorized Plaintiff under what Officers Herndon and Coelho described as "verbally resistive" within a category of "active resistance" within the force spectrum in the Learning Domain 20 materials used to train police officers. (UMF No. 31).

Upon review of the dispatch audio, Plaintiff's expert categorized the events between the Officers and Plaintiff as "rapidly evolving", and agreed that the factual account of the plaintiff "doesn't match the time of the encounter and the time to the tasing".  He also concluded it not likely Officer Coelho and Officer Melville used force aside from potentially drawing a service weapon on the Plaintiff.  (UMF No. 30).

Subsequent to his arrest, Plaintiff was not booked in County Jail, and his car was not towed by the defendant officers.  (UMF No. 16).

## IV. ARGUMENT

### A.   QUALIFIED IMMUNITY MANDATES SUMMARY JUDGMENT ON PLAINTIFF'S SECTION 1983 CLAIMS AGAINST DEFENDANT OFFICERS HERNDON, COELHO, AND MELVILLE

"[Q]ualified immunity is important to society as a whole and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quotation marks and citations omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1244 (2012) (quotation marks and citations omitted). Qualified immunity protects law enforcement officers from liability for "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Courts engage in a two-pronged analysis to determine whether qualified immunity applies: '[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.' " *Easley v. City of Riverside*, 890 F.3d 851, 856 (9th Cir. 2018) (quoting *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018). "A plaintiff must prove both steps of the inquiry to establish the officials are not entitled to immunity from the action." *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018).

In qualified immunity's two-step analysis "the Court considers only the facts that were knowable to the defendant." *White*, 137 S. Ct. at 550. The court first determines whether a violation of a constitutional right occurred. *Mattos v. Agarano*, 661 F.3d 443, 440 (9th Cir. 2011)

Case No. 2:17-cv-00137-JAM-DB

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

-6-

(en banc). If not, qualified immunity shields the officer from suit. If a constitutional violation did occur, the court next determines whether the "constitutional right was clearly established in light of the specific context of the case' at the time of the events in question" such that "its contours were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' [Citation]." *Id*. at 440, 442.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. While [the Supreme] Court's case law do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *White*, 137 S. Ct. at 551 (quotation marks and citations omitted); *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (per curiam); *Wesby*, 138 S.Ct. at 589-590. "[T]he fact-specific, highly contextualized nature of the [clearly established] inquiry does not depend on which particular constitutional right a given plaintiff claims the officials have violated." *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016).

The Supreme Court has repeatedly said that "[c]learly established" law may not be generally defined using broad constitutional principles regarding the use of force. *Kisela*, 584 U.S. at 1153; *Wesby*, 138 S.Ct. at 590; *White*, 137 S.Ct. at 551-552; *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam); *see Moonin v. Tice*, 868 F.3d 853, 868 (9th Cir. 2017) ("Broad principles ordinarily cannot constitute clearly established law. Rather, clearly established law must be particularized to the facts of the case.") (quotation marks and citation omitted). Thus, to be clearly established, "existing precedent [must have] placed the statutory or constitutional question beyond debate" under the "particularized' . . . facts of the case" and in light of the "particular conduct" of the officer. *White*, 137 S.Ct. at 552; *Wesby*, 583 U.S. at 590. Because "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law", *White*, 137 S.Ct. at 551, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 136 S. Ct. at 308 (emphasis added); *see Felarca*, 891 F.3d at 816 ("The Supreme Court

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

1  has repeatedly told courts ' not to define clearly established law at a high level of generality.'

2  [Citation].

3      Simply put, qualified immunity is an exacting and "demanding standard." *Wesby*, 138

4  S.Ct. at 589; *S. B. v. Cty. of San Diego*, 864 F.3d 1010, 1015, 1017 (9th Cir. 2017) (hearing the

5  Supreme Court "loud and clear" and recognizing qualified immunity's "exacting standards");

6  *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 792 (9th Cir. 2016) (en banc) (recognizing

7  qualified immunity's "exacting standards"); *see also Keates v. Koile*, 883 F.3d 1228, 1234-1235

8  (9th Cir. 2018) ("[D]efendants are entitled to qualified immunity so long as their conduct does

9  not violate clearly established statutory or constitutional rights of which a reasonable person

10  would have known. The Supreme Court has emphasized that *this is a low bar* ….).

11

12  **B.  PLAINTIFF'S  FIRST  AND  SECOND  CAUSES  OF  ACTION  FAIL  AS
    DEFENDANTS HAD PROBABLE CAUSE TO EFFECTUATE A TRAFFIC STOP**

13  **AND ARREST OF PLAINTIFF.**

14      In support of his first cause of action under 42 U.S.C. section 1983, Plaintiff alleges

15  Defendants lacked the requisite reasonable suspicion to detain him in violation of his Fourth

16  Amendment rights to be free from unreasonable searches and seizures. (Docket No.  8, 5:18-21).

17  As to his second cause of action also under 42 U.S.C. section 1983, Plaintiff alleges Defendants

18  lacked the requisite probable cause to arrest Plaintiff in violation of his Fourth amendment right

19  to be free from unreasonable searches and seizures. (Docket No. 8, 6:1-4).   Plaintiff lacks

20  evidence to support a cause of action under either theory.

21      **i.  The Undisputed Facts Prove Plaintiff Cannot Show A Constitutional
        Violation For An Unlawful Arrest Or Detention**

22

23      To prove a constitutional violation for a warrantless arrest, the Plaintiff must show that he

24  was arrested without probable cause.  Plaintiff bears the ultimate burden of proving that his arrest

25  was unlawful.  *Dubner v. City & Cty. of S.F.*, 266 F.3d 959 (9th Cir. 2001).  In the absence of a

26  warrant, "the burden shifts to the defendant to provide some evidence that the arresting officers

27  had probable cause for a warrantless arrest.  The plaintiff still has the ultimate burden of proof,

28  but the burden of production falls on the defendant."  *Id.* at 964.   Here, the evidence presented

---

Case No. 2:17-cv-00137-JAM-DB        **DEFENDANTS' MEMORANDUM OF POINTS AND
                                     AUTHORITIES IN SUPPORT OF MOTION FOR
                                     SUMMARY JUDGMENT, OR ALTERNATIVELY
                                     PARTIAL SUMMARY JUDGMENT**

demonstrates that defendants had probable cause to arrest Plaintiff, and Plaintiff cannot produce evidence creating a genuine dispute.

"Probable cause exists when there is a fair probability or substantial chance of criminal activity. The determination of probable cause is based upon the totality of the circumstances known to the officers at the time of the arrest." *Velazquez v. City of Long Beach*, 793 F.3d 1010 (9th Cir. 2015) citing *United States v. Soriano*, 361 F.3d 494, 505 (9th Cir. 2004). This analysis is performed against the elements of the crimes for which the person was arrested. *Id.* at 1018. Probable cause determination is an objective test; the officers' state of mind is irrelevant to the question of whether probable cause existed. *Whren v. United States*, 517 U.S. 806 (1996).

Plaintiff's Complaint offers conclusory allegations that Plaintiff "obeyed all traffic laws and did not commit any crimes or infractions." (Docket No. 8, 3:19 – 20, 22 - 23). However, the undisputable facts show that Officer Melville had reasonable suspicion that Plaintiff was in violation of Vehicle Code section 34507.5, and that Plaintiff violated Vehicle Code section 2800.1 by not stopping when prompted to do so by the officers.

Vehicle Code section 34507.5 provides:

> (a) A motor carrier, as defined in Section 408, a motor carrier of property, and a for-hire motor carrier of property, as defined in Section 34601, shall obtain a carrier identification number from the department…

> (b) The carrier identification number assigned to the motor carrier under whose operating authority or motor carrier permit the vehicle or combination of vehicles is being operated *shall be displayed on both sides of each vehicle*…

(*emphasis added*).

Plaintiff does not dispute he was conducting business in the City as a motor carrier of property as defined in Vehicle Code section 34601 on the day of the incident. (UMF No. 3.) He also does not dispute he had obtained a carrier identification number from the California Department of Motor Vehicles for his business. (UMF No. 3.) However, Plaintiff's vehicle did not display his carrier identification number on both sides of the vehicle as required by Vehicle Code section 34507.5. (UMF No. 4.) It is well established that an officer may stop a vehicle

Case No. 2:17-cv-00137-JAM-DB

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

-9-

when he has reasonable suspicion of a violation of the Vehicle Code. *Delaware v. Prouse,* 440 U.S. 648 (1979). Officer Melville observed Plaintiff operating a truck and trailer hauling cars and perceived Plaintiff to be violating the above-noted code section as a motor carrier of property. (UMF No. 5). For this reason, Officer Melville had reasonable suspicion to, at least, initiate a traffic stop.

It also follows then that the Defendant officers had the requisite probable cause to detain Plaintiff after he evaded the officers attempting to stop him for the traffic violation. Vehicle Code section 2800 provides:

> (a) Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor … if all of the following conditions exist:
>
> (1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp.
>
> (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary.
>
> (3) The peace officer's motor vehicle is distinctively marked.
>
> (4) The peace officer's motor vehicle is operated by a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, and that peace officer is wearing a distinctive uniform.

There is no genuine dispute that the facts here gave the Officers probable cause to arrest Plaintiff for violating section 2800 of the vehicle code. Officer Melville began pursuit of the Plaintiff operating a fully marked motorcycle while wearing his uniform. (UMF Nos. 1, 6.) Plaintiff did not pull over when prompted, and a pursuit commenced. (UMF No. 7.) This pursuit lasted over 2 minutes, 20 seconds, through multiple cross-streets, and approximately a half-mile traveling down Sonoma Boulevard in the City of Vallejo. (UMF Nos. 9, 12.) Officer Melville had his lights and sirens activated during the pursuit. (UMF No. 9.)

Based upon this set of facts, the defendant officers had probable cause to arrest the Plaintiff based upon their objectively reasonable belief he violated Vehicle Code section 2800.1

by failing to yield to lights and sirens. It is also true the undisputed facts reveal Plaintiff violated Vehicle Code section 34507.5, which justified the traffic stop by Officer Melville. Plaintiff cannot produce evidence to contradict the physical evidence in support of this motion. For these reasons, Plaintiff's detention and arrest were lawful and the First and Second causes of action must be dismissed as to all defendants.

> ii. **No Clearly Established Law Existed On June 9, 2015, Telling All Reasonable Officers That Attempting a Traffic Stop and Arresting Plaintiff Under these Facts Would Violate His Fourth Amendment Rights.**

It is Plaintiff's burden to show that the Defendant officers violated clearly established law. *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017). For this Court to not grant qualified immunity to Officer Melville, Herndon, and Coelho for detaining and arresting the Plaintiff, the Plaintiff here "must '*identify a case* where an officer acting under similar circumstances was held to have violated the Fourth Amendment' [Citation]." *Sharp v. Cty. of Orange*, 871 F.3d. 901, 911 (9th Cir. 2017); but see *Horstman v. City of Hillsboro*, 2018 WL 1736046, at *1 (9th Cir. Apr. 11, 2018) (unpub.) ("[T]he Supreme Court has recently cautioned against the 'reli[ance] on a single decision' in determining whether a constitutional right was clearly established by 'settled law.' *See District of Columbia v. Wesby*, [ ] 138 S.Ct. 577, 591, [ ] (2018).")

No case existed as of June 9, 2015, which would put all defendant officers on notice that arresting the Plaintiff here, under the specific facts of this case, constituted an unlawful detention and arrest in violation of his Fourth Amendment rights. As such, the Court should grant summary judgment to the Defendant Officers based upon qualified immunity here.

## C. PLAINTIFF'S 1983 CLAIM FOR EXCESSIVE FORCE FAILS AS THE DEFENDANT OFFICERS' USE OF FORCE WAS REASONABLE UNDER THE TOTALITY OF THE CIRCUMSTANCES AND THERE IS NO CLEARLY ESTABLISHED LAW TO PUT THEM ON NOTICE THAT THEIR RESPECTIVE CONDUCT WOULD VIOLATE THE CONSTITUTION

Plaintiff's Complaint alleges excessive force pursuant to 42 U.S.C. section 1983 against all Defendant Officers here as a violation of his Fourth Amendment rights. (Docket No. 8, 5:18-21). The Fourth Amendment permits "objectively reasonable" force. *Graham v Connor*, 490

Case No. 2:17-cv-00137-JAM-DB

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

**-11-**

U.S. 386, 396-397 (1989). On summary judgment, the question of whether an officer's use of force was objectively reasonable presents "a pure question of law." *Scott*, 550 U.S. at 381 n.8; *Plumhoff v. Richard*, 134 S.Ct. 2012, 2019 (2014). "[R]easonableness" is an objective inquiry, examined in light of the facts and circumstances confronting the officer without regard to intent or motivation requir[ing] a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396-397 (quotation marks and citations omitted).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Id.*; *Plumhoff*, 134 S.Ct. at 2020; *Ryburn v. Huff*, 132 S.Ct. 987, 992 (2012). "[T]he reasonableness of the officer's belief as to the appropriate level of force should be judged from that on- scene perspective" and courts are "cautioned against the '20/20 vision of hindsight' in favor of deference to the judgment of reasonable officers on the scene." *Saucier v. Katz*, 533 U.S. 194, 205 (2001); *see Ryburn*, 132 S.Ct. at 992 (lower court erred when concluding "[w]ith the benefit of hindsight and calm deliberation . . . that it was unreasonable for [the officers] to fear that violence was imminent"). Indeed, "[j]udges should be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." *Id* at 991-992. Thus, the "peace of a judge's chambers" cannot color the analysis, *Graham*, 490 U.S at 396, and courts are precluded from asking "whether another reasonable, or more reasonable, interpretation of the events can be constructed . . . after the fact." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam). "The Fourth Amendment standard is reasonableness, and it is reasonable for police to move quickly if delay 'would gravely endanger their lives or the lives of others' [citation] [,] even when, judged with the benefit of hindsight, the officers may have made 'some mistakes.' [Citation]. The Constitution is not blind to 'the fact that police officers are often forced to make split-second judgments.' [Citation]." *City and Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775 (2015).

Case No. 2:17-cv-00137-JAM-DB

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

**-12-**

A number of factors are involved in determining whether the force used was objectively reasonable, but whether the suspect posed an immediate threat to the safety of the officers or others is by far the most important. *George v. Morris*, 736 F.3d 829, 837-38 (9th Cir. 2013); *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).  Indeed, "[t]he Constitution simply does not require police to gamble with their lives in the face of serious threat of harm." *Elliot v. Leavitt*, 99 F.3d 640, 641 (4th Cir. 1996). "[T]he Fourth Amendment does not require a police officer to be omniscient, and absolute certainty of harm need not precede an officer's act of self-protection." *Easley*, 890 F.3d at 857 (quotation marks, citations and edits omitted); *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) ("A reasonable officer need not await the 'glint of steel' before taking self-protective action; by then, it is 'often . . . too late to take safety precautions.' [Citation]."); *see Saucier*, 533 U.S. at 205 ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed.").

Moreover, when force is justified, an officer need not re-evaluate whether a suspect still constitutes a threat after is irrelevant in a reasonable force analysis. "[I]f police officers are justified in firing at a suspect … the officers need not stop shooting until the threat has ended" and, indeed, "if lethal force is justified, officers are taught to keep shooting until the threat is over." *Plumhoff*, 134 S.Ct. at 2022; *see Wilkinson*, 610 F.3d at 522 (officers are not constitutionally required to reassess threat after every shot and when "deadly force was authorized … it makes no difference … when [the officer] fired seven rounds or eleven").

Without dispute, even deadly force is "unquestionably reasonable" if a suspect "reaches for" what is believed to be a weapon or makes some "similar threatening gesture," like getting into a "shooter's stance." *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014); *see Longoria v. Pinal Cty.*, 873 F.3d 699, 706-707 (9th Cir. 2017) ("The most important question in this case is whether Rankin reasonably perceived that Longoria assumed a threating or 'shooter's stance.' 'If [he] did, [he] w[as] entitled to shoot; if [he] didn't, [he] [was]n't.' [Citation].") (emphasis added); *Cruz*, 765 F.3d at 1078 (police would be justified in shooting suspect behaving "dangerous[ly] and erratic[ally]" who reached for his waistband); *George*, 736 F.3d at

Case No. 2:17-cv-00137-JAM-DB

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

-13-

838 ("If the person is . . . reasonably suspected of being armed . . . a furtive movement [or] harrowing gesture . . . might create an immediate threat."); *Garcia v. United States*, 2018 WL 1448744, at *4 (C.D. Cal. Mar. 23, 2018) (Citing *George* for proposition that "[t]he reasonableness inquiry does not require an officer to have delayed their fire until a suspect turns a weapon on them" and concluding "[u]nder this standard, when an officer reasonably believes that a suspect is about to draw a firearm and shoot the officer or another person, the officer's decision to use deadly force on the suspect is not unreasonable."); *Estate of Elkins v. California Highway Patrol*, 2016 WL 3648944, at *9 (E.D. Cal. July 7, 2016) (Citing *George* and *Cruz* for the proposition that "it is not necessary that an officer's suspicion that a suspect has a gun be correct, as long as the officer reasonably perceived a sufficient threat"); *see also Pollard v. City of Columbus*, 780 F.3d 395, 404 (6th Cir. 2015) ("If Bynum had a gun, as the officers reasonably thought he did, they were at risk of serious injury or death and thus could reasonably consider Bynum a threat.").

Here, "the [dispatch audio] . . . speak[s] for itself," *Scott, supra*, 550 U.S. at 379 n. 5, and is dispositive as to what occurred. *Id* at 378-380. The Plaintiff's claimed scenario is not possible, and the record taken as a whole could not lead a rational trier of fact to find for Plaintiff based upon his self-serving "version" of events that contradicts the audio and physical evidence. Indeed, Plaintiff's expert testified that Plaintiff's account of events could not have been accurate based upon his review of the audio. (UMF No. 30).

Based upon the totality of the circumstances, Officer Herndon's use of a taser was reasonable as a matter of law. Plaintiff's expert acknowledged this situation as "rapidly evolving" (UMF No. 30). Further, he acknowledged Plaintiff was "actively resisting" the officers according to the facts known to the officers. (UMF No. 31). Plaintiff's threatening actions reaching into an unsearched box against the commands of officers required Officer Herndon's immediate use of force to prevent what Officer Herndon reasonably believed was an imminent threat to himself and the other officers in a "rapidly evolving" situation, with an "actively resisting" suspect. (UMF Nos. 19, 22, 30, 31). Indeed, both Officer Herndon and Officer Coelho each believed Plaintiff to be a threat in the moments prior to Officer Herndon

Case No. 2:17-cv-00137-JAM-DB

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

-14-

deploying his taser.  (UMF Nos. 19, 22.)  The use of a taser did not constitute deadly force, and the taser logs indicate Officer Herndon twice manually turned off the taser charge to prevent the taser from running a complete 5-second cycle (i.e. reducing the force used).  (UMF Nos. 24, 26.) The taser incapacitated Plaintiff with little to no injury resulting on his person.  (UMF No. 28.)

The total time the taser charge was run through Plaintiff amounted to 11 seconds, accumulated over 3 cycles.  (UMF Nos. 23, 24, 26.)  This puts the total tasing within the "2011 Electronic Control Weapon Guidelines" relied upon as source material by Plaintiff's expert which specifies 52 specific guidelines, including the recommendations that a taser "should be used no more than three cycles that should not exceed 15 seconds total." (UMF No. 29.)

Even if this court determines Officer Herndon is not entitled to summary judgment, Officers Coelho and Melville certainly should be.  As to Officer Melville in particular, he did not use any force or threats of force to arrest Plaintiff.  (UMF No. 13.)  As such, Plaintiff cannot succeed on a claim against Officer Melville for excessive force and this cause of action and he should be dismissed from this cause of action.

Officer Coelho's use of force was limited to drawing his service weapon when Plaintiff exited his vehicle and shouted at the officers, and then placing him into handcuffs to effectuate the arrest.  (UMF No. 19, 27.)  Again, under the totality of the circumstances, with Plaintiff involving the officers in a vehicle pursuit, then immediately exiting the vehicle and shouting at the officers and not obeying commands, it was reasonable for Officer Coelho to perceive Plaintiff a threat justifying he draw his service weapon during this "rapidly evolving" situation with an "actively resisting" suspect.  (UMF No. 30, 31.)   This same analysis applies to Officer Herndon as he also drew his service weapon after Plaintiff exited the vehicle and began shouting at the officers.  (UMF No. 19, 30, 31).

It is also then true that Officer Coelho was justified in placing handcuffs on Plaintiff. Officer Coelho had probable cause to arrest the Plaintiff due to his prior violation of Vehicle Code section 2800.1 for evading the officers.  Thereafter, Plaintiff's actions giving rise to his getting tased would further justify Officer Coelho placing him into handcuffs as force incidental to his arrest.

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

Based upon the totality of the circumstances which can be genuinely perceived by the facts presented in this motion, Plaintiff cannot establish Officers Herndon, Melville, and Coelho were not reasonable in their respective uses of force.  As such, this cause of action should be dismissed in its entirety.

  i. **No Clearly Established Law Existed On June 9, 2015, Telling All Reasonable Officers That Use Of A Taser Under The Facts Of This Case Would Violate The Fourth Amendment.**

Again, it is Plaintiff's burden to show that the defendant officers violated clearly established law. *Shafer, supra,* 868 F.3d at 1118.  Plaintiff's burden is high as he must show "an obvious case in which any competent officer would have known that [tasing and cuffing] [Plaintiff] to protect [himself and others] would violate" a constitutional right. *Kisela*, 138 S. Ct. at 1153.  Plaintiff here must 'identify a case where an officer acting under similar circumstances as [Officers Herndon, Melville, and Coelho, respectively] was held to have violated the Fourth Amendment.' [Citation]." *Sharp, supra* 871 F.3d. at 911.

Again, the proper "clearly established" analysis requires "defin[ing] the law at issue in a concrete, particularized manner." *Felarca*, 891 F.3d at 822; *Shafer*, 868 F.3d at 1117. "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue. [Citation].  *Kisela*, 138 S.Ct. at 1152; *Wesby*, 138 S.Ct. at 590.

Accordingly, Plaintiff must cite a Supreme Court or Ninth Circuit case - or a series of cases from other courts placing the matter beyond debate - holding that an officer violates the Fourth Amendment when the officer draws his service weapon and/or deploys a taser at a suspect who caused the officers to engage a police pursuit, then abruptly exits his vehicle, ignores commands to show his hands while shouting at the officers, and then reaches into an unsearched compartment in his vehicle.  *See e.g., Felarca*, 891 F.3d at 822. ("We define the law at issue here as follows: whether an officer violates clearly established law when, after several warnings to disperse have been given, the officer uses baton strikes on a plaintiff's torso or extremities for the purpose of moving a crowd actively obstructing the officer from carrying out

Case No. 2:17-cv-00137-JAM-DB   **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

-16-

lawful orders in a challenging environment. To meet their burden, plaintiffs must generally identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment."); *Shafer*, 868 F.3d at 1117 ("Defined at an appropriate level of specificity, the question at hand is whether an officer violates clearly established law when he progressively increases his use of force from verbal commands, to an arm grab, and then a leg sweep maneuver, when a misdemeanant refuses to comply with the officer's orders and resists, obstructs, or delays the officer in his lawful performance of duties such that the officer has probable cause to arrest him in a challenging environment.").

Plaintiff cannot meet his burden because no court has ever held that the use of a taser under the specific facts of this case violates a suspect's Fourth Amendment rights. This is also true to the act of drawing a firearm while issuing commands, and then applying cuffs to a suspect when the officer had probable cause to effectuate an arrest.  Thus, no clearly established law existed on June 9, 2015, that would allow this Court to conclude only an incompetent officer or one knowingly violating the law would have acted as Officer Herndon and Officer Coelho did under the specific facts and circumstances of this case. *See Nehad*, 2017 WL 6453475, at *8-10 (not clearly established in August 2015 that it would violate the Fourth Amendment to use deadly force against an approaching suspect holding and refusing to drop a metal object in his hand that officer believed was a gun but turned out to be a pen)  This is particularly true

As to Officer Melville, the absence of force in its entirety should be dispositive.  Plaintiff categorically will be unable to locate legal authority that the absence of force could be under any circumstances a violation of a suspect's Fourth Amendment rights asserting excessive force.

### D.   PLAINTIFF'S FOURTH CAUSE OF ACTION FOR *MONELL* LIABILITY AGAINST DEFENDANT CITY OF VALLEJO FAILS AS A MATTER OF LAW AS THERE IS NO ADMISSIBLE EVIDENCE OF AN UNCONSTITUTIONAL POLICY OR CUSTOM.

Plaintiff's Fourth Cause of Action alleges a boilerplate assertion for *Monell* liability. However, Plaintiff has not produced any evidence on this topic, and thus this cause of action fails.

Case No. 2:17-cv-00137-JAM-DB

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

**-17-**

For the Plaintiff to establish a claim against the City of Vallejo based on *Monell*, he first needs to establish a violation of his constitutional rights. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835-36 (9th Cir. 1996).  Without an underlying constitutional violation there can be no *Monell* liability against a public entity - even if the officer's training or the public entity's policies were deficient. (See *City of L.A. v. Heller*, 475 U.S. 796, 106 S. Ct. 1571 (1986); *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996) As such, a determination by the Court that the Defendants had probable cause to arrest Plaintiff, and that the Defendant officers' respective use of force was reasonable is dispositive of Plaintiff's sole cause of action against the City of Vallejo.  However even if the Court does not find the absence of a constitutional violation, the City of Vallejo is entitled to summary judgment in its favor based on the lack of any evidence to support Plaintiff's *Monell* claim.

A municipality is generally not subject to liability under 42 U.S.C. § 1983 for the alleged unconstitutional acts of an employee.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Civil rights liability attaches to the public entity only if one of the entity's policies, customs, or practices was the moving force that is the cause of a constitutional violation. *Id* at 694. This "'official policy' requirement was intended to distinguish the municipalities' acts and its employees' acts, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). To establish liability on a municipality under *Monell*, the plaintiff has the burden to show the constitutional violation was caused by "a policy, practice, or custom of the entity", or was the result of an order by a policy-making officer.  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *Gibson v. County of Washoe*, 290 F.3d 1175, 1186 (9th Cir. 2002).  To prevail on a Section 1983 cause of action under *Monell*, Plaintiff must identify the policy or custom that is alleged to have caused his injury, show that "the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997).

Case No. 2:17-cv-00137-JAM-DB

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

-18-

Four conditions must be satisfied in order to establish municipal liability for failing to act to preserve constitutional rights: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt v. Pearce*, 954 F.2d 1470, 1474, (9th Cir. 1992) (*quoting Canton v. Harris*, (1989) 489 U.S. 378).

The operative complaint in this matter alleges a *Monell* claim for relief against the City of Vallejo, arguing "that the acts and/or omissions alleged herein are the proximate result of a custom, policy, pattern or practice of deliberate indifference …to the repeated violations of the constitutional rights of citizens by Vallejo Police Department officers".  (Docket No.  8; 7:1-15). The Complaint does not allege a particular policy or any prior instances of alleged wrongdoing, but instead merely makes boilerplate general allegations that a custom, policy, pattern or practice of deliberate indifference to the repeated violations of the constitutional rights of citizens exists. (Docket No.  8; 7:1-15).

Based upon the discovery exchanged in this case, Plaintiff cannot produce evidence proving a "custom, policy, pattern or practice of deliberate indifference" which arguably caused a constitutional violation exists.  If he could, then he was obligated to disclose such evidence in discovery.  FRCP Rule 26(a)(1)(A) obligates parties to disclose:

> (i)   The name … of each individual likely to have discoverable information… that the disclosing party may use to support its claims or defenses…
>
> (ii)  A copy – or a description by category and location – of all documents …that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses…

Further, FRCP Rule 26(e)(1) obligates parties to supplement its disclosure:

> (A) In a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing…

1   Discovery is now completed, and Plaintiff at no point supplemented its Initial Disclosures

2   served on or about June 27, 2017, in this matter.  (UMF No. 32).  Therein, under Category 5

3   pertaining to "All Documents, Date Compilations, and Tangible Things that Plaintiff May Rely

4   On to Support His Claims", no policies of the Vallejo Police Department were identified. (UMF

5   No. 33).  It is also true that Plaintiff has not produced any records or identified any witnesses to

6   support these claims.  (UMF No. 34).  The only percipient depositions taken by Plaintiff were of

7   the defendant officers, none of whom were asked and testified to being policymakers of the

8   Vallejo Police Department. (UMF No. 35).

9   Furthermore, Plaintiff's only retained expert disclosed in this matter produced a Rule

10   26(a)(2)(B) report which does not include any opinion that a custom or policy of the City of

11   Vallejo was substandard in any way.  He also did not offer any opinions that a policy of the

12   Vallejo Police Department could be considered to have caused any violations of the Plaintiff's

13   constitutional rights.  (UMF No. 36).

14   Plaintiff cannot prove his *Monell* claim in the absence of any witnesses, documents, or

15   experts to opine regarding a purported policy of the City of Vallejo which could be in any way

16   linked to causing an alleged constitutional violation in this case.

17   As to a potential "pattern" of wrongdoing by the particular officers involved, or even the

18   Vallejo Police Department generally, there is similarly no admissible evidence to suggest any

19   such pattern exists.  To assert a cause of action under *Monell* for a pattern of past constitutional

20   violations, he has the burden of proving prior violations similar to the alleged violation at issue.

21   *Keyes v. Washington County Land Use and Transportation*, 2017 U.S. Dist. LEXIS 127029,

22   *18-19 (D. Or. 2017)(*citing Flores v. County of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014));

23   *Severi v. County of Kern*, 2017 U.S. Dist. LEXIS 209613, *13 (E.D. Cal. 2017)(*citing Strauss v.*

24   *City of Chicago*, 760 F.2d 765, 767-768 (7th Cir. 1985)).  No other prior incidents involving

25   alleged misconduct have been identified to the Defendants in discovery or otherwise.  Plaintiff

26   has not identified any witnesses, or documents which would support such an argument.  (UMF

27   No. 37).  Without any evidence of prior acts, Plaintiff cannot establish a "pattern" to create a

28   genuine dispute regarding this theory of *Monell* liability.

At this time, the only information known regarding the Plaintiff's *Monell* claim is the conclusory allegations in the Complaint, which is insufficient for this issue to be adjudicated at trial.  "[C]ourts have repeatedly rejected conclusory *Monell* allegations that lack factual content from which one could plausibly infer *Monell* liability…[A] plaintiff must allege 'specific facts giving rise to a plausible <u>*Monell*</u> claim' instead of 'formulaic recitations of the existence of unlawful policies, customs, or habits."  *Martinez v. City. of Los Angeles*, 2018 U.S. Dist. LEXIS 21875, *11 (C.D. Cal. 2018)(quoting  *Wilson ex rel. Bevard v. City of West Sacramento*, 2014 U.S. Dist. LEXIS 56013 at *2 (E.D. Cal. 2014) and  *Austen v. City of Los Angeles*, , 2017 U.S. Dist. LEXIS 57006 at *2 (C.D. Cal. 2017)).  Because Plaintiff has offered no evidence of any City policy, practice or custom, which allegedly caused the asserted constitutional violations, he cannot proceed with a *Monell* claim and Defendant City of Vallejo is entitled to summary judgment.  *See Waggy v. Spokane County*, 594 F.3d 707, 713-14 (9th Cir. 2010) (affirming summary judgment for county where plaintiff failed to provide evidence of any express county policy, practice or custom, or evidence to support an inference of any county policy, practice or custom, and failed to provide evidence indicating what training procedures county employed or what type of constitutionally-mandated training was lacking); *McSherry v. City of Long Beach*, 584 F.3d 1129, 1147 (9th Cir. 2009) (affirming summary judgment for city where, inter alia, plaintiff failed to tender facts other than officers' alleged personal misdeeds).

As an alternative to proving a custom and policy caused a constitutional violation, a Plaintiff may attempt proving municipal liability by proving an authorized policymaker (1) ratifies a subordinate's unconstitutional behavior, and (2) approves the basis for the behavior. *Christie v. Iopa*, 176 F.3d 1231, 1238-39 (9th Cir. 1999) (*citing City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *see also Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992) [refusing to find ratification, because "there is no evidence that the City manager made a deliberate choice to endorse the Fire Chief's decision and the basis for it"]). "Accordingly, ratification requires, among other things, knowledge of the alleged constitutional violation." (*See Garrison v. Burke*, 165 F.3d 565, 572 n.6 (7th Cir. 1999) [holding that the municipality was not

Case No. 2:17-cv-00137-JAM-DB

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

-21-

liable under § 1983, because it had no knowledge of the alleged constitutional violations]). Furthermore, the "mere failure to discipline [an officer] does not amount to ratification of their allegedly unconstitutional actions." (S*ee Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253-54 (9th Cir. 2010) (holding that the failure to discipline employees, without more, was insufficient to establish ratification).

As an initial matter, Plaintiff failed to plead municipal liability under a theory of ratification.  Nowhere in the Complaint did Plaintiff assert the City of Vallejo ratified any unconstitutional conduct by the Defendants in this case, and therefore this theory of *Monell* liability cannot be brought to trial.  (Docket No. 8, 6:17 - 7:28)

However, even if this court were to consider the issue of ratification beyond Plaintiff's failure to plead it, Plaintiff still cannot produce any substantive evidence to create a genuine issue of fact for a jury to decide this issue.  Plaintiff has not identified any authorized policymakers with the City's police department, has not identified any document which would indicate any facts underlying this incident were reviewed for constitutional violations, and cannot show any departmental decisions based upon the underlying conduct which would indicate the City ratified unconstitutional behavior.  (UMF No. 38).  Without evidence of each of these elements, Plaintiff cannot establish liability against the City of Vallejo under a theory of ratification.

Plaintiff's inability to produce evidence during discovery to support his cause of action for *Monell* is dispositive.  Since there is no genuine dispute as to material fact on this issue, the Court must grant summary judgment to the City of Vallejo.

**E.    PLAINTIFF'S CAUSES OF ACTION UNDER STATE LAW FAIL AGAINST DEFENDANTS HERNDON, MELVILLE, AND COELHO AS PLAINTIFF'S CONSTITUTIONAL RIGHTS WERE NOT VIOLATED, AND THERE IS NO EVIDENCE OF A SPECIFIC INTENT TO VIOLATE PLAINTIFF'S RIGHTS.**

Claims of excessive force under California law are analyzed under the same standard of objective reasonableness used in Fourth Amendment claims. *See In re Joseph F.*, 85 Cal.App.4th 975, 989 (2000) (citing *Martinez v. County of Los Angeles*, 47 Cal.App.4th 334, 343 (1996)); *Yount v. City of Sacramento*, 43 Cal.4th 885 (2008).  As such, to

Case No. 2:17-cv-00137-JAM-DB

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

-22-

the extent that the Court determines the force in this matter to have been reasonable, Plaintiff's

claims under California state law must be dismissed.

      **i.   Plaintiff's Claims For Violation Of Civil Code Section 52.1 Must Be Dismissed As Plaintiff Cannot Produce Facts That Any Defendant Officers Specifically Intended To Violate Plaintiff's Fourth Amendment Rights.**

In the event that the Court denies summary judgment, Officer Defendant Officers seek

summary adjudication with respect to Plaintiff's cause of action under the Bane Act as Plaintiff

has failed to demonstrate specific intent to violate Plaintiff's rights.  Civil Code Section 52.1

states in relevant part that an action may be instituted where:

> a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state.

The "coercion" language in the statute has been a source of great confusion in cases

alleging causes of action under both 42 U.S.C. § 1983 and the Bane Act.  In the past, some courts

have held that the conduct giving rise to an excessive force claim cannot support a separate cause

of action under the Bane Act absent a separate interference by threat, intimidation, or coercion.

*See, e.g., Velarde v. Union City Police Dep't*, 2015 U.S. Dist. LEXIS 151935, *21-22, 2015 WL

6871579 (N.D. Cal. 2015).  In recent Ninth Circuit decisions, however, it has become clear that

liability under the Bane Act requires a Plaintiff to show an officer to have had "a specific intent

to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. Cty. of

Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (*quoting Cornell v. City & Cty. of S.F.*, 17 Cal.

App. 5th 766, 225 Cal. Rptr. 3d 356, 384 (Ct. App. 2017)).  The jury must find that the

defendants "intended not only the force, but its unreasonableness, its character as 'more than

necessary under the circumstances.'" *Id* at 1045 (*quoting United States v. Reese*, 2 F.3d 870, 885

(9th Cir. 1993)).

Very recently in *Losee v. City of Chico*, 738 Fed. Appx. 398, (2018) U.S. App. LEXIS

16330, this court was affirmed on appeal to United States Court of Appeals for the Ninth Circuit

Case No. 2:17-cv-00137-JAM-DB        **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

-23-

upon granting summary judgment in favor of five Defendant Officers on a Bane Act claim when they shot and killed a suspect that was attempting to flee in a vehicle.  In this action, the Court determined that summary judgment would not be proper as to one of the five officers firing upon the suspect, Sergeant Zuschin, on the question of excessive force.  The Court determined a dispute of fact existed as to whether this officer had "a reasonable fear of serious physical harm to himself or others" justifying his use of deadly force which caused the decedent to suffer fatal injuries.  *Id* at 400 - 401.  However, the Court still affirmed this Court's decision to dispose of the Bane Act claims against this officer.  It concluded the evidence presented could amount to a constitutional violation under an "objectively reasonable" standard; however, this is insufficient to satisfy the minimum standards required by the Bane Act.  *Id* at 401.

Here, for Plaintiff to succeed on a claim against the Defendant Officers Herndon and Coelho based upon his claims of excessive force (assuming he can even prove a constitutional violation under an objectively reasonable standard) he would then need to establish that the force used by Officer Herndon and Officer Coelho "intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances. *Id* (internal citations omitted).  Here, as in *Losee*, the Plaintiff cannot proffer any such evidence given the rapidly evolving situation requiring Defendant Officers Herndon and Coelho to make split-second decisions.  (UMF No. 30)

As to Officer Melville in particular, since he did not use any force on the Plaintiff, to succeed on a Bane Act claim, Plaintiff will need to Officer Melville's acts "coercion independent from that inherent in a wrongful detention itself."  *Shoyoye v. County of Los Angeles,* 203 Cal.App. 4th 947, 960 (Cal. Ct. App. 2012).  "[A] wrongful arrest and detention, without more, cannot constitute 'force, intimidation, or coercion' for purposes of section 52.1." *Id* (quoting *Gant v. County of Los Angeles*, 765 F.Supp.2d 1238, 1253 - 1254 (C.D. Cal. 2011).  Here, it is not clear what the Plaintiff could allege to meet this high level of coercion necessary to maintain his cause of action against Officer Melville given his limited role in the detention.  In fact, Plaintiff's vehicle was not towed and he was even released from the Vallejo Police Department custody with a notice to appear rather than being booked in County Jail. (UMF No. 16)  Based

Case No. 2:17-cv-00137-JAM-DB

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

-24-

upon the genuine facts in this case, Plaintiff cannot produce evidence to succeed on a Bane Act claim as against Officer Melville.

For the foregoing reasons, Plaintiff's Bane Act claim must be dismissed as Plaintiff cannot produce evidence of a specific intent to violate Plaintiff's Fourth Amendment rights.

## V.  CONCLUSION

As a matter of law, plaintiff fails to identify sufficient evidence to create a genuine issue of material fact as to all of his claims for relief herein.  For this reason, defendants City of Vallejo, Officer Herndon, Officer Coelho, and Officer Melville request an order granting summary judgment in their favor as to all claims, or alternatively partial summary judgment as this Court deems appropriate.


DATED:  August 6, 2019                    Respectfully submitted,


                                             */s/ Timothy R. Smyth*
                                          TIMOTHY R. SMYTH
                                          Assistant City Attorney
                                          Attorney for Defendants,
                                          CITY OF VALLEJO,
                                          ROBERT HERNDON, JAMES MELVILLE,
                                          and JOSEPH COELHO

Case No. 2:17-cv-00137-JAM-DB                    **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

-25-