**CLAUDIA M. QUINTANA**
City Attorney, SBN 178613
**BY:  TIMOTHY R. SMYTH**
Deputy City Attorney, SBN 258661
**CITY OF VALLEJO**, City Hall
555 Santa Clara Street, P.O. Box 3068
Vallejo, CA  94590
Tel:    (707) 648-4545
Fax:    (707) 648-4687
Email: timothy.smyth@cityofvallejo.net

Attorneys for Defendants, CITY OF VALLEJO,
ROBERT HERNDON, JAMES MELVILLE, and JOSEPH COELHO

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| JASON ANDERSON,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CITY OF VALLEJO, a municipal corporation; ROBERT HERNDON, individually and in his capacity as a Police Corporal for the Vallejo Police Department, individually and in his capacity as a Police Corporal for the Vallejo Police Department; JAMES MELVILLE, individually and in his capacity as a Officer for the Vallejo Police Department; JOSEPH COELHO, individually and in his capacity as a Officer for the Vallejo Police Department; and DOES 1-50, inclusive, individually, jointly and severally,<br><br>                    Defendants. | Case No.  2:17-cv-00137-JAM-DB<br><br>**DECLARATION OF TIMOTHY R. SMYTH IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**<br><br>DATE:          September 10, 2019<br>TIME:          1:30 p.m.<br>CRTRM:       6, 14th Floor<br><br>TRIAL DATE:    December 2, 2019 |

I, TIMOTHY R. SMYTH, hereby declare:

1.      I am the attorney of record for the named defendants in this case and duly licensed to practice before all the courts of the State of California and I am admitted to practice

in the United States District Court in and for the Eastern District of California.  I make this declaration from personal knowledge and would and could testify competently if called to do so.

2.       Plaintiff served his Initial Disclosures on or about June 27, 2017, and at no point supplemented them. A true and correct copy of Plaintiff's Initial Disclosures served on June 27, 2017, is attached hereto as Exhibit A.

3.       Within Plaintiff's Initial Disclosures, under Category 5 pertaining to "All Documents, Date Compilations, and Tangible Things that Plaintiff May Rely on to Support His Claims", no policies of the Vallejo Police Department were identified.

4.       Plaintiff has not produced any records or identified any witnesses in discovery which are purported to support claims under *Monell*.

5.       The only percipient depositions taken by Plaintiff were of the defendant officers, none of whom were asked and testified to being policymakers of the Vallejo Police Department.

6.       Plaintiff's only retained expert disclosed in this matter produced a Rule 26(a)(2)(B) report which does not include any opinion that a custom or policy of the City of Vallejo was substandard in any way.

7.       Plaintiff has also not produced any discovery pertaining to prior incidents of alleged misconduct by the Defendants, or Vallejo Police Officers generally.  No documents or witnesses have been identified to support such an argument.

8.       Plaintiff has not identified any authorized policymakers with the City's police department, has not identified any document which would indicate any facts underlying this incident were reviewed for constitutional violations, and cannot show any departmental decisions based upon the underlying conduct which would indicate the City ratified unconstitutional behavior.

9.       Plaintiff served responses to the Defendants' Requests For Admissions, Set Two, on or about May 20, 2019.  A true and correct copy of Plaintiff's Responses to Requests for Admissions, Set Two, is attached hereto as Exhibit B.

**Case No. 2:17-cv-00137-JAM-DB**

**DECLARATION OF TIMOTHY R. SMYTH IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

-2-

10.     On December 18, 2018, I took the deposition of Plaintiff, Jason Anderson, in this matter.  A true and correct copy of pertinent portions of his deposition testimony are attached hereto as Exhibit C.

11.     On December 18, 2018, Plaintiff's counsel took the deposition of Defendant James Melville in this matter.  A true and correct copy of pertinent portions of his deposition testimony are attached hereto as Exhibit D.

12.     On March 19, 2019, I took the deposition of Eve Connelly, M.D., treating physician for Plaintiff on the day of the incident in this matter.  A true and correct copy of pertinent portions of her deposition testimony are attached hereto as Exhibit E.

13.     On June 10, 2019, I took the deposition of Plaintiff's police practices expert, Roger Clark in this matter. A true and correct copy of pertinent portions of his deposition transcript are attached hereto as Exhibit F.

14.     Plaintiff's police practices expert prepared a Rule 26 report which was attached to his deposition as Exhibit 2.  A true and correct copy of this Exhibit 2 is attached hereto as Exhibit G.


I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Dated this 6th day of August 2019, in Vallejo, California.


_/s/ Timothy R. Smyth_
TIMOTHY R. SMYTH
Deputy City Attorney, City of Vallejo

# EXHIBIT

# A

RECEIVED

JUN 30 2017

CITY ATTORNEY'S OFFICE

1  **JOHN L. BURRIS, Esq., SBN 69888**
2  **LATEEF H. GRAY, Esq., SBN 250055**
   **LAW OFFICES OF JOHN L. BURRIS**
3  Airport Corporate Center
   7677 Oakport Street, Suite 1120
4  Oakland, California 94621
   Telephone: (510) 839-5200
5  Facsimile: (510) 839-3882
   john.burris@johnburrislaw.com
6  lateef.gray@johnburrislaw.com

7

8  Attorneys for Plaintiff
   JASON ANDERSON

9

10                 UNITED STATES DISTRICT COURT

11             FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13  JASON ANDERSON,                    Case No. 2:17-cv-00137-JAM-DB

14      Plaintiff,
                                       **PLAINTIFF'S INITIAL DISCLOSURE**
15            vs.                      **STATEMENT (FRCP 26)**

16  CITY OF VALLEJO, a municipal
    corporation; ROBERT HERNDON,
17  individually and in his capacity as a
    Police Corporal for the Vallejo Police
18  Department; JAMES MELVILLE,
    individually and in his capacity as a
19  Officer for the Vallejo Police
    Department; JOSEPH COELHO,
20  individually and in his capacity as a
    Officer for the Vallejo Police
21  Department; and DOES 1-50,
    inclusive, individually, jointly and
22  severally,

23

24

25      Defendants.

26

27

28

The Law Offices of John L. Burris
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200

## Initial Disclosure Statement

Pursuant to FRCP Rule 26(a)(1) and (e), Plaintiff submits this Initial Disclosure Statement.

**1.)   WITNESSES**

**The following persons are likely to have discoverable information Plaintiff may use to support her claims:**

a.   Plaintiff, who may be contacted through his attorney, Law Offices of John L. Burris, regarding damages and the subject incident;

b.   Defendants, regarding subject incident, department policies and discipline;

c.   Any and all percipient witnesses identified in Defendants' initial disclosure statement;

d.   Any and all percipient witnesses identified in any and all incident reports, internal affairs and/or investigatory records prepared by Defendants or their agents;

e.   Any and all percipient witnesses identified in any and all incident reports and/or investigatory reports prepared by the Vallejo Police Department;

f.   Any and all percipient witnesses identified in any and all incident reports and/or investigatory reports prepared by the Solano County District Attorney's Office.

**2.)   DECEDENT'S MEDICAL SERVICE PROVIDERS FOR INJURIES ATTRIBUTABLE TO THE INCIDENT**

a.   Kaiser Permanente Vallejo Medical Center, 975 Sereno Drive,

The Law Offices of John L. Burris
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200

1  Vallejo, California 94589, (707) 651-1000; any and all medical providers

2  identified in Plaintiff's medical treatment chart notes, test(s) and/or examination

3  records related to this incident;

4

5

6  **3.)   PERSONS UNKNOWN TO PLAINTIFF AT THIS TIME, KNOWN TO DEFENDANTS**

7  a.   Any and all persons that were in the area of the scene of the incident

8  that observed any portion of the incident;

9

10  b.   Any and all persons, agencies, departments and/or offices listed in

11  the Defendants' Initial Disclosure Statement;

12  c.   Any other relevant witnesses whose names, addresses, and/or

13  telephone numbers are discovered by the parties, either through discovery

14  documents produced, or through any investigation conducted by any of the

15  parties.  If any such witnesses are discovered, Plaintiff's attorneys will inform

16

17  Defendants' counsel of said witnesses' names, addresses, and telephone

18  numbers;

19  d.   Any and all expert medical or police practice witnesses the parties

20  decide to have testify in this case. When the names, addresses, and telephone

21  numbers of said expert medical or police practice witnesses are ascertained, and

22

23  when required to produce information regarding them counsel will meet and

24  confer regarding such discovery  and produce such information that is not

25  protected by privileges against disclosure.

26

27

28

PLAINTIFF'S INITIAL DISCLOSURE STATEMENT (FRCP 26)
3

The Law Offices of John L. Burris
7677 Oakport Street, Suite 1120
Oakland, California 94621·
Telephone: (510) 839-5200

**4.)** **PERSONS KNOWLEDGEABLE AS TO PLAINTIFF'S DAMAGES**

a.      Custodian of Records; Kaiser Permanente Vallejo Medical Center, 975 Sereno Drive, Vallejo, CA 94589, (707) 651-1000; any and all medical providers identified in Plaintiff's medical treatment chart notes, test(s) and/or examination records related to this incident;

b.      Plaintiff, who may be contacted through the Law Offices of John L. Burris.

**5.)** **DESCRIPTION OF ALL DOCUMENTS, DATE COMPILATIONS, AND TANGIBLE THINGS THAT PLAINTIFF MAY RELY ON TO SUPPORT HIS CLAIMS:**

a.      Plaintiff's Kaiser Permanente Vallejo Medical Center medical treatment and billing records regarding the treatment received following the incident;

b.      Vallejo Police Department's investigative reports;

c.      Vallejo Police Department's Investigative File re: this incident;

d.      Vallejo Police Department's Internal Affairs Report regarding this incident;

e.      Vallejo Police Department's Internal Affairs histories of Defendants;

f.      Solano County District Attorney's investigative reports;

g.      Solano County District Attorney's Office Investigative File re: this incident.

**6.)** **COMPUTATION OF ANY CATEGORY OF DAMAGES CLAIMED BY PLAINTIFF, MAKING AVAILABLE FOR INSPECTION AND COPYING, AS UNDER FRCP RULE 34, THE DOCUMENTS OR OTHER EVIDENTIARY MATERIAL, NOT PRIVILEGED OR PROTECTED FROM DISCLOSURE, ON WHICH SUCH DOCUMENTATION IS BASED, INCLUDING MATERIALS BEARING ON THE NATURE AND EXTENT OF INJURIES SUFFERED.**

PLAINTIFF'S INITIAL DISCLOSURE STATEMENT (FRCP 26)

4

Plaintiff suffered damages as described in the operative Complaint in this matter.

**7.)** **FOR INSPECTION AND COPYING, AS UNDER FRCP RULE 34, ANY INSURANCE AGREEMENT UNDER WHICH ANY PERSON CARRYING ON AN INSURANCE BUSINESS MAY BE LIABLE TO SATISFY PART OR ALL OF A JUDGMENT WHICH MAY BE ENTERED IN THE ACTION OR TO INDEMNIFY OR REIMBURSE FOR PAYMENTS MADE TO SATISFY THE JUDGEMENT:**

Inapplicable to Plaintiff.

**Certificate of Disclosure:**

I, Lateef H. Gray, declarant, certify that to the best of my knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the disclosure herein is complete and correct as of the time it is made.

Executed on June 26, 2017 at Oakland, California.

**LAW OFFICES OF JOHN L. BURRIS**

*/S/ Lateef H. Gray*

The Law Offices of John L. Burris
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200

PLAINTIFF'S INITIAL DISCLOSURE STATEMENT (FRCP 26)



1

## CERTIFICATE OF SERVICE
*Anderson v. Vallejo*

2

**STATE OF CALIFORNIA, COUNTY OF ALAMEDA:**

3

   I am a citizen of the United States and employed in the county aforesaid; I am

4
over the age of eighteen years, and not a party to the within action; My business address
is 7677 Oakport Street, Suite 1120, Oakland, California 94621.  On the date below, I

5
served on the named parties and /or counsel of record:

6
Frank A. Splendorio
Office of the City Attorney, City of Vallejo

7
555 Santa Clara St.
Vallejo, CA 94590

8

9
The following documents in the manner checked below: **PLAINTIFF'S INITIAL**
**DISCLOSURE STATEMENT; REQUEST FOR PRODUCTION OF DOCUMENTS, SET**

10
**ONE; INTERROGATIRIES, SET ONE.**

11 ☒ **(VIA MAIL -- CCP §§ 1013(a), 2015.5)** By placing a true copy thereof enclosed in a sealed envelope(s),
addressed as above, and placing each for collection and mailing on that date following ordinary business

12
practices. I am readily familiar with my firm's business practice of collection and processing of correspondence
for mailing with the U.S. Postal Service and correspondence placed for collection and mailing would be

13
deposited in the U.S. Postal Service at Oakland, California, with postage thereon fully prepaid, that same day
in the ordinary course of business.

14 ☐ **(VIA PERSONAL DELIVERY -- CCP §§ 1011, 2015.5)** By placing a true copy thereof enclosed in a sealed
envelope(s), addressed as above, and causing each envelope(s) to be hand delivered on that day by Russ Taylor,

15
in the ordinary course of my firm's business practice.

16 ☐ **(COURTESY COPY AND/OR VIA E-MAIL or ELECTRONIC TRANSMISSION -- CCP §§ 1013(e),
2015.5, CRC 2008)** Based on a court order or an agreement of the parties to accept service by e-mail or

17
electronic transmission, I caused the document to be sent to the persons at the e-mail address(es) or the facsimile
number listed above. I am readily familiar with my firm's business practice of collection and processing of
correspondence via facsimile transmission(s) and any such correspondence would be transmitted in the

18
ordinary course of business.  The facsimile transmission(s) was reported as complete and without error, and a
copy of the transmission report is attached..

19 ☐ **(VIA OVERNIGHT MAIL/COURIER -- CCP §§ 1013(c), 2015.5)** By placing a true copy thereof enclosed
in a sealed envelope(s), addressed as above, and placing each for collection by overnight mail service or

20
overnight courier service.  I am familiar with my firm's business practice of collection and processing of
correspondence for overnight mail or overnight courier service, and my correspondence placed for collection

21
for overnight delivery would, in the ordinary course of business, be delivered to an authorized courier or driver
authorized by the overnight mail carrier to receive documents, with delivery fees paid or provided for, that
same day, for delivery on the following business day.

22

23
I declare that I am employed in the office of a member of the bar of this court at whose
direction the service was made.  Executed on **June 27, 2017**, at Oakland, California.

24

25

26
Angelina Austin

27

*Anderson v. Vallejo*
*USDC No. 2:17-cv-00137-JAM-DB*

**The Law Offices of John L. Burris**
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200

RECEIVED
JUN 30 2017
CITY ATTORNEY'S OFFICE

# EXHIBIT

# B

1  JOHN L. BURRIS, ESQ., SBN 69888
   LATEEF H. GRAY, ESQ., SBN 250055
2  K. CHIKE ODIWE, ESQ., SBN 315109
   LAW OFFICES OF JOHN L. BURRIS
3  Airport Corporate Centre
   7677 Oakport Street, Suite 1120
4  Oakland, California 94621
   Telephone: (510) 839-5200
5  Facsimile: (510) 839-3882
   john.burris@johnburrislaw.com
6  lateef.gray@johnburrislaw.com
   chike.odiwe@johnburrislaw.com
7
8
   Attorneys for Plaintiff
9  JASON ANDERSON

RECEIVED

MAY 24 2019

CITY ATTORNEY'S OFFICE
CITY OF VALLEJO

10
11              UNITED STATES DISTRICT COURT
12             EASTERN DISTRICT OF CALIFORNIA
13

14  JASON ANDERSON,                     CASE NO.: 2:17-cv-00137-JAM-DB
15
16                    Plaintiff,        **PLAINTIFF'S RESPONSE TO
                                        DEFENDANT CITY OF VALLEJO'S
17       vs.                            REQUEST FOR ADMISSIONS, SET ONE**
18  CITY OF VALLEJO, et al.,
19
20                    Defendants.
21

22  **PROPOUNDING PARTY:**      Defendant CITY OF VALLEJO
23  **RESPONDING PARTY:**       Plaintiff JASON ANDERSON
24
25
26
27
28

                           - 1 -

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff JASON ANDERSON ("Plaintiff") responds and objects as follows to Defendant CITY OF VALLEJO's ("Defendant") First Request for Admissions:

## GENERAL OBJECTIONS

Plaintiff has based these responses on the assumption that Defendant in propounding admissions did not intend to seek admissions or information protected against discovery by the attorney-client privilege, the work product doctrine or which contain or reflect the impressions, conclusions, opinions, legal research or theories of attorney for the Plaintiff. To the extent that Defendant's requests are intended to elicit such admissions or information, Plaintiff objects thereto and asserts the protection provided in the foregoing rules to the fullest extent permitted by law.

The admissions to be provided in responses to these requests, while based on diligent exploration by Plaintiff, reflect only the current state of Plaintiff's knowledge and belief as to the existence of the admissions sought. Plaintiff anticipates that as this action proceeds it may discover additional information and, without obligating itself to do so, Plaintiff reserves the right to supplement its responses at that time. Furthermore, the admissions to be provided in response to these requests will be provided without prejudice to Plaintiff's right to rely on or use at arbitration or trial subsequently discovered information omitted from these responses as a result of mistake, error, oversight or inadvertence. Plaintiff further reserves the right to produce additional information at trial and to object on appropriate grounds to the introduction of all or any part of these requests.

Plaintiff objects to the admission requests to the extent that they seek confidential or proprietary information. In addition, Plaintiff objects to the admission requests to the extent that they seek information that is confidential pursuant to statutes, or designed to protect juvenile records. Plaintiff further objects to the general instructions, definitions, and requests for admissions to the extent that they are vague, overbroad and burdensome.

Plaintiff objects to these requests as harassing and propounded solely for the purpose of unduly burdening Plaintiff's prosecution of this case.

Without waiving these objections, Plaintiff responds to the Request for Admissions, Set One as follows:

**REQUEST NO. 1:**

Admit that you do not have any documents evidencing any out-of-pocket medical expenses incurred by you as a consequence of the INCIDENT.

**RESPONSE TO REQUEST NO. 1:**

DENY.

**REQUEST NO. 2:**

Admit that you do not have any documents evidencing your lost income claim as a consequence of the INCIDENT.

**RESPONSE TO REQUEST NO. 2:**

ADMIT.

**REQUEST NO. 3:**

Admit that you do not continue to suffer from any injuries claimed as a consequence of the INCIDENT.

**RESPONSE TO REQUEST NO. 3:**

DENY.

**REQUEST NO. 4:**

Admit that you were working as a "motor carrier of property" as defined in Vehicle Code section 34601 when transporting vehicles to AutoLinx on the day of the INCIDENT.

**RESPONSE TO REQUEST NO. 4:**

ADMIT.

**REQUEST NO. 5:**

Admit that you obtained a carrier identification number from the California Department of Motor Vehicles prior to operating your work vehicle on the day of the INCIDENT.

**RESPONSE TO REQUEST NO. 5:**

ADMIT.

**REQUEST NO. 6:**

Admit that Defendant Officer Melville did not assist to place you into handcuffs on the day of the INCIDENT.

**RESPONSE TO REQUEST NO. 6:**

    DENY.

**REQUEST NO. 7:**

    Admit that the Defendant Officers did not act maliciously toward you during the INCIDENT.

**RESPONSE TO REQUEST NO. 7:**

    DENY.

                                 **Law Offices of John L. Burris**

Dated:  May 20, 2019                               */s/ Kenneth Chike Odiwe*

                                       Kenneth Chike Odiwe, Esq.,
                                       Attorney for Plaintiff

1

**CERTIFICATE OF SERVICE**
*Anderson v. Vallejo, et al.*
2   *Case Number 2:17-cv-00137-JAM-DB*

3
**STATE OF CALIFORNIA, COUNTY OF ALAMEDA:**
4     I am a citizen of the United States and employed in the county aforesaid; I am over
the age of eighteen years, and not a party to the within action; My business address is 7677
5   Oakport Street, Suite 1120, Oakland, California 94621.  On the date below, I served on the
named parties and /or counsel of record:
6
**TIMOTHY R. SMYTH**
7   **Deputy City Attorney**
**City of Vallejo**
8   **555 Santa Clara Street**
**P.O. Box 3068**
9   **Vallejo, CA 94590**
10

11   The following documents in the manner checked below:

12   **PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF VALLEJO'S REQUEST**
**FOR ADMISSIONS, SET ONE**
13

14   ☒     **(VIA MAIL -- CCP §§ 1013(a), 2015.5)** By placing a true copy thereof enclosed in a sealed envelope(s),
addressed as above, and placing each for collection and mailing on that date following ordinary business
15   practices. I am readily familiar with my firm's business practice of collection and processing of correspondence
for mailing with the U.S. Postal Service and correspondence placed for collection and mailing would be
16   deposited in the U.S. Postal Service at Oakland, California, with postage thereon fully prepaid, that same day in
the ordinary course of business.

17   ☐     **(VIA PERSONAL DELIVERY -- CCP §§ 1011, 2015.5)** By placing a true copy thereof enclosed in a sealed
envelope(s), addressed as above, and causing each envelope(s) to be hand delivered on that day by Russ Taylor,
18   in the ordinary course of my firm's business practice.

19   ☒     **(VIA E-MAIL or ELECTRONIC TRANSMISSION -- CCP §§ 1013(e), 2015.5, CRC 2008)** Courtesy copy
via email or electronic transmission OR Based on a court order or an agreement of the parties to accept service
20   by e-mail or electronic transmission, I caused the document to be sent to the persons at the e-mail address(es) or
the facsimile number listed above. I am readily familiar with my firm's business practice of collection and
processing of correspondence via facsimile transmission(s) and any such correspondence would be transmitted
21   in the ordinary course of business.  The facsimile transmission(s) was reported as complete and without error,
and a copy of the transmission report is attached.

22   ☐     **(VIA OVERNIGHT MAIL/COURIER -- CCP §§ 1013(c), 2015.5)** By placing a true copy thereof enclosed
in a sealed envelope(s), addressed as above, and placing each for collection by overnight mail service or
23   overnight courier service.  I am familiar with my firm's business practice of collection and processing of
correspondence for overnight mail or overnight courier service, and my correspondence placed for collection
24   for overnight delivery would, in the ordinary course of business, be delivered to an authorized courier or driver
authorized by the overnight mail carrier to receive documents, with delivery fees paid or provided for, that same
25   day, for delivery on the following business day.

26   I declare that I am employed in the office of a member of the bar of this court at whose
direction the service was made.  Executed on **May 20, 2019** at Oakland, California.
27

*Anderson v. Vallejo, et al.*
*Case Number 2:17-cv-00137-JAM-DB*

The Law Offices of John L. Burris
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200

**The Law Offices of John L. Burris**
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

*Anderson v. Vallejo, et al.*
*Case Number 2:17-cv-00137-JAM-DB*


Jarrett Griffin

# EXHIBIT

# C

1        UNITED STATES DISTRICT COURT

2     EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

3

4   JASON ANDERSON,                 )
                                    )
5          Plaintiff,               )
                                    )
6                                   )
              vs.                   )   Case No. 2:17-cv-00137-JAM-DB
7                                   )
                                    )
8   CITY OF VALLEJO, a              )
    municipal corporation;         )
9   et al.                         )
                                    )
10         Defendants.              )
                                    )
11   _____  )

12

13

14

15

16         VIDEOTAPED DEPOSITION OF JASON ANDERSON

17                   December 18, 2018

18                     1:56 p.m.

19                 Vallejo, California

20

21

22

23

24   REPORTED BY:   CECILIA E. RODRIGUEZ
                     CSR No. 11479, RPR
25

```
 1      Q    And so after the Hayward auction, did you
 2   go anywhere else before you began towing the cars
 3   to the AutoLinx?
 4      A    No.
 5      Q    So you went directly from Hayward auction      02:21
 6   to AutoLinx?
 7      A    Vallejo, yeah.
 8      Q    And approximately how long is the drive
 9   from Hayward auction to the AutoLinx?
10      A    35, 40.                                        02:22
11      Q    Minutes?
12      A    Yeah, minutes.
13      Q    So on that day you were performing work as
14   Anderson Auto Transport, correct?
15      A    Yes.                                           02:22
16      Q    And when you were doing work for auto --
17   excuse me -- for Anderson Auto Transport, did you
18   have any form of a kind of records management
19   system in place?
20      A    How I kept track of my services?              02:22
21      Q    Yes.
22      A    Yeah.  I had, like, QuickBooks.
23      Q    QuickBooks?
24      A    And with different accounts, bill of
25   lading.                                                08:39
```

25

1  recall that happened with regard to when you came

2  into interaction with an officer in Vallejo?

3      A    First thing officer came up to my window

4  and told me to pull over.

5      Q    Okay.  Prior to that, was the officer --                    02:38

6  actually, strike that.

7          You know what?  Because I have this -- can

8  we mark -- going back a little bit.  Can we mark

9  this exhibit as the first to the deposition?

10         (Defendant's Exhibit 1 was marked for                        02:39

11  identification.)

12  BY MR. SMYTH:

13     Q    SO I'll represent to you this was a

14  picture taken by one of the Vallejo police officers

15  after the incident.                                                  02:39

16         Does the vehicle in this picture appear to

17  be your vehicle on the day of the incident?

18     A    Yes.

19     Q    Okay.  And the trailer connected to the

20  vehicle is also yours?                                              02:40

21     A    Yes.

22     Q    Okay.  That's it for this one.  Not too

23  exciting.

24         (Defendant's Exhibit 2 was marked for

25  identification.)                                                    02:40

```
 1      Q    So it was less than a minute; could it
 2  have been less than 30 seconds?
 3      A    Somewhere around there.
 4      Q    Okay.  And in that, you know, time frame,
 5  do you recall any other commands being issued,          03:10
 6  other than put your hands in the air?
 7      A    Yeah.  After I got tased, they kept
 8  telling me to get on my stomach.  And that's all I
 9  remember.
10      Q    So I'm just focusing on the time frame      03:10
11  before the first time you were tased.
12      A    That's the only commands I ever got was to
13  get on my stomach.
14      Q    Okay.  I think you did say put your hands
15  up at one point?                                        03:10
16      A    Yeah.  Put your hands up.  That's when
17  they jumped out.  Initially, they said put your
18  hands up.  And then they said get on your stomach.
19  After that they was tasing me.
20      Q    Did they -- and at any point did you use    03:11
21  any curse words, derogatory statements towards the
22  officers?
23      A    No.  Only thing I told them was I'm just
24  trying to work.  But when they pulled up and they
25  pulled their guns out, all I was trying to explain     03:11
```

```
 1        Q     Okay.  So basically -- let me try and
 2   summarize it a little bit, and tell me if I'm
 3   misunderstanding.
 4             So you got hit first in the chest,
 5   correct?
 6        A     I don't -- this -- just the area.  I don't
 7   know which one hit first.  I got hit in the leg, I
 8   got hit in the forearm, and I got hit in the chest.
 9   The initial one I was still standing while I was
10   getting shot.                                          03:18
11        Q     Okay.
12        A     I don't know where it was, though,
13   where -- which one it was first.  But the first one
14   didn't put me on the ground.
15        Q     Okay.                                       03:18
16        A     You know what I mean?
17        Q     I think what you're -- and tell me if I
18   misheard you.  But I thought that you said after
19   getting hit in the chest, you kind of crossed your
20   arms across, and that's when the second one came      03:18
21   and hit you in the forearm.  Is that --
22        A     These are the locations I got hit.  I
23   don't know which one hit me first.
24        Q     Okay.
25        A     But when I got hit first, that's when I     03:18
```

```
 1    just clenched like this (indicating).  It could
 2    have been the one in my leg.  But after they hit me
 3    once, they shot me two more times.
 4          So after they hit me once, I'm standing
 5    holding myself.  And they shoot me again.  That's          03:19
 6    when I fall.  You know what I mean?
 7       Q    So three Taser impacts, and it wasn't
 8    until the third one that you actually fell to your
 9    back; is that correct?
10       A    Yes.                                              03:19
11       Q    So after falling to your back, did you
12    hear any officers make -- issue any commands at
13    that time before another cycle was ran?
14       A    All I remember is get on your stomach.
15       Q    Okay.  So you heard -- you do recall          03:19
16    orders to get onto your stomach; is that correct?
17       A    Yes.  And that's when I was telling them I
18    can't.
19       Q    So you -- in that time frame before the
20    second cycle, you actually stated something to the          03:19
21    effect of I cannot do so, I cannot?
22       A    It had to be more than two cycles because
23    I couldn't even move.
24       Q    Okay.
25       A    They was still zapping me.  So while          03:20
```

1    they're zapping me, they're telling me to roll

2    over.   And I can't roll over.   So the more that I

3    can't, the more that they're zapping me.

4        Q     So let me just try to dissect it a little

5    bit, you know.   And I know it all is happening

6    quickly.

7             So between the first tasing and the first

8    cycle after you were on the ground, there's -- the

9    orders are to get on your stomach, correct?

10       A     Mm-hmm.

11       Q     And you testified that you're saying I

12   can't, correct?

13       A     Yes.

14       Q     And did you say I can't before that second

15   cycle started, or did the cycle occur before you

16   said something and said I can't?

17       A     They would tase me as soon as I hit the

18   ground.   They was tasing me when they jumped on top

19   of me --

20       Q     Okay.

21       A     -- like, whatever, cycling me.

22       Q     So as soon as you hit the ground, more

23   current is being cycled through you?

24       A     Yes.

25       Q     And do you recall seeing anything

1    Q    And you were released from the Vallejo

2  police station; is that correct?

3    A    Yeah.  Down -- yeah.  Down here, Benicia

4  Street or something like that.

5    Q    They didn't actually take you to jail at          04:14

6  Fairfield, correct?

7    A    No.  They took me back to Vallejo right

8  here.

9    Q    Okay.  And you received a citation or

10 notice to appear, something to that effect?              04:14

11   A    No.

12   Q    Okay.  So let's talk about that.  What --

13 after you got to the Vallejo Police Department,

14 what happened next?

15   A    When that officer dropped me off at the          04:15

16 Vallejo Police Department, then like another

17 officer, maybe his supervisor or sergeant or

18 something, he came in there, and he apologized and

19 told me they were sorry about what happened.  You

20 know what I mean?  And they let me go.                   04:15

21   Q    You were -- someone apologized to you

22 about the incident.  Do you recall who that was,

23 the name?

24   A    No.  I know he had to be over that guy

25 that was transporting me.  That's all I know.           04:15

```
 1       Q       How long were you at the police department
 2   before you were released?
 3       A       At the most ten minutes, just enough to
 4   have that talk with that man.
 5       Q       And your car was not towed, correct?        04:16
 6       A       No.
 7       Q       What about -- so during that ten minutes,
 8   the entire time were you speaking with that person?
 9       A       I was probably by myself a couple of
10   minutes.  As soon as he -- it wasn't even a jail     04:16
11   cell.  It was like -- I don't know.  It was just
12   like a little room.  And then he came in there.
13       Q       Like a holding room?
14       A       Yeah.  Maybe a holding room, holding cell.
15   I'm not going to say a cell.  It was just like a      04:16
16   little holding room.  And I was in there for a
17   quick minute.  And I was sitting down, and the guy
18   came in.
19       Q       So he apologized to you.  Did he say
20   anything else about the incident?                    04:16
21       A       He just stressed the fact that they don't
22   want to harass or -- you know, like working people
23   in Vallejo.  He was stating that they're trying to
24   clean up Vallejo.  That's why I told him and I
25   explained to him I'm just working.                   04:17
```

# EXHIBIT

# D

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

--oOo--

| | |
|---|---|
| JASON ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 2:17-CV-00137 |
| | ) -JAM-DB |
| CITY OF VALLEJO, a municipal | ) |
| corporation; ROBERT HERNDON, | ) |
| individually and in his capacity | ) |
| as a Police Corporal for the | ) |
| Vallejo Police Department, JAMES | ) |
| MELVILLE, individually and in | ) |
| his capacity as an Officer for | ) |
| the Vallejo Police Department; | ) |
| JOSEPH COELHO, individually and | ) |
| in his capacity as an Officer | ) |
| for the Vallejo Police | ) |
| Department; and DOES 1-50, | ) |
| inclusive, individually, jointly | ) |
| and severally, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) CERTIFIED COPY |

DEPOSITION OF OFFICER JAMES MELVILLE

TUESDAY, DECEMBER 18, 2018

REPORTED BY:  LISA L. JONES, CSR #12982

1

DEPOSITION OF OFFICER JAMES MELVILLE

```
 1   verbally aggressive, but I didn't write specifically
 2   what he said.
 3         MR. GRAY:  Q  And that was upon him exiting
 4   the vehicle he was verbally aggressive?
 5      A    "He refused to obey orders to get on the ground
 6   and was verbally aggressive," so that would have been
 7   after he exited the vehicle.
 8      Q    So what did he say to be verbally aggressive?
 9      A    I don't remember specifically what he said.
10      Q    Okay.  Can you answer the question as to why
11   you didn't include anything about him being verbally
12   aggressive once he exited the vehicle in Exhibit C,
13   which is your supplemental report?
14      A    I documented it in Exhibit B.
15      Q    Is there any reason why you didn't put it in
16   Exhibit C?
17         MR. SMYTH:  Broad.
18         THE WITNESS:  I'm sorry.  What was your
19   question?
20         MR. GRAY:  Q  Is there any reason why you
21   didn't include in Exhibit C that upon his exit from
22   the vehicle Mr. Anderson was verbally aggressive?
23      A    Is there any reason?  No.
24      Q    No.
25         Now, you never saw Mr. Anderson punch any
```

                                                          50

1    officer; is that correct?

2        A    They were struggling with him when he was

3    resisting, so I don't know.   You'd have to refer to

4    Corporal Herndon or Officer Coelho.

5        Q    So how far away from this struggle were you?

6        A    At the beginning?

7        Q    Yes.

8        A    Thirty feet or less, but then at the end, I

9    walked up.

10       Q    At the end, you walked up?

11       A    Well, I ran up to the other side of the

12   vehicle.

13       Q    And what did you do?

14       A    They were taking him into custody, so I just

15   stood by and put out on the radio that he was fighting.

16       Q    How long did this struggle last?

17            MR. SMYTH:  Calls for speculation.

18            THE WITNESS:  Less than a minute.

19            MR. GRAY:  Q  Okay.  Were you there when

20   Mr. Anderson was tazed?

21            MR. SMYTH:  I'm going to object as to vague as

22   to -- you mean, present?  What presence?

23            MR. GRAY:  Q  Were you on the scene when he

24   got tazed?  Let's not play these games.

25            Were you on the scene when he got tazed; yes or

                                                          51

# EXHIBIT

# E

```
 1              UNITED STATES DISTRICT COURT
 2         FOR THE EASTERN DISTRICT OF CALIFORNIA
 3                  SACRAMENTO DIVISION
 4                       *   *   *
 5   JASON ANDERSON,
 6          Plaintiff,
 7          vs.            CASE NO. 2:17-cv-00137-JAM-DB
 8   CITY OF VALLEJO, et al.,
 9          Defendants.
10                       *   *   *
11              Deposition of EVE CONNOLLY, M.D.,
12   Witness herein, called by the Defendants for
13   cross-examination pursuant to the Rules of Civil
14   Procedure, taken before me, Christine Gallagher,
15   a Notary Public in and for the State of Ohio, at
16   the offices of Mike Mobley Reporting, 334 South
17   Main Street, Dayton, Ohio, on Tuesday, the
18   19th day of March, 2019, at 1:04 p.m.
19                       *   *   *
20
21
22
23
24
25
```

Jason Anderson vs City of Vallejo, et al.                    Eve Connolly, M.D.

21

```
 1        A.    Okay.

 2        Q.    So on this there's a category of

 3   diagnoses at the top and it just says abrasion.

 4              Do you see that?

 5        A.    Yes, I do.

 6        Q.    And can you describe what an

 7   abrasion is?

 8        A.    Abrasion is a superficial break in

 9   the skin.

10        Q.    Okay.  And when you were treating

11   Mr. Anderson your diagnosis was merely an

12   abrasion; is that correct?

13        A.    I would have to say no.  If you go

14   to page 12 in my note, I wrote my diagnosis.

15        Q.    Okay.  Let's go to that then.  On

16   page 12 -- and this is an area where you

17   entered this information personally?

18        A.    Yes, I would have typed this in.

19        Q.    Okay.  And under diagnoses, tell

20   me what you --

21        A.    So I wrote clearance for

22   incarceration and puncture wound from Taser,

23   and I believe that that abrasion was pulled in

24   because I wanted him to have the abrasion

25   after-visit summary instructions.
```

Jason Anderson vs City of Vallejo, et al.                                    Eve Connolly, M.D.

22

1          Q.    Okay.   So in your examination of

2    Mr. Anderson, did you find there to be only one

3    location of a puncture wound from a Taser?

4          A.    I did.

5          Q.    Okay.   I'll just direct you back

6    one page to page 11, actually.   At the very

7    bottom, the last statement on there under skin,

8    it says right anterior shoulder, two small

9    puncture wounds from a Taser, correct?

10         A.    Correct.

11         Q.    And so is it your belief and

12   understanding back in the time frame of June 9,

13   2015 when you saw him, he only had the two

14   small puncture wounds on his right anterior

15   shoulder?

16         A.    That's correct.

17         Q.    In regard to under this category,

18   if Mr. Anderson was also suffering from many

19   other bruises and puncture wounds or anything

20   like that, would that be listed under the skin

21   category at this location?

22         A.    Yes, it would have.

23         Q.    Okay.   Thank you.

24               Above there, under the category

25   called constitutional, can you describe what

Case 2:17-cv-00137-JAM-DB   Document 27-3   Filed 08/06/19   Page 36 of 106
Jason Anderson vs City of Vallejo, et al.                                   Eve Connolly, M.D.

23

1    this category is intended to describe?

2         A.    It's intended to describe if the

3    patient appears alert, is able to converse with

4    me, appears in any -- in my first visual if he

5    appears in any distress, if he appears sick or

6    not sick.

7         Q.    Okay.  And when you wrote this

8    note here, it says no distress, well developed,

9    well nourished.  Is that also what you

10   understood when he presented with you back on

11   June 9, 2015?

12        A.    Yes.  I would have to add that I

13   would probably have said, you know, nothing

14   additional to what I would expect in his

15   current situation, no more distress than I

16   would have expected from someone in his

17   situation.

18        Q.    Okay.  If you go back one page to

19   page 10, on that page there's a description of

20   history of present illness.  It states that no

21   complaints and no pain and it states no chest

22   pain or shortness of breath.

23              Do you see that?

24        A.    I do.

25        Q.    Is it your understanding that at

24

1   the time that Mr. Anderson presented before you

2   on June 9th, 2015 he was having no complaints,

3   no pain, and no chest pain or shortness of

4   breath?

5           A.   I know that he complained of --

6   you know, that he stated he was Tased.  It is

7   my standard practice to inform them that I'm

8   here to make sure they're medically cleared for

9   incarceration and I always ask them if there's

10  any other complaints.  So I would have meant no

11  complaints other than being Tased in that

12  connotation.

13          Q.   Okay.  So he complained of being

14  Tased, but he had no other complaints of pain,

15  no complaints of chest pain or shortness of

16  breath?

17          A.   Correct.

18          Q.   All right.  And then if you go to

19  page 14, I believe this is what you had

20  mentioned about the after-care instructions?

21          A.   Correct.

22          Q.   Okay.  And in the after-care

23  instructions you wanted these particular

24  instructions, you know, following your

25  evaluation of Mr. Anderson; is that correct?

Jason Anderson vs City of Vallejo, et al.                                    Eve Connolly, M.D.

38

1   outside the door.

2            MR. SMYTH:  Sure.  I think we

3   might actually be done.

4            Did you have more?  Chike, are you

5   done?

6            MS. DINKLER:  Do you have more

7   questions?  If you have more questions, I would

8   like to take a quick restroom break.

9            MR. ODIWE:  Sure, let's go ahead

10  and take a break.

11           MS. DINKLER:  Thank you.

12           (Recess taken.)

13           MR. SMYTH:  Mr. Odiwe is

14  continuing as far as I understand.

15           MR. ODIWE:  I don't have any

16  further questions.

17           MR. SMYTH:  Okay.  Then maybe I

18  have just one follow-up off of his, actually.

19                  *   *   *

20             FURTHER CROSS-EXAMINATION

21  BY MR. SMYTH:

22           Q.   Kind of going back to your

23  records, on page 10 of Exhibit 2, I'll go back

24  to the history of present illness section.  It

25  states that Mr. Anderson is a 34-year-old male

39

 1   who presents to the emergency department for a

 2   complaint of being Tased by police and is here

 3   for medical clearance prior to incarceration.

 4            Had he complained of any other

 5   strikes or any sort of other force used by a

 6   police officer to you, would that have been

 7   included in the history of present illness?

 8        A.   Yes, it would have.

 9            MR. SMYTH:  Okay.  That is it for

10   me.

11            MS. DINKLER:  Any further

12   questions?  Hearing none, we're concluded.

13            MR. SMYTH:  We're done.  And

14   you're going to be invoicing our office for

15   your time; is that correct?

16            THE WITNESS:  Yes, that's correct.

17            MS. DINKLER:  We will read and --

18   well, the court reporter will deliver our copy

19   of the signature page and any corrections, if

20   there are any, to counsel.  Thank you.

21            THE NOTARY:  Mr. Smyth, is normal

22   delivery okay for the deposition transcript?

23   We're at about two weeks.

24            MR. SMYTH:  Yes.

25            THE NOTARY:  Thank you.

# EXHIBIT

# F

1                    UNITED STATES DISTRICT COURT

2         EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

3

4    JASON ANDERSON,                )
                                    )
5              Plaintiff,           )
                                    )
6                                   )
               vs.                  )    Case No. 2:17-cv-00137-JAM-DB
7                                   )
                                    )
8    CITY OF VALLEJO, a             )
     municipal corporation;        )
9    et al.                         )
                                    )
10             Defendants.          )
                                    )
11   _____    )

12

13

14

15

16                       DEPOSITION OF ROGER CLARK

17                          June 10, 2019

18                            9:56 a.m.

19                        Vallejo, California

20

21

22

23

24   REPORTED BY:   CECILIA E. RODRIGUEZ
                    CSR No. 11479, RPR
25

1   Q. Okay. So in that respect, just kind of going

2 into your background a little bit, what is your current

3 address?

4   A. It's on the report. It's the letterhead 10207

5 Molino Road, m-o-l-i-n-o, Santee, California 92071.

6   Q. Okay. And you traveled up here for today's

7 deposition, correct?

8   A. Yes.

9   Q. And just out of -- as a formality, you've agreed

10 off the record to invoice us after this deposition is

11 concluded for the cost of the deposition today, correct?

12   A. Yes.

13   Q. Thank you.

14   A. And that would be per the fee schedule

15 submitted.

16   Q. Okay. Thank you.

17   So you can put that Exhibit 1 aside. And then

18 we're going to move into what I've premarked as

19 Exhibit 2, which is a document entitled "Plaintiff's

20 Expert Disclosures" with -- excuse me -- ("Designation of

21 Expert Witness Information.)" And on page 2 of this

22 document, if you go ahead and take a look at the second

23 page, under the title "I, Retained Experts," you're

24 listed there as a retained expert on behalf of the

25 plaintiff.

1           Can you please take a look at that description
2   and tell me if that appears to be an accurate accounting
3   of what you were retained in this matter to opine on?
4       A.   Well, it's their description of what I told them
5   I felt I would opine upon, and I think it's adequate.
6       Q.   So this appears -- as far as you can say, as you
7   sit here looking at it, that this appears to be an
8   accurate description of the scope of your testimony in
9   this case?
10      A.   Yes.  What I want to make clear was I was not
11  instructed to limit anything I would give my opinion on
12  or ask specifically.  I was just asked generally to write
13  a report.  This pretty well encompasses the five opinions
14  in my report.
15      Q.   Okay.  And going to Exhibit A that's attached to
16  the Exhibit 2, I understand this to be your report in
17  this case?
18      A.   It is.
19      Q.   Can you just take a quick look -- I know it's a
20  lot of paper, but just confirm for me that this is the
21  full extent of the report that you understand you
22  prepared in this case?
23      A.   Yes, it is.
24      Q.   Okay.  And let's just kind of talk about what
25  this -- how this is structured just so I can kind of

1    as pertinent to this particular matter?

2        A.   Yes.

3        Q.   Okay.  And you cite an "a" through a "k,"

4    correct?

5        A.   Yes.

6        Q.   And can you -- as you sit here and you look at

7    that, is that a full, comprehensive list of those that

8    are pertinent in your mind that would be, I guess,

9    implicated by the particular set of facts in this case?

10       A.   Yes.

11       Q.   So Number 19, can you -- it says "2011

12   "Electronic Control Weapon Guidelines."  Can you describe

13   what that is?

14       A.   Sure.  And I may have to ask for the flash drive

15   back.  I transferred it over to you.  It may not be

16   there.

17            When the electronic control devices came on

18   scene, it was typically almost exclusively the TASER.  In

19   2005, the Department of Justice sponsored a study to

20   develop a list of guidelines for the use of the TASER, or

21   the electronic control device.  And that was done 50 --

22   there were about 52 specific recommendations.

23            Then in 2011 they revisited the issues again and

24   put out the 2011 guidelines, which have not been altered

25   or changed since.  This is considered, in the profession,

1    as the Department of Justice guidelines for the use of
2    weapons, such as the TASER, including this TASER that was
3    used here.
4           And this document was given and referred to
5    often by the Department of Justice to law enforcement
6    agencies.  It's cited whenever the Department of Justice
7    intervenes with a department.  And it -- their uses of
8    TASERS comes up, or electronic control devices come up,
9    and insist that they adhere to the 2011 guidelines.  I
10   have a -- several letters of such from the Department of
11   Justice.  So it's a well known document.  And it explains
12   in documents the limitations that should be taught and
13   trained.
14          Then TASERS from the Version 17 on embraced
15   those recommendations in their training.  In particular,
16   when a TASER should be used, where it should be fired,
17   how often you should cycle it, the limitations of 15
18   seconds, not to use more than one TASER, et cetera.
19   Those are examples.  So -- and that's the long answer,
20   but that's where it comes from
21       Q.   Okay.  So you mentioned that if you -- if I
22   handed you the flash drive back, you could put that
23   material on to the flash drive?
24       A.   Yes, I'll do that.
25       Q.   I'm going to hand you the flash drive back.  I

1    didn't see it on there.

2           Is that -- and I know you were describing how

3    TASER International has encompassed some of what was in

4    the 2011 Electronic Control Weapon Guidelines into its

5    training materials?

6       A.   Yes.  So there are 52 specific guidelines.  And

7    it should be used no more than three cycles that should

8    not exceed 15 seconds total, should not be fired into the

9    chest, those things.  There are a number of others.

10      Q.   Okay.  And would you consider those to be best

11   practices or minimum guidelines?

12      A.   Both.  That -- and they are -- and when I

13   testify about them without rebuttal, they are considered

14   to be the federal guidelines for the use of TASER.

15      Q.   When you say "without rebuttal," that means if

16   somebody else has a different standard, that it's up in

17   the air or available to debate?

18      A.   Yeah.  When it's presented -- my experience is

19   when it's presented, the courts recognized it as a --

20   these are the federal guidelines for TASER use and that

21   should -- as a national standard.

22      Q.   Okay.  And in regard to the additional TASER

23   International training materials, is there anything in

24   particular that -- in this category that you have that,

25   since you're already putting things on the flash drive,

1    haven't -- I mean, just to be clear, you're not trying to

2    make an opinion or state which set of facts, I guess, is

3    more likely true than the other?

4        A.   Correct.

5        Q.   Okay.  That's kind of the province of the jury,

6    I guess, correct?

7        A.   Yes.

8        Q.   So when you -- I guess on page 3 then it has a

9    brief overview that -- "Events as proffered by

10   Mr. Anderson," that is the -- that's what you mean when

11   you were saying these are just his events as he described

12   them?

13       A.   Right.  And that's exactly -- and that was the

14   title of that section.

15       Q.   Okay.  So let's just then go through a little

16   bit of that.  Actually, let's talk generally about how

17   your report is structured.

18            So it says "Opinions Thus Far" on page 4 at the

19   bottom.

20       A.   Yes.

21       Q.   And then it kind of trickles into page 5 and 6.

22   That is -- is that the extent -- the totality of your

23   opinions in this case so far?

24       A.   Correct.

25       Q.   Okay.  Then when you start on page 6, there's a

38

1    calculus for the force as taught.  They used to have
2    what's called sort of a linear listing of force where it
3    falls in a sequence.  But the training now is that you
4    address the behavior as it's presented to you.  And
5    there's some typical expectations when you're facing that
6    event.  So it goes cooperative, resistive, assaultive,
7    combative and life threatening.
8    BY MR. SMYTH:
9        Q.   Okay.  In this spectrum if you were taking the
10   plaintiff's account as true, you'd probably put him
11   where, under cooperative or --
12       A.   The plaintiff's?
13       Q.   Yeah.
14       A.   He was cooperative.
15       Q.   If you were to be taking the defense position
16   with regard to Mr. Anderson, where would you put him on
17   this spectrum?
18       A.   Nothing further than resistive and would be a
19   verbally resistive, not physically resistive.
20       Q.   Okay.  So he's kind of a verbal -- verbal
21   resistive is what you said?
22       A.   Right.
23       Q.   And is that on here under one of these
24   particular five categories when you're looking at --
25       A.   Yeah.  So it's the resistive.  Being resistive

```
 1    is not an assault.  It's not assaultive behavior.
 2        Q.    So it's more the middle active resistance?
 3        A.    Yes.
 4        Q.    And, just to be clear, where did you -- where
 5    was -- where did you take this particular section of text
 6    from?
 7        A.    The Learning Domain 20.
 8        Q.    Okay.  So under "Active resistance," if we're
 9    looking at from the officer's point of view, so this
10    describes physically evasive movements to defeat an
11    officer's attempt at control, including bracing, tensing,
12    run away or verbally signaling an intention to avoid or
13    prevent being taken into or retained in custody.
14              Is that a fair description of how Mr. Anderson
15    was acting in regard to the -- excuse me -- the defense
16    description of facts?
17        A.    Yes.
18              MR. GRAY:  Objection.  Calls for speculation.
19              You can answer.
20              THE WITNESS:  Yeah.  The answer is yes.
21    BY MR. SMYTH:
22        Q.    Okay.  And then with regards to the lists of to
23    particular force, it includes control holds and
24    techniques to control the subject and situation, use of
25    personal weapons in self-defense and to gain advantage
```

```
 1            But, having said that, these five I consider to
 2   be the heartbeat of the issues at hand.
 3       Q.   So if the court were to allow you to testify on
 4   just about any topic, whatever counsel may ask you, would
 5   be -- it would be your intention to provide something?
 6       A.   Yes.
 7       Q.   Okay.  Whether or not the court allows you,
 8   that's what it comes down to?
 9       A.   We appreciate the court's wisdom and judgment,
10   and I always try to abide by it.
11       Q.   That's pandering to the court.
12            So one thing that we did talk about earlier and
13   I -- since you mentioned you had not heard the audio of
14   the dispatch radio discussions, I want to play that for
15   you, and then just ask you if that changes anything so
16   that way we're clear.
17            Are you up for that task?
18       A.   Sure.  I don't recall listening -- hearing it --
19       Q.   Okay.
20       A.   -- as I sit here, but I'm happy to hear it.
21       Q.   So if you remember hearing it after I start
22   playing it and say no, then cut me off and then we're
23   done for the day.
24       A.   Okay.
25       Q.   So please do so.  I see some hungry, famished
```

1    people here.

2          All right.  This, again -- so this is actually

3    on the disk that you provided me.  And on the disk you --

4    or the flash drive you gave me, it's identified within a

5    folder called Anderson v. City of Vallejo Defense COV

6    Response to Plaintiff's Special Interrogatories Set One

7    CD.  You open that up, it's a document title VPD

8    1507252-Radio.  And it's an MP3 file.

9          So I'm just going to play that off of my

10   computer.  Tell me if you can't hear me or hear it.

11         (Playing audio.)

12   BY MR. SMYTH:

13     Q.   So I'll stop it there.  Now it sounds like he's

14   in custody.  They're trying to get Kaiser.

15         So, anyway, that was what we had for the audio

16   up until and I just stopped it, for the record, at the

17   five minute and 18 second mark.

18         Does this, what we just listened to, in any way

19   affect your opinions in this matter?

20     A.   No.

21     Q.   Okay.  And is there a reason why not?

22     A.   Yes.  Because this in my opinion documents the

23   timing as I have always understood it, which is rapidly

24   evolving.  What I heard was the units falling behind the

25   motorcycle, motorcycle dropping back, announcing a turn,

1    and he gives a location.  I think it was a dental office.

2        Q.   Access Dental.

3        A.   Yes.  So that would document where it's

4    stopping.  And then that's where it's important to note

5    when -- that time versus Code 4, which is seconds.  I

6    didn't have a stopwatch, but it's very, very quick.  So

7    in that time of the stop and announcing that they're at

8    this dental, they're stopped and the Code 4, all of the

9    tasing, all the alleged that -- going for a toolbox,

10   saying all this stuff is occurring.  Those are the two

11   parameters.  That's very quick.

12       Q.   Okay.

13       A.   So it reinforces my opinion.

14       Q.   I'm just -- because there's kind of the two

15   factual scenarios, the plaintiff's account, which

16   included three to four minutes of physical beating, as

17   well as the defendant's account, which is, I believe,

18   what you were just describing more so, does it change

19   your opinions with regard to the plaintiff's account of

20   the events that transpired?

21       A.   Well, the plaintiff's remembrance of the length

22   of time certainly doesn't match the time of the encounter

23   and the time to the tasing, when the tasing occurs.  It's

24   far faster than minutes.

25       Q.   Okay.  So in the time frame then, as far as we

1   just heard, it couldn't have been three minutes or so of,

2   you know, physical beating at that?

3        A.   No.

4             MR. GRAY:  Objection.  Calls for speculation.

5             THE WITNESS:  It would only seem that way to the

6   recipient.  Other than that, I would agree.

7   BY MR. SMYTH:

8        Q.   Okay.  And with regard to -- well, is there

9   anything else you took from that just hearing it just now

10  about the incident that either supports or contradicts

11  anything about what you understood prior to coming here

12  today?

13       A.   Well, you can hear his voice in the background.

14  You have to listen to it more.  I would have many to

15  listen to it a number of times to see what -- if you can

16  tell what's being said.  But I think what's -- my initial

17  take appears to me is the time he -- it's logical the

18  time they announce they pulled into the dental, gave that

19  location, that's the place of stopping, where he's pulled

20  over, stopped.  He has to get out.  He has to be --

21  present a threat sufficient for this tasing to occur.

22  It's far too quick.

23       Q.   Okay.  Okay.  One last question.  Does this

24  audio change anything with respect to your -- any sort of

25  belief that Officer Coelho or Melville was involved in

1    the force used on the plaintiff?

2         A.    Not from hearing the Code 4, other than having

3    their guns out or -- but there's nothing in the record

4    about them doing anything like the tasing.

5         MR. SMYTH:  Okay.  And I believe that is it.

6    Unless you want to put anything on.

7         MR. GRAY:  No questions.

8         MR. SMYTH:  All right.  Thank you very much.

9    We're off.

10        (Ending time:  1:47 p.m.)

11

12

13

14                    _____

15                    ROGER CLARK

16

17

18

19

20

21

22

23

24

25

# EXHIBIT

# G

1   JOHN L. BURRIS, Esq., SBN 69888
    LATEEF H. GRAY, Esq., SBN 250055
2   K. CHIKE ODIWE, Esq., SBN 315109
    LAW OFFICES OF JOHN L. BURRIS
3   Airport Corporate Center
    7677 Oakport Street, Suite 1120
4   Oakland, California 94621
    Telephone: (510) 839-5200
5   Facsimile: (510) 839-3882
    john.burris@johnburrislaw.com
6   lateef.gray@johnburrislaw.com
    chike.odiwe@johnburrislaw.com
7

8   Attorneys for Plaintiff

9               UNITED STATES DISTRICT COURT

10            EASTERN DISTRICT OF CALIFORNIA

11

12  JASON ANDERSON,                     Case No. 2:17-cv-00137-JAM-DB

13
                  Plaintiff,
14                                      PLAINTIFF'S EXPERT
                                        DISCLOSURES (DESIGNATION
15                        Plaintiff,    OF EXPERT WITNESS
         vs.                            INFORMATION)
16                                      [Fed. R. Civ. P. 26(a)(2)(B)]

17  CITY OF VALLEJO, a municipal
    corporation; ROBERT HERNDON,
18  individually and in his capacity as a
    Police Corporal for the Vallejo Police
19  Department; JAMES MELVILLE,
    individually and in his capacity as a
20  Officer for the Vallejo Police
    Department; JOSEPH COELHO,
21  individually and in his capacity as a
    Officer for the Vallejo Police
22  Department; and DOES 1-50,
    inclusive, individually, jointly and
23  severally,

24

25                Defendants.

26

27

28



Side text: The Law Offices of John L. Burris
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200

RECEIVED
MAY 14 2019
CITY ATTORNEY'S OFFICE
CITY OF VALLEJO

1

The Law Offices of John L. Burris
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200

Plaintiff hereby submits Plaintiff's disclosures regarding designation of expert and related witness information. Plaintiff anticipates using and/or intend to offer the following experts' witness opinion and related evidence at trial.

## I.   RETAINED EXPERTS

1.   **Roger A. Clark**, Retired Lieutenant for the Los Angeles County Sheriff's Department, 1027 Molino Road, Santee, CA 92071. Mr. Clark's curriculum vitae ("CV"), testimony list, fee schedule, and expert report are attached as **Exhibit "A"** to these disclosures. Mr. Clark's fee for deposition testimony is $350.00 per hour. Plaintiff anticipates that Mr. Clark's expert opinion testimony is expected to address issues regarding proper police practices, policies and procedures related to detention, arrest, use of force, and the deployment of a taser in relation to how said practices, policies and procedures were wrongfully applied during the course of Plaintiff's arrest.

## II.   NON-RETAINED EXPERTS

2.   **Dr. Eve Connolly**, Physician, 50 North Progress Drive, Xenia, OH 45385. Plaintiff anticipates that Dr. Connolly's testimony is expected to address issues regarding Plaintiff's injuries after the subject-incident.

## III.   RESERVATION OF RIGHTS

Plaintiff reserves the right to call additional expert witnesses for purposes of rebuttal or impeachment, if necessary, as provided for under the Federal Rules of Civil Procedure, including at the time of trial. In addition, Plaintiff reserves the right to amend, or delete from this disclosure of expert witnesses as provided by law, including but not limited to a supplemental disclosure of expert witnesses.

1        Plaintiff reserves the right to call any and all other experts disclosed by any other party to

2   the respective actions at the time of trial.

3

4                                              Law Offices of John L. Burris

5

6   Dated: May 10, 2019              /s/ K. Chike Odiwe
                                    LATEEF H. GRAY, Esq.,
7                                   K. CHIKE ODIWE, Esq.,
                                    Attorneys for Plaintiff
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                       3

# Exhibit A

# Roger A. Clark

## Police Procedures Consultant, Inc.
10207 Molino Road. Santee, CA 92071
Phone: (208) 351-2458,  Fax: (619) 258-0045
rclark9314@aol.com

## May 10, 2019

John L. Burris, Esq.
Lateef Gray, Esq.
Law Offices of John L. Burris
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, CA  94621

**Regarding:   *Jason Anderson, v. City of Vallejo, et al.  Case No. 2:17-cv-00137-JAM-DB.***

Dear Mr. Burris:

Thank you for retaining me to analyze and render opinions regarding the June 9, 2015 pullover and use of force arrest of Mr. Jason Anderson (Mr. Anderson) by Vallejo Police Department (VPD) Officer James Melville (Officer Melville), Officer Joseph Coelho (Officer Coelho), and Corporal Robert Herndon (Corporal Herndon).  Pursuant to the requirements of Rule 26, I have studied the reports, audio and video recordings, preliminary hearing transcripts, and other material (as listed below) provided to me thus far regarding this case.  Please be advised that if/when any additional information is submitted, it is likely that a supplemental report refining my opinions will be necessary.

It is also necessary to state at the beginning of this report that I do not make credibility determinations in expressing my opinions.  That is, where there are differences in the events proffered by the Defendants and/or other witnesses, versus the incident as proffered by the Plaintiff and/or other witnesses, I do not opine for the tier of fact regarding who is the more believable witness.  I consider that the resolution of any such conflicts to be within the purview of a jury to decide.

## Materials Reviewed Thus Far:

    1.      Plaintiff's Complaint for Damages

2.      Defendants' Answer to Complaint.

3.      Protective Order.

4.      Vallejo Police Department Report #15-7252

5.      Deposition Transcripts:
     a.      Mr. Jason Anderson (Plaintiff) ✓
     b.      Officer Joseph Coelho.     *COOELO*
     c.      Officer James Melville
     d.      Corporal Robert Herndon. ✓

6.      Interrogatories and Responses.

7.      Special Interrogatories and Responses.

8.      Requests for Production of Documents and Responses.

9.      Medical Records of Jason Anderson.

10.     Photographs.

11.     Taser Report.

12.     CAD.

13.     Videos.

14.     Dispatch Audio.

15.     Vallejo Police Department Policies..

16.     California Vehicle Code.

17.     California Penal Code.

18.     California POST Basic Learning Domains as Follows:
     a.      #1: "Leadership, Professionalism & Ethics."

b.    #2: "Criminal Justice System."
c.    #3: "Policing in the Community."
d.    #5: "Introduction to Criminal Law."
e.    #15: "Laws of Arrest."
f.    #18. "Investigative Report Writing."
g.    #20: "Use of Force."
h.    #21: "Patrol Techniques."
i.    #22: "Vehicle Pullovers."
j.    #23: "Crimes in Progress."
k.    #33: "Arrest Methods/Defensive Tactics."

19.    2011 Electronic Control Weapon Guidelines. U.S. Department of Justice Office of Community Oriented Policing Services and Police Executive Research Forum. Washington, D.C., 2011.

20.    Additional TASER International Training Materials.

21.    Overview of the incident scene via the internet.


**Brief Overview of Events and Commentary:**

*Events as proffered by Mr. Anderson:*

On June 9, 2015, Mr. Anderson was hauling a trailer of cars to AutoLinx dealership in Vallejo from an auction in Hayward for a vehicle transfer; a service rendered by his company, Anderson Auto Transport.

Mr. Anderson was driving on Sonoma Boulevard, not far from AutoLinx, when he pulled up to a construction area. Mr. Anderson stopped when prompted by a construction worker to do so. While stopped, Mr. Anderson saw an officer (Officer Melville) sitting on his motorcycle outside his passenger side window. Giving the command through the passenger side window, Officer Melville ordered Mr. Anderson to pull over. Mr. Anderson was confused and asked Officer Melville, "why?", of which Officer Melville responded, "because I said so."

Mr. Anderson explained that he was just going around the corner to drop off vehicles at AutoLinx for work. Mr. Anderson then drove away, pulled around the corner to the AutoLinx dealership, and parked; not followed by Officer Melville. Since Officer Melville hadn't followed Mr. Anderson, Mr. Anderson proceeded to get out of his truck

to start unloading the cars from his trailer but noticed that Officer Melville was still sitting on his motorcycle, about a block behind him.

A few minutes after Mr. Anderson exited his vehicle, police cars with sirens sounding arrived. The officers, Officer Melville, Officer Coelho, and Corporal Herndon, jumped out of their vehicles with weapons drawn. The officers yelled for Mr. Anderson to put his hands up. Mr. Anderson complied and said, "I'm just trying to work."

Within a minute of the officers arrival and for no legally justifiable reason, Corporal Herndon deployed his taser into Mr. Anderson twice. Mr. Anderson fell to the ground on his back, where he was tasered once more.

The officers ordered Mr. Anderson to roll over onto his stomach, but he was unable to due to his reactions to the tasing, and stated this to the officers. Regardless of his explanation, multiple officers began piling on top of Mr. Anderson, and began beating him with their hands, elbows, and knees, on his upper torso, shoulders, and neck, in an effort to force Mr. Anderson to roll onto his stomach.

After being piled on and beaten by the officers for approximately three to four minutes, Mr. Anderson was rolled over onto his stomach and handcuffed. Since Mr. Anderson never resisted, the cuffing was handled by one police officer.

On the scene, the Defendant officers forcefully removed the taser prongs from Mr. Anderson's body. Mr. Anderson was thereafter transported to Kaiser Permanente and then to the Vallejo Police Department.

An audio recording immediately after the incident captured Corporal Herndon, Officer Melville and Sergeant Steven Gordon, concocting a story and attempting to develop a justification for tasing Mr. Anderson. On the recording, Corporal Herndon is heard inquiring how to deal with Mr. Anderson being 'tased on video.' In reference to justifying the tasing, Corporal Herndon is heard saying, "well he was running," and then states that "It looked like he was running…It looked like he was gonna grab a …" In response to Corporal Herndon, Sergeant Gordon immediately tells him to "get your story straight." Corporal Herndon then offered that it looked like Mr. Anderson was "gonna to grab a tool out of his toolbox." Corporal Herndon then changed the justification saying, "no. he looked like he was gonna run. Would you shut up and listen."


**Opinions Thus Far:**

1.  I see nothing in this set of facts that Mr. Anderson presented a
    credible threat to any extent to justify the use of excessive force
    displayed by the Vallejo Police Officers. Furthermore, I see nothing
    in the record to justify multiple taser deployments or piling on top of
    Mr. Anderson and delivering numerous blows to his upper torso,
    shoulders, and neck.

2.  The infliction of force by a law enforcement officer (especially the
    use of extreme force such as a taser) is only authorized under lawful
    authority.

3.  Regardless of whether Mr. Anderson was actually guilty of any
    violation (Mr. Anderson appeared in court, and all charges were
    dropped), Mr. Anderson was not observed possessing a weapon. In
    addition, he did not resist any of the officers commands; other than
    stating he was unable to roll over due to the effects of the taser
    deployments and firing cycles. Therefore, in this instance, Corporal
    Herndon's use of force was excessive, unreasonable, careless, and
    far below the established professional standards, as were Officer
    Melville and Officer Coelho's actions.

4.  Taking Mr. Anderson's account of the event, the VPD submitted
    false reports in violation of VPD policy, POST training, and the Law
    (as taught by POST).

5.  Taking Mr. Anderson's set of facts as true, then responding VPD
    Officers failed in their joint duty to intervene with Officer Melville,
    Officer Coelho, and Corporal Herndon, to prevent and/or stop the
    unnecessary and excessive force inflicted on Mr. Anderson:

    "The community expects that its peace officers will use only
    reasonable amounts of force. Likewise, it expects that
    someone, including peace officers, will intervene if
    reasonable force is exceeded. For the community and the
    officer's protection, the officer must know the laws pertaining
    to intervention.

    "Peace officers are required by their position to intervene in
    any force situation they perceive as excessive." (POST
    Learning Domain: #20 "Use of Force," Chapter 6 -

Page 5 of 17

Consequences of Unreasonable Force, page 6-7.)

"The United States Constitution protects individuals from unlawful actions of peace officers.  NOTE: The officer who fails to intervene, for whatever reason, is also held accountable by the United States Code."  (POST Learning Domain: #20 "Use of Force," Chapter 6 - Consequences of Unreasonable Force, page 6-8.)

## Professional Standards Regarding Filing A False Report:

It cannot be overstated that the facts proffered by Mr. Anderson are significantly different than those reported by the defendants. In my opinion they cannot be reconciled by mistakes in perception or intent. Rather, in this case there can be only one set of true facts. Officers are trained that filing a false police report is ethically wrong and can rise to the level of criminal conduct.  The POST training in this regard is specific:

"*Minimum Requirements When Writing a Report*

"When writing a report, the minimum requirements to accomplish your job ethically and preserve the integrity of the criminal justice system are:

- *Never falsify any portion of your report or modify any aspect of the report away from the factual truth.*
- Objectively document every fact (or piece of evidence) known to you that could prove or disprove the event you are reporting. If you are not sure, include the fact or piece of evidence anyway and qualify it as possible evidence or investigative information.
- Be clear. A well-written report does not raise questions, it answers them.
- Write your report free of speculation or personal opinions. You are there to gather facts.

"You are responsible for the quality of each report you write. Each report is an opportunity to build or destroy your credibility. Always write precisely what happened to the best of your knowledge. A report determined by a court to be compromised or unethical not only topples your credibility, but your agency's as well - plus it opens the door to challenge every past

enforcement action you have performed. Compromising your report is just not worth it and it will raise questions about your effectiveness as a peace officer and may ultimately lead to termination of your employment. It is your obligation to report incidents just as they occurred; anything else is unethical." (POST Learning Domain #1, Chapter 2 - Professionalism and Ethics in Policing. Emphasis added.)

It also cannot be overstated that officers are trained that persons arrested can and are often prosecuted based upon the assumption that the police reports are true. Thus the extreme necessity for ethical and accurate reports.

**Professional Standards Regarding the Use of Force:**

Early on in the POST Basic Academy, the seriousness of the unique powers imbued on Law Enforcement Officers is stressed with the required responsibility they have to use them with "great care". It is clear that there is no room for unprofessional, immature and/or hot-headed individuals in the law enforcement profession. This is best expressed in Learning Domain # 2: "Criminal Justice System:"

"The criminal justice system gives law enforcement two extraordinary powers:

1. The power of arrest and
2. The power to use deadly force.

"The authority to do so does not come from the rule of an authoritarian dictator. Rather it comes from the will and consent of the people who *put their trust in law enforcement to use that power with the utmost of care and restraint*. This is why it is important to emphasize that peace officers do not confer "police powers" on themselves. These powers come to the criminal justice system from the people they serve." (Learning Domain #2: "Criminal Justice System," page 1-4. Emphasis added.)

Additionally, POST specifies that there are a number of key factors that can affect which force option is approved and appropriate under the concept of the "totality of circumstances."

Officers are trained that they are not allowed to inflict excessive force on persons that they arrest and that they must calculate their use of force based on the credible threat(s)

Page 7 of 17

evident in the totality of the circumstances.  Accordingly, a subjects' resistance/actions to an arrest will determine the type of force used by peace officers.  The following chart illustrates how a subject's resistance/actions can correlate to the force applied by an officer (Listed as Subject's Actions, Description of Resistance and Possible Force Option):

*Cooperative* - Subject offers no resistance:
- Mere professional appearance
- Nonverbal actions
- Verbal requests and commands

*Passive non-compliance* - Does not respond to verbal commands but also offers no physical form of resistance:
- Verbal requests and commands
- Officer's strength to take physical control, including lifting/carrying
- Control holds and techniques to direct movement or immobilize a subject

*Active resistance* - Physically evasive movements to defeat an officer's attempt at control, including bracing, tensing, running away, or verbally signaling an intention to avoid or prevent being taken into or retained in custody:
- Control holds and techniques to control the subject and situation
- Use of personal weapons in self-defense and to gain advantage over the subject
- Use of devices to secure compliance and ultimately gain control of the situation

*Assaultive* - Aggressive or combative; attempting or threatening to assault the officer or another person:
- Use of devices and/or techniques to secure compliance and ultimately gain control of the situation
- Use of personal body weapons in self-defense and to gain advantage over the subject

*Life-threatening* - Any action likely to result in serious injury or possibly the death of the officer or another person
- Utilizing firearms or any other available weapon or

action in defense of self and others

Officers are trained that they must take into account the *totality of the circumstances* when selecting a reasonable force option. In this case, Mr. Anderson did not resist, did not refuse to follow any orders, and had no weapon whatsoever in his possession. (POST Learning Domain #20: Chapter 2 – Force Options, pages 2-6 & 2-7 )

Additionally, an entire chapter in POST Learning Domain #20 is devoted to the "Consequences of Unreasonable Force." Cruelty and malicious assaults are absolutely forbidden:

> **"Unreasonable force** occurs when the type, degree and duration of force employed was not necessary or appropriate."

> "Malicious assaults and batteries committed by peace officers constitute unlawful conduct. When the force used is unreasonable, the officer can face criminal and civil liability, and agency disciplinary action." (Learning Domain #20, page 6-4.)

**POST Training Regarding The Re-Evaluation of Force Requirement:**

> "Peace officers must use the force option appropriate for the situation as conditions may change rapidly. Officers must continually reevaluate the subject's action and must be prepared to transition as needed to the appropriate force options." (POST Learning Domain 20, page 2-7.)

In view of this incident nothing other than "Officer Presence," "Verbal Instruction" and/or possibly "Firm Grip" techniques were justified in this case. The standards in this regard are as follows (reference: POST LD # 20: "Use of Force." Page 2-5.):

**Information Regarding the Taser Weapon:**

The most commonly deployed Electronic Control Weapon (ECW) is manufactured by Taser International, notably the Taser M26 and X26 models. "Taser®," developed in the 1970s by Jack Cover, is an acronym for the Thomas A. Swift Electric Rifle. Swift was a fictional character in a 1930s series of science fiction books by Victor Appleton. The Taser fires darts that attach to (or penetrate) a person's skin or clothing and create an

**Page 9 of 17**

incapacitating electrical current.

The hand-held Taser has two modes of use: "probe" and "touch-stun." In the probe mode, the cartridges project, through a set of wires, a pair of barbs (or darts with hooks) that attaches to clothing or penetrates the skin after the Taser is fired, delivering an electrical charge. When the barbs strike, the electrical current is sent down the wires and through the body between the two barb points.

The International Association of Chiefs of Police, with support from the Office of Community Oriented Policing Services, the Bureau of Justice Assistance, the National Institute of Justice, and other policing organizations and associations developed and published in 2006 and 2011 defining documents regarding the use of the Taser weapon. Among other issues, 53 specific and necessary guidelines governing the use of the Taser weapon are listed. As such, the documents expresses the accepted professional standard of care and as endorsed by the U.S. Department of Justice.

It is uncontested in the record that the taser was deployed three times on Mr. Anderson. In my opinion, there was a gross departure from the accepted standards when other far more reasonable and appropriate methods of force (is actually necessary) should have been deployed. Taking Mr. Anderson's statement as true, he was unarmed and compliant, and as such, did not fall under the "active combatant" rubric. In my opinion the use of a taser in this instance grossly deviated from the POST training and required professional standards.


**My Qualifications To Review This Case:**

My opinions are based in part on my training, professional experience and education. I am a twenty seven year veteran of the Los Angeles County Sheriff's Department (LASD). I was hired on December 1, 1965, and I retired from active service on March 31, 1993. My career included six years at the rank of Deputy Sheriff, six years as a Sergeant, and fifteen years as a Lieutenant. I retired holding a California Peace Officer Standards and Training (POST) Advanced Certificate, and I am a graduate of the POST Command College (class #5, 1988). The POST Command College was a Masters level two-year course of study requiring a thesis, in Police Administration, with the diploma awarded by the California Department of Justice (and not the California University system).

During the course of my service with the department, I had a wide range of duties. Those duties included an 18 month assignment as a staff jail deputy and two years as an

Administrator/Lieutenant in the same jail facility (Men's Central Jail). I also served on the department as a patrol officer, field supervisor, jail watch commander and administrator, station watch commander, and commanding officer of investigative units. I was a field training officer while assigned as a patrol deputy, and I trained new officers in POST and department approved patrol procedures, field investigations, apprehension techniques, and emergency procedures.

I was a Station Detective and, as such, reviewed and assessed cases passed on to me by the patrol officers. Those cases included possible complaints relating to both misdemeanor and felony crimes. They frequently required follow up investigations and interviews before the exact nature of the case could be determined. As a field officer and detective, I was trained in interview and interrogation methods and subsequently trained other officers.

Among other assignments as a Sergeant, I supervised field officers and station detectives as they took complaints and conducted preliminary investigations regarding criminal and administrative matters.

As a Sergeant and as a Lieutenant, I served on the training staff of the Los Angeles County Sheriff's Department's Patrol School which taught the POST accepted patrol tactics, and investigation and apprehension methods.

As a Watch Commander and as a Lieutenant, I responded to, investigated, and reported on the use of force and officer-involved shootings. I was also assigned by my Department to sit as a member of Departmental review committees regarding the reasonable or unreasonable use of force and tactics.

As stated above, during my career I was assigned to the Los Angeles County Men's Central Jail (MCJ) for a period of 18 months as a line officer. Upon my subsequent promotion to Lieutenant, I returned to the same facility approximately 10 years later. During that time, I was assigned as a Jail Watch Commander, and as the Facility Training and Logistics Administrator. At the time of my assignment, the MCJ held a daily population in excess of 7,000 inmates, including a hospital, which was serviced by a staff of more than 900 sworn and civilian personnel.

During my assignment as the Administrative Lieutenant of the Department's Reserve Forces Bureau, I worked closely with the State of California Peace Officer Standards and Training in revamping our Reserve Academy to bring it into state compliance. This process gave me an expertise in the POST Basic curriculum. I also supervised the

**Page 11 of 17**

training of cadets at our Reserve Training Academy.  They were taught proper investigation, interview, and apprehension procedures.  Among other topics, I lectured the Reserve Academy on the POST syllabus: "The Legal and Moral Use of Force and Firearms."

During the 1984 Olympics held in Los Angeles, I was assigned and served as the Department's Intelligence Officer at the Los Angeles Olympics Emergency Operations Center.

During the last five and one half years of my career, I commanded a specialized unit known as the North Regional Surveillance and Apprehension Team (N.O.R.S.A.T.), which was created to investigate, locate, observe and arrest major (career) criminals.  I held this position until my retirement from the Department on March 31, 1993.

Criminals investigated and arrested by N.O.R.S.A.T. included suspects involved with homicide, robbery, kidnaping, extortion, burglary, major narcotics violations and police corruption.  The majority of our cases were homicide cases, including the murder of police officers.  Arrests frequently occurred in dynamic circumstances including crimes in progress.

My unit also conducted major narcotics investigations including undercover narcotics buys, buy busts, and reverse stings.  We frequently deployed at the request of investigative units, such as Narcotics, which provided the initial investigative leads for our operations.  These narcotics cases usually involved multiple kilogram quantities of drugs and amounts of money ranging from one hundred thousand to more than one million dollars.

Approximately 80% of cases assigned to N.O.R.S.A.T. were active Homicide investigations.  In that regard, the unit processed, under my command and supervision, various aspects (depending on the complexity of the cases involved) of approximately 1,000 Homicides ranging from deaths of police officers to serial homicide suspects.

Additionally, the majority of the over 1750 cases for which I have been retained as a consultant (since 1993) have involved injuries or deaths connected with some aspect of force during either apprehension or while in police custody.

During the first three months of my command of N.O.R.S.A.T., the unit had three justifiable shooting incidents.  From that time, and over the next five years of my command, N.O.R.S.A.T. established a remarkable record of more than two thousand

arrests of career criminals without a single shot fired – either by my officers or by the suspects whom we arrested.

Many of these suspects were armed and considered to be very dangerous.  Some were apprehended during the course of their crimes and were very prone to use firearms to escape apprehension.  This record of excellence was accomplished through the use of proper tactics, management and supervision of personnel, training in correct apprehension methods, and adherence to the moral and ethical standards endorsed by California POST and my Department.  These methods and principles are also embraced by every state training commission of which I am aware, as well as the national standards established by the U.S. Department of Justice.

As a result of my position and record as the commanding officer of N.O.R.S.A.T., I was assigned to author Field Operations Directive 89-3, "Tactical Operations Involving Detective Personnel."  This order remained in force 20 years (until September 30, 2009), and included the basic standards and considerations with which investigative officers must comply in the event of a tactical deployment such as the dynamic entry into a building for the purpose of an arrest and/or seizure of evidence.

Since my retirement, I have testified as an expert on use of force, jail procedures and jail administration, investigations, police procedures, police tactics, investigative procedures, shooting scene reconstruction, and police administration in Arizona State Courts, California State Courts, Washington State Courts and Federal Courts in Arizona, California, Colorado, Florida, Illinois, Indiana, Louisiana, Missouri, Nevada, Ohio, Oregon, Pennsylvania, Texas, Utah, Washington, New Mexico, New York and Wisconsin.  I have testified before the Los Angeles Police Department Board of Rights and the Los Angeles County Civil Service Commission.  I have testified before the Harris County (Texas) Grand Jury and the Cleveland Grand Jury.  I have also submitted written opinions in matters before Alaska, Delaware, Idaho, Montana, North Carolina, New York, Oregon, Kentucky, and Wyoming Federal and State Courts.  I was selected (January 20, 2007) to present on the topic of: "Police Experts" at the National Police Accountability Project held at Loyola Law School, Los Angeles, California.  I was selected (September 23, 2010) to present on the topic of: "Using POST Modules to Establish Police Officer' Standard of Care" at the National Police Accountability Project, National Lawyers Guild Convention, in New Orleans, Louisiana.  I was selected (March 30, 2012) to present to the Kern County Public Defenders in Bakersfield, California, on the topics of "Ethics, Police Investigations, the California POST Curriculum, and the M26 and X26 Taser weapons."  On August 7, 2013 I was invited and presented to the Texas Civil Rights Project (TCRP) 2013 Annual Legal Summit in Austin, Texas on the

topic: "Ethically Working with Experts from the Prospective of a Police Expert."  On October 15, 2015 I was the invited presenter at a Community Forum in Victorville, California on the topics of Police Procedures, Community Policing, Use of Force, and features of the M26, X26 and X2 Taser weapons.

I have worked on several projects with the Paso Del Norte (El Paso, Texas) Civil Rights Project and the Texas Civil Rights Project (Austin, Texas).  As a result of my expert testimony in *Border Network, et al. v. Otero County, et al.*, Case No. 07-cv-01045 (D.N.M. 2008), a federal court issued a temporary injunction to stop the illegal and widespread immigration raids in Chaparral, New Mexico, implemented pursuant to Operation Stonegarden.  The case resulted in the adoption of a model policy for inquiring into a person's immigration status, which has been adopted nationwide and has also been presented to the United States Senate, the Secretary of Homeland Security, and other government officials seeking to reform immigration enforcement.

I have been recognized, and my expert report was quoted by the USDC in *Burns v. City of Redwood City*, 737 F.Supp2nd.1047.  I have been recognized, and my expert report was quoted by, the United States Court of Appeals for the Ninth Circuit as an expert in Police Administration and Use of Force in *Blankenhorn v. City of Orange, et al.*, 485 F.3d 463, 485 (9th Cir. 2007).  The Ninth Circuit also drew from my expert report in a second published case involving Police Detective Investigations. *Torres, et al. v. City of Los Angeles, et al.*, 540 F.3d 1031, 1042-43 (9th Cir. 2008).  The *Torres* case was appealed to the U.S. Supreme Court and returned for trial.  I provided the expert opinion in *Chavies Hoskin v. City of Milwaukee, et al.*  (USDC Case No. 13-cv-0920), regarding field strip and cavity searches, hiring, training, discipline and supervision, and which resulted in significant policy changes within the MPD.  My opinions supported argument in the Ninth Circuit case: *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1102 (9th Cir. 2014).  The Ninth Circuit also drew from my expert reports regarding credible threats justifying the use of force, *Hayes v. County of San Diego*, 658 F.3d 867 (9th Cir. 2011), and *Young v. County of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011).  The Ninth Circuit also drew from my expert reports regarding Jail Administration and Administrative Responsibilities, *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011).  The Ninth Circuit also drew from my expert reports regarding an officer's violation of the 14th Amendment if an officer kills a suspect when acting with the purpose to harm, unrelated to a legitimate law enforcement objective, in *AD v. California Highway Patrol*, 712 F. 3d 446 (9th Cir. 2013).  The Fifth Circuit drew from my expert report regarding search and seizure, investigations and no-knock requirements in *Bishop et al. v. Arcuri et al.*, 674 F.3d 456 (5th Cir. 2012).  The Ninth Circuit also drew from my expert report regarding the use of impact weapons (PepperBall) on civilians in *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012).  I was

the expert in the Ninth Circuit opinion regarding the allegations proffered by police officers and their use/display of firearms against civilians in *Green v. City and County of San Francisco*, 751 F. 3d 1039 (9th Cir. 2014). Most recently, I was the expert in an important Ninth Circuit opinion regarding the allegations proffered by police officers and their use of lethal force against unarmed persons in *Jennifer Cruz, et al., v. City of Anaheim, et al.*, 765 F.3d 1076 (9th Cir. 2014). I was the expert at trial in the Ninth Circuit opinion regarding the order of evidence at trial in *Estate of Manuel Diaz, v. City of Anaheim*, et al., No. 14-55644. My opinion is quoted in the Ninth Circuit opinion regarding the use of lethal force in *A.K.H. a minor, et al, v. City of Tustin, et al.*, No. 14-55184. My opinions supported argument in the Ninth Circuit case: *Estate of Angel Lopez, et al., v. Kristopher Michael Walb*, No. 14-57007 (not for publication) wherein the Ninth Circuit Affirmed the Denial of Summary Judgement by the District Court. My opinions supported argument in the Ninth Circuit case: *Estate of Shakina Ortega, et al., v. City of San Diego, et al.* No. 14-56824 (not for publication) wherein the Ninth Circuit Affirmed the Denial of Summary Judgement by the District Court. My opinions supported argument in the Ninth Circuit case: *Jerry Newmaker, et al., v. City of Fortuna, et al.* No. 14-15098 (for publication). My opinions supported argument in the Ninth Circuit Case: *Tonya E. Shirar, v. Miguel Guerrero, et al.* regarding use of lethal force and "suicide by cop," No. 15-55029 (not for publication). My opinions supported argument in the Ninth Circuit Case *Angel Mendez; Jennifer Lynn Garcia, v County of Los Angeles, et al.*, Nos. 13-56686, and 13-57072 (for publication) and which was settled before the Supreme Court, No. 16-369, regarding the use of lethal force and searches. My opinions supported argument in the Ninth Circuit case: *Chien Van Bui, et al, v City and County of San Francisco, et al*, No. 14-16585 (not for publication), regarding the use of lethal force. My opinions supported argument in the Sixth Circuit opinion, Case No. 16-5322, *Carey Woodcock v. City of Bowling Green, et al*, Originating Case No. 1:13-cv-00124 regarding the use of lethal force. My opinions supported argument in the Ninth Circuit opinion, Case No. No. 14-17388 (for publication), *Johnathan Jones, et al v. Las Vegas Metropolitan Police Department, et al*, Originating Case No. 2:12-cv-01636- regarding the use of lethal force and Taser weapons. My opinions supported argument in the Ninth Circuit opinion, Case No. 16-15606 (for publication), *Christian Longoria, et al v. Pinal County, et al*, Originating Case No. 2:15-cv-00043, PHX SRB, regarding the use of lethal force after a vehicle pursuit. My opinions supported argument in the Ninth Circuit case: *S. B. v. County of San Diego*, 864 F.3rd 1010 (9th Cir. 2017), (for publication) regarding issues of qualified immunity. My opinions supported argument in the Tenth Circuit case: *Russell Tenorio v. Brian Pitzer*, Case No. 2012-CV-01295 (U.S. Supreme Court No. 15-795) regarding issues of qualified immunity and use of deadly force. I participated as a retained expert in the USDC Fifth District case, Stephen McCollum et al., v. Texas Department of Criminal Justice, et al., Case No.3:12-CV-02037 regarding in-custody

Page 15 of 17

hyperthermia deaths.  My opinions supported argument (and I was cited by name) in the Ninth Circuit opinion, Case No. 17-55116 (for publication), *Susan Mellen, et al v. Marcella Winn, et al,* D.C. Case No. 2:15-cv-03006, GW AJW, regarding Detective Investigations and Qualified Immunity.

The California Court of Appeal (Second Appellate District) drew in part from my expert report regarding search warrant service, *Macias v. County of Los Angeles*, 144 Cal. App.4th 313, 50 Cal. Rptr.3d 364 (2006).  The California Supreme Court drew in part from my expert opinion regarding police tactics and the use of deadly force, *Hayes et al. v. County of San Diego et al.*, 57 Cal.4th 622 (2013).  I was quoted by the California Appellate Court (Second Appellate District, Division Three) in *B.B., a Minor, etc., et al., v. County of Los Angeles, et al., Case No. B264946 Super. Ct. Nos. TC027341, TC027438, BC505918* regarding positional asphyxia issues.

On February 10, 1989, I was personally commended at the Los Angeles County Hall of Administration by United States Attorney General, the Honorable Edwin Meese III, for my work to establish California Penal Code Section 311.11 (forbidding the Possession of Child Pornography).  On February 22, 1993 (at the time of my retirement), Mr. Meese presented a second personal commendation for the success of this critical five-year effort to bring this law into effect.  California Penal Code Section 311.11 is required training for all Law Enforcement Officers in California and taught extensively in the POST Basic Learning Domain #9: "Crimes Against Children,"pages 1-18 to pages 1-21.

On December 7, 2015 I was requested by the Cleveland District Attorney to present my opinions to the Cleveland Grand Jury regarding the November 22, 2014 shooting death of Tamir Rice by City of Cleveland police officers.  In March, 2016 I was requested by the Delaware Attorney General to review and provide my opinions regarding the shooting death of Jeremy McDole.  The AG report was published May 12, 2016.

I have been found competent by both Federal and State Courts to render opinions as to responsibilities as occurred in this case.  A number of my cases have involved law enforcement officers as civil plaintiffs and as criminal defendants.

Since my retirement, I have become an expert in the features and the use of TASER International's products, including the Model M26, Model X26 and Model X2 ECDs.  I own each, along with the download software.  I have reviewed all the TASER training materials and am familiar with the risks and tactics associated with these potentially lethal devices.  I have qualified as an expert on TASER products and testified both in deposition and before juries on their usage.  Two published examples are *Lee v. Nashville*, 596 F.

Supp. 2d 1101, 1121-22 (M.D. Tenn. 2009), and *Heston v. City of Salinas*, 2007 U.S. Dist. LEXIS 98433, *25-*26 (E.D. Cal. 2007). My most recent Federal acceptance/certifications as an expert in the general use and deployment of the TASER weapon (including Taser International product warnings/bulletins sent to every agency using the Taser weapon) occurred in Los Angles, California on November 7, 2017 in *William Mears, et al., v. City of Los Angeles, et al,* USDC Case No.: CV 15-08441 JAK (AJWx) and on February 22, 2018 in *Maria Hernandez; A.J., Jr., et al, v. City of Los Angeles, et al,* USDC Case No. 2:16-c-02689 AB (JEMx), and on May 3, 2018 in Heleine Tchayou, et al. v. City of Los Angeles, et al., Case No. 16-cv-06073-TJH-MRW. There are many others.

Attached as Exhibit A is a statement listing my law enforcement qualifications and experience; Exhibit B is my fee schedule; Exhibit C is a listing of matters in which I have testified in the last four years as an expert.

I reserve the right to modify my opinions to the extent additional information is provided.

I declare under penalty of perjury that the foregoing is true and correct. Executed May 10, 2019 at Santee, CA.

Roger A. Clark

ROGER A. CLARK

*10207 Molino Road • Santee CA 92071 • Telephone: (208) 351-2458.  Fax: (619) 258-0045.*

EXPERIENCE

**Police Procedures Consultant (self employed)**
April 1, 1993 to Present.................................................................. **26 years**

I have been certified by Federal and State courts as expert in jail and police procedures in Federal and State Courts.  I select my cases carefully and have consulted in approximately 1800 cases thus far since my retirement from the Los Angeles County Sheriff's Department.

**Substitute Teacher, Madison School District**
August 1994 to 2003........................................................................ **9 years**

I substitute teach at all levels in the school district (elementary to high school).  As a volunteer, I wrote and managed a $85,000.00 federal grant for our Central High School.  This grant is in its sixth year and has generated $510,000.00 for the school.

**District Liaison, State of Idaho Department of Juvenile Corrections**
August 1, 1995 to March 1, 1997.........................................1 year, 7 months

I represented the new Department of Juvenile Corrections to the ten counties in the Seventh Judicial District.  As such, I worked closely with Probation Officers, County Commissioners, Judges, other state agencies, private care providers, etc. in the implementation of the new Idaho Juvenile Corrections Act of 1995.  I wrote or participated in the writing of several federal grants for the District.  I conducted training - both formal and informal - and developed a series of new therapy programs for juveniles with private care providers.  I also served as the Director of the Detention Center and the State Placement Coordinator during this time.

-1-

**Los Angeles County Sheriff's Department**
December 1, 1965 to March 31, 1993................................**27 years 4 months**

**Note:**  In 1993 the Los Angeles County Sheriff's Department had 7,000 sworn and 3,000 civilian personnel and a daily County Jail inmate population of 23,000.

**Service as a Lieutenant (15 Years, 0 Months):**

1. **Field Operations Region I**
   **NORSAT**                          11/15/87 to 3/31/93   **64 months**

I commanded a specialized unit created to investigate, locate, observe and arrest major (career) criminal offenders.  This unit was designed as a multijurisdictional effort for the cities in the northern region of Los Angeles County.  The command consisted of four (4) Sergeants, seventeen (17) Deputies, four (4) Police Officers, twenty five (25) Reserves, and three (3) civilian employees.  The 1992 budget set at $1.5 million.  The arrest rate averaged 500 career criminal arrests per year with a 97% conviction rate and no shots fired (on either side) for 61 consecutive months.

Significant contributions while assigned at this Bureau were:

- Increase in participating police agencies.
- Direct participation with corporate (private) agencies.
- Formation of a reserve and volunteer unit.
- Establishment of NORSAT Foundation private funding.
- Computerization of the unit.
- Promotion of fourteen personnel.
- Fleet expansion from 13 to 28 vehicles (donated).
- Formation of the DEA Valley Task Force.
- Field Operations Directive 89-3.

2. **Executive Offices**
   **Reserve Forces Bureau**        05/01/84 to 11/15/87  **42 months**

I was the administrative officer to a specialized bureau responsible for coordinating the activities of 1,000 sworn reserve personnel, 900 civilian

-2-

volunteers, and 450 law enforcement explorer scouts.  The Bureau identifies programs for their effective utilization throughout the Department; develops and tracks training programs; sponsors activities designed to promote growth and keep morale at high levels.

Significant contributions while assigned at this bureau are:

- Total restructure of the Academy training process for reserve Deputies.
- Implementation of upgrade programs to move lower level reserves to level I status.
- Departmental Reserve Certification procedures.
- Annual leadership seminar.
- The Reserve News, a nationally recognized police magazine.
- Computerization of the Bureau.


**3.     Field Operations Region I**
**        Crescenta Valley Station     04/01/80 to 05/01/84  49 months**

Crescenta Valley Station is a full service police facility of 100 personnel serving a population of 50,000 (including the Contract City of La Canada-Flintridge) and a total area of 250 square miles. During my four years service at this facility I served in every management role:

- **Nine months** as the Station Commander during an extended absence by the Captain (08/01/83 TO 05/01/84).
- **Sixteen months** as the Operations Lieutenant (03/01/82 TO 08/01/83).
- **Twelve months** as the station Detective Bureau Commander (03/01/81 to 01/01/82).
- **Twelve months** as a Watch Commander (04/01/80 to 03/01/81).

Significant contributions while assigned at this command are:

- Negotiation of an enhanced city contract (at a savings to the City).
- Formation of a volunteer community support group.
- Development and implementation of an integrated community emergency response plan.
- High School undercover narcotics operation.
- Restructure of the Station Detective Bureau.
- The annual station picnic, which was effective in boosting station morale.

4.    **Custody Division**
      **Central Jail**          04/01/78 to 04/01/80  **24 months**

The Los Angeles County Central Jail is the largest jail facility in the State of California, with a daily inmate population of seven thousand (7,000), an assigned staff of six hundred (600), and two hundred (200) civilian personnel. My service at this command was equally divided into two major assignments:

- Training and Logistics Lieutenant (04/01/79 to 04/01/80).
- Watch Commander (04/01/78 to 04/01/79).

Significant contributions while assigned at this command are:

- "Hot Fire" Training program, which is now a State (POST) mandated training module for all custody personnel throughout California.
- The "Defend in Place" fire safety operational plan for jail facilities.
- New fire safety specifications for jail bedding and mattresses.
- The development of fire safe jail mattress material.
- The development of a facility emergency response plan.
- The computerization of training, timekeeping, and scheduling for the facility (800 sworn and 200 civilian personnel).
- "Spouse day at CJ"--A program for spouses of employees.


**Service as a Sergeant (6 Years, 4 Months):**


5.    **Administrative Division**
      **Federal Surplus Property**   01/12/76 to 04/01/78  **27 months**

This program was entirely my idea and developed while I was assigned at my previous assignment (Emergency Operations Bureau). The unit provides millions of dollars in free federal excess and surplus food and property from clothing to heavy equipment and aircraft to the department each year. I am very proud of this contribution to the Department.


6.    **Patrol Division**
      **Emergency Operations**    02/01/74 to 01/12/76  **23 months**

I was among the original personnel that formed this unit which blended the activities of the Department's planning    unit with emergency operations planning and preparation. I was assigned as the Personnel and Logistics Sergeant.

-4-

Significant contributions while assigned at this command are:

- Formation of a new County Emergency Operations Center.
- Participation in the 1974 Federal earthquake studies of Los Angeles County.
- Development of the Department's specialized Field Command Post equipment.
- Development of the Department's Field Booking Team.


7.   **Patrol Division**
     **Civil Defense Bureau**        12/01/73 to 02/01/74  **02 months**

I was assigned to this unit to facilitate the orderly transition into the new Emergency Operations Bureau.


8.   **Patrol Division**
     **San Dimas Station**        12/12/72 to 12/01/73  **12 months**

I performed all the duties of a Watch and Patrol Sergeant.  I also frequently served as the Watch Commander.


9.   **Technical Serviced Division**
     **Communications Bureau**     12/01/71 to 12/12/72  **12 months**


I served as the Watch Commander in The Sheriff's Department's old radio room located at the Hall of Justice, and assisted in the transition to the existing communications facility.


**Service as a Deputy (6 Years, 0 Months):**


10.  **Patrol Division**
     **San Dimas Station**
     **Detective Bureau**        01/01/70 to 12/01/71  **23 months**

I served as a Station Detective assigned to the evening watch.  I handled the first response to all crimes requiring investigations.  I processed all evening juvenile matters, prepared criminal complaints and juvenile petitions.

-5-

11. **Patrol Division**
    **San Dimas Station Patrol**   01/29/68 to 01/01/70  **24 months**

I performed all duties assigned to Station Patrol:  Jailer, Desk, Watch Deputy, Patrol, and Traffic.

12. **Technical Services Division**
    **Transportation Bureau**   11/01/67 to 01/29/68  **02 months**

I was temporarily assigned to the Beverly Hills Municipal Court pending my assignment to a Patrol Station.

13. **Custody Division**
    **Central Jail**   05/06/66 to 11/01/67  **18 months**

I returned to my previous assignment at the Central Jail after graduation from the Academy.  I performed all aspects of a Custody Deputy i.e. Module Officer, Prowler, Control Booth, High Power, etc.

14. **Administrative Division**
    **Academy**   01/17/66 to 05/06/66  **04 months**

I was a Sheriff's trainee assigned to Class #110.

15. **Custody Division**
    **Central Jail**   12/01/65 to 01/17/66  **01 month**

I was a pre-academy Custody Deputy assigned to the Central Jail as an "off the street" Deputy Sheriff.

## DEGREES AND CERTIFICATION

| | | |
|---|---|---|
| P.O.S.T. Command College (Class #5) | POST | 1988 |
| Management Certification | POST | 1980 |
| Advanced Certification | POST | 1975 |
| Associate of Science Degree | Chaffey College | 1971 |

# Roger Clark

## Police Procedures Consultant, Inc.

10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  Fax: (619) 258-0045
rclark9314@aol.com

## UPDATED LIST OF SWORN TESTIMONY FOR RULE 26

### May 6, 2015 to May 8, 2019
(Revised May 9, 201)

**Trial.** May 6 & 7, 2015.  Brian Reed, et al., v. City of Modesto, et al.  USDC Case No. 1:11-CV-01083-GSA.

**Deposition.** May 11, 2015.  Carey Woodcock, et al. v. City of Bowling Green, Kentucky, et al. USDC Case No. 1-13-CV-00124-JHM.

**Deposition.** May 18, 2015.  Kimberly Deen, et al, v. City of Redding, et al.  USDC Case No. 2:13-CV-01569 KJM-CMK.

**Trial.** May 20, 2015.  John Warner Stephens, v. County of San Diego, et al.  USDC Case No., 11cv2832 AJB (KSC).

**Deposition:** May 26, 2015.  Joshua Chavez v. City of Hayward et al., Case No.:C-14-00470 DMR ADR.

**Deposition:** May 27, 2015.  Edward Monroe, v. City of Richmond, et al., Case No.: 3:14 CV 00795 WHO.

**Trial:** May 28, 2015.  Merricks Prudhomme, v. City of Orange, et al.  Superior Court (Orange County) Case No. 30-2013 00654570.

**Deposition:** May 29, 2015.  Jonathan Meister, v. City of Hawthorne, et al. USDC C.D. Cal. Case No. CV 14-1096-MWF (SHx).

**Deposition:** June 1, 2015.  Cash Jerome Ferguson-Cassidy, v. City of Los Angeles, et al., USDC Case No. CV14-06768 SVW (JPRx).

**Trial:** June 8, 2015  Harrison Orr, v. California Highway Patrol, el al., Case No. 2:14-cv-00585-WBS-EFB.

**Trial:** June 11, 2015.  Idalia J. Morgutia-Johnson,  v. City of Fresno, et al.  USDC Case No. 1:14-CV-000127 LJO-SKO.

**Deposition:** June 15, 2015.  Juan Herrera, v. City of Los Angeles, et al.  USDC Case No. 2:13-cv-08831-ABC AS.

**Trial:** June 23, 2015.  Guillermo Ramirez, et al. v. City of Oxnard, et al., USDC Case No.: CV 13-01615 MWF AN.

**Deposition**: June 26, 2015.  C.E.W. a minor, et al., v City of Hayward, et al., Case No.: C 13-04516 LB.

**Trial:** July 1 & 2, 2015.  Juan Herrera, v. City of Los Angeles, et al.  USDC Case No. 2:13-cv-08831-ABC AS.

**Deposition:** July 10, 2015.  Perla Carr, v. Montgomery County, Texas, et al., Case No.: 4:13-cv-2795.

**Deposition:** July 13, 2015.  Stephanie Bruno, et al, v. Donald Hubbard, et al., Circuit Court, Jackson County (Missouri), Case No. 1416-CV 18501.

**Deposition:** July 16, 2015.  Donna Lancaster, v. Kansas City Board of Police Commissioners, et al., Case No.:4:14-cv-00171-SOW.

**Deposition:** July 23, 2015.  Sharam Borjkhani, et al. v. CHP, et al.  Superior Court, State of California (Los Angeles County).  Case No.  BC487580.

**Deposition:** July 27, 2015.  Michael Fulton v. Brian Thayer, et al., Case No.: CV10-00137-JCG.

**Deposition:** July 29, 2015.  Orly Vered, et al., v County of Los Angeles, et al., Case No.: CV14-9559 MWF (MANx).

**Trial:** August 6, 2015  Oscar Morales v. City of Los Angeles, et al.  USDC Case No. CV 11-04757 SVW (Shx).

**Deposition.** August 11, 2015  Kimberly Mitchell, et al, v. Muhlenberg Community Hospital, et al.  Muhlenberg Circuit Court, Commonwealth of Kentucky Case No. 12

**Deposition:** August 12, 2015.  Russell Martinez v. Joseph Salazar, et al., D.N.M. Case No. 14-cv-00534 KG/WPL.

**Deposition.** August 17, 2015.  Dr. Gary D. Frakes, v. Sergeant William R. (Billy) Masden and Captain Dustin Ott. USDC (Texas) Case No. 4:14-cv-1753.

**Deposition.** August 20, 2015.  Emmanuel Bracy, v. City of Los Angeles, et al.  Case No. C13-

09350 (JC).

**Deposition.** August 24, 2015.  Porfirio Santos-Lopez, an Individual v. City of Long Beach et al., Case No.: CV14-05781-FMO-AS.

**Deposition:** August 26, 2015.  Aaron Vincent Arde Catacutan, v. City of San Jose, et al. Superior Court, State of California (Santa Clara County) Case No. 113 CV 254501.

**Deposition:** August 31, 2015.  Sammy Sanchez, et al v. City of Tucson, et al.  USDC Case No. 72-1576857.

**Trial:** September 8, 2015.  Cash Jerome Ferguson-Cassidy, v. City of Los Angeles, et al., USDC Case No. CV14-06768 SVW (JPRx).

**Deposition:** September 10, 2015.  Juventino Rodarte, v. Alameda County, et al.  USDC Case No. 4:14-cv-00468-KAW.

**Deposition:** October 2, 2015.  Brennan Colbert, v. County of Kern, et al., Case No.: 1:13-cv-01589-JLT.

**Trial:** October 7, 2015.  Michael Fulton v. Brian Thayer, et al., Case No.: CV10-00137-JCG.

**Trial:** October 16, 2015.  Kristy Beets, et al, v. County of Los Angeles, et al.  Superior Court, State of California (County of Los Angeles) Case No. KC 057667.

**Trial:** October 19, 2015 & October 20, 2015.  Christopher J. Windsor, v. Chris Eaves, et al., Case No. 5:13-CV-00038.

**Deposition:** October 27, 2015.  Francisco Arrieta, et al., v. County of Kern, et al., Case No.:1:14-CV-00401-LJO-JLT.

**Deposition:** October 28, 2015.  Lorenzo Adamson, an individual, v. City of San Francisco, et al., Case No.: 4:13-cv-05233-DMR.

**Trial.** October 29, 2015.  Robert J. Reese, Jr. v. County of Sacramento, et al., Case No. 2:13-cv-00559 JAM DAD.

**Trial.** November 3, 2015.  Lance Ricotta, v. City of Imperial, Ca, et al., Case No.: 13CV1454 DMS WVG.

**Deposition.** November 9, 2015.  Dorothy Jean Sams, et al, v. City of Los Angeles, et al, Superior Court (Los Angeles County) Case No. BC537879.

**Trial.** November 10 & 11, 2015. People v. Former Webster Police Officer D. Bassett. 339th District Court, Harris County, Texas, Cause No. 1411316.

**Trial.** November 12, 2015. People v. Marcus Stewart, Superior Court (Santa Clara County), State of California Case No. C1370824.

**Trial.** November 13, 2015. Lorenzo Adamson, an individual, v. City of San Francisco, et al., Case No.: 4:13-cv-05233-DMR.

**Deposition:** November 18, 2015. Miguela Nuila, v. City of Los Angeles, e al. USDC Case No. CASE NO. CV 14-9160 DDP (PJWx).

**Deposition:** November 18, 2015. Damion Russell et al., v. City of Los Angeles, et al., Case No.: CV-14-09433-JFW (Ex).

**Deposition:** November 20, 2015. Raymond Newberry et al. v. County of San Bernardino, ED-CV14-02298 JGB (SPx)

**Deposition:** November 23, 2015. Robert Barron, v. City of Redding, et al., USDC Case No.: 2-14-CV-01107 MCE-CMK.

**Deposition:** December 2, 2015. Sukhwinder Kaur, et al, v. City of Lodi, et al. USDC Case No. 2:14-cv-00828 GEB-AC.

**Deposition:** December 3, 2015. Isaiah Salvadore Zepeda, te al, v, County of Los Angeles, et al. Superior Court (Los Angeles County) Case No. BC450200.

**Grand Jury Testimony:** December 7, 2015. People v. Officer Timothy Loehman and Officer Fran Garmback, Cuyahoga County (Ohio) Grand Jury. [Civil Case No: 14 Civ. 02670.]

**Trial:** December 9 & 10, 2015. Superior Court, State of California (Los Angeles County), People v. Ugene Park & Sarah DeLeon, Case No. 5SY03653, DR No. 15-1087.

**Trial:** December 15, 2015. Alejandra Ruiz, et al., v. City of Medford, et al. Circuit Court, State of Oregon (Jackson County), Case No. 13CV07663.

**Trial:** December 17, 2015. Isaiah Salvadore Zepeda, et al, v, County of Los Angeles, et al. Superior Court (Los Angeles County) Case No. BC450200.

**Deposition:** December 22, 2015. Jordan Edward Branscum, v. San Ramon Police Department, et at. Case No. Case No.: C11-04137 LB.

**Deposition:** December 28, 2015. Susan Rush, v. City of Santa Monica, et al. USDC Case No.

BC568815.

**Preliminary Hearing & Motion to Suppress:** January 5, 2016.  People v. Gregory Williams, Superior Court, State of California (Solano County), Case No. VCR223119.

**Preliminary Hearing & Motion to Suppress:** January 5, 2016.  People v. Gregory Williams, Superior Court, State of California (Solano County), Case No. VCR223119.

**Deposition:** January 8, 2016.  Doris Ray Knox v. City of Fresno, et al.  USDC Case No. 1:14-CV-00799 EPG.

**Deposition:** January 11, 2016.  Refugio Nieto, et al., v. City and County of San Francisco, et al., Case No.: C14-03823-NC.

**Deposition:** January 12, 2016.  Garry Bradley, v. County of Los Angeles, et al. Superior Court, State of California (Los Angeles County), Case No. BC473200.

**Deposition:** January 13, 2016.  Jesse Trevino, v. Bakersfield Police Department, et al., Case No. 1:14-CV-01873 JLT.

**Deposition:** January 21, 2016.  Richard A. Collender, et al., v. City of Brea, et al.  USDC Case No. SACV 11000530 AIJ-MLGx.

**Deposition:** January 26, 2016.  The Estate of Cecil Elkins, Jr., et al., v. California Highway Patrol, et al., Case No.: 1:13-CV-01483-AWI-SAB.

**Trial:** February 2 and 3, 2016.  Dorothy Jean Sams, et al, v. City of Los Angeles, et al.  Superior Court, State of California (Los Angeles County), Case No. BC537879

**Deposition:** February 4, 2016.  Rayven Vinson, et al, v. City of Los Angeles, et al. USDC Case No.: CV 14-4488-PLA.

**Deposition:** February 10, 2016.  V.W., a minor, et al., v. Robert Nichelini, et al., Case No.: 2:12-CV-01629-LKK-AC.

**Deposition:** February 12, 2016.  Maria Del Carmen Rivas, et al., v. City of Los Angeles, et al., Case No.:2:15-CV-000456-JFW-JEM.

**Trial:** February 19, 2016.  Esperanza Booke, et al, v. City of Sanger, et al., Case No.: 1:13-cv-00586-AWISAB.

**Deposition:** February 22, 2016.  Fernando Del Castillo, et al., v. City of Tempe, et al., Case No.: CV-214-1945-PHX-DLR.

**Deposition:** February 29, 2016.  J.A.L., a Minor, et al, v. Mike Santo, et al.  USDC Case No.: CV-15-00355.

**Trial:** March 2, 2016.  Richard A. Collender, et al., v. City of Brea, et al.  USDC Case No. SACV 11000530 AIJ-MLGx.

**Deposition:** March 3, 2016.  Michael A. Storms, v. City of Clarkston, et al., Case No.: 2:14 CV 000254 TOR.

**Trial:** March 7, 2016.  Refugio Nieto, et al., v. City and County of San Francisco, et al., Case No.: C14-03823-NC.

**Deposition:** March 15, 2016.  J.J.D. v. City of Torrance, et at.  USDC Case No. CV14-07463-BRO-MRW.

**Trial:** March 17, 2016,  People v. Mark Cappello, Superior Court, State of California (Sonoma County).  Case No. SCR-630974.

**Deposition:** March 23, 2016.  Ioana Aronovici, v. City of Anaheim, et al., Orange County Superior Court Case No. 30-2014-00762502 CU-PA-CJC.

**Deposition:** March 25, 2016.  Reynalda Molina, et al, v. City of Visalia, et al.  CASE NO. 1:13-CV-01991-LJO-SAB.

**Deposition:** April 4, 2016.  Ayounna McClinton (Estate of Duane Strong), v. City of Tallahassee, et al., Case No.: 4:15-CV-278-RH/CAS.

**Trial:** April 1 & 5, 2016.  K.C.R. (Rivera) a minor, et al, v. County of Los Angeles, et al.  USDC Case No. CV 13-03806 PSG (SSx).

**Trial:** April 5, 2016.  J.J.D. (Dolak) v. City of Torrance, et al.  USDC Case No. CV14-07463 BRO-MRW.

**Trial:** April 6, 2016. Garry Bradley, v. County of Los Angeles, et al.  Superior Court, State of California (Los Angeles County) Case No. BC473200.

**Trial:** April 12, 2016.  Jesse Michael Espinoza, v. City of Mesa, et al.  USDC (Arizona) Case No. CV2013-092842.

**Deposition:** April 14, 2016.  The Estate of Anthony Agustin Banta, et al. v. City of Walnut Creek, et al.  USDC Case No. C13-00342 CRB.

**Deposition:** April 18, 2016.  Stephen McCollum et al., v. Texas Department of Criminal Justice,

Page 6 of 23

et al.  Case No.3:12-CV-02037.

**Deposition:** April 27, 2016.  Tan Lam v. City of Los Banos, et al.  Case No. 2:15-cv-00531 MCE, KJN

**Deposition:** May 2, 2016.  Edsell Ford, et al. v City of Los Angeles, et al.  USDC Case No. CV14-7268 JFW - MAN.

**Deposition:** May 4, 2016.  Susan Mellen, et al. v. City of Los Angeles, et al., Case No. CV15-03006 GW (AJWx).

**Deposition:** May 10, 2016.  Dennis Mitchell Mueller, v. Deputy Manuel Cruz, County of Orange, et al.  USDC Case No. CV 13-01274 CJC (JCGx).

**Deposition:** May 13, 2016.  Robert Jackson III, v. County of San Bernardino, et al.  USDC Case No. EDCV 13-01650-JGB (DTBx).

**Trial:** May 17, 2016.  Gordon v. Harris County et al.,USDC Case No. 4:14-cv-03463, S.D. of Texas (Houston).

**Deposition:** May 27, 2016.  Oscar Ramirez, Sr. v. County of Los Angeles; Bryan Moreno, et. al.U.S. District Court Case No.:  CV 15-03062 AB (PLAx).

**Deposition:** June 6, 2016.  Brett Lewis, v. Café Club Fais Do Do, et al., Superior Court, State of California  (Los Angeles County), Case No. BC 468234.

**Trial:** June 13, 2016.  Rayven Vinson, et al, v. City of Los Angeles, et al. USDC Case No.: CV 14-4488-PLA.

**Deposition:** June 14, 2016.  Edin S. Castellanos, v. State of California, et al., Case No.: 4:15-cv-00272-JSW.

**Deposition:** June 20, 2016.  Lance McClain, et al, v. City of Eureka, et al. Case No. 3:15-cv-02070 WHO.

**Deposition:** June 21, 2016.  Moises Palacios, Victoria et al., v. City of Los Angeles, et al., Case No.: 14-cv-09639-MJF (AJWx).

**Trial:** June 24, 2016.  Brett Lewis, v. Café Club Fais Do Do, et al., Superior Court, State of California  (Los Angeles County), Case No. BC 468234.

**Deposition:** June 29, 2016.  Terence Wyatt, v. Gary Colbert, et al., USDC Case No. 5:15-cv-586.

**Deposition:** June 30, 2016.  Sergio Pina v. City of Los Angeles, et al. USDC Case No. 13-CV-04989-FMO-MRW.

**Deposition:** July 8, 2016.  R.R.R., et al. v. City of Banning, et al., USDC Case No. 5:14-cv-01430-CAS-FFM.

**Deposition:** July 13, 2016.  Justin L. Palmer, v. City of Santa Monica, el al., Case No.: 2:15-cv-06183-SJO-JC.

**Trial:** July 14, 2016.  Robert Jackson III, v. County of San Bernardino, et al.  USDC Case No. EDCV 13-01650-JGB (DTBx).

**Trial:** July 18, 2016.  Edin S. Castellanos, v. State of California, et al., Case No.: 4:15-cv-00272-JSW.

**Deposition:** July 21, 2016.  Arthur Scott, v. City of San Diego, et al.  Superior Court, State of California (San Diego County), 37-2015-00001940 CU-OE-CTL.

**Deposition:** July 28, 2016.  1506.  Gladis Herrera, et al. v. City of Ontario, et al.  Case No. 5:15-cv-01370.

**Deposition:** August 1, 2016.  Estate of Andrea Naharro (Barnard), et al., vs. County of Santa Clara, et al., Case No.: 14-04570.

**Trial:** August 3 & 4, 2016.  Dennis Mitchell Mueller, v. Deputy Manuel Cruz, County of Orange, et al.  USDC Case No. CV 13-01274 CJC (JCGx).

**Deposition:** August 5, 2016.  Sarai Urdez Navarro, et al., v. County of Riverside, et al. USDC Case No. ED CV14-01201 GHK (PLAx).

**Trial:** August 11, 2016.  Daniel L. Kloberdanz, v. Joseph M. Arpaio, et al., USDC Case No.: 2:13-cv-02182-PHX-JWS.

**Deposition:** August 17, 2016.  Catherine Smith, et al., v. County of Butte, et al.  USDC Case No. 2:15-CV-00988 GEB-CMK.

**Deposition:** August 25, 2016.  Joshua Osorio, et al. v. State of California (CHP) et al.  Superior Court State of California (San Diego County) Case No. 37-2013-0072536 CU-CR-CTL

**Deposition:** August 26, 2016.  J.L.D. (Douchet), et al, v. City of Los Angeles, et al.  USDC Case No. CV11-03141 SVW - MAN.

**Trial:** August 29, 2016.  People v. Gabrielle Lemos.  Superior Court, State of California,

Sonoma County Case No. SCR-674200.

**Trial:** August 31, 2016. Justin L. Palmer, v. City of Santa Monica, el al., Case No.: 2:15-cv-06183-SJO-JC.

**Deposition:** September 2, 2016. Maria Teresa Abrego, et al, v. City of Los Angeles, et al. Case No. CV15-00039 BRO (JEMx).

**Trial:** September 9, 2016. 1518. J.L.D. (Douchet), et al, v. City of Los Angeles, et al. Superior Court Case No. CV11-03141 SVW - MAN.

**Trial:** September 15, 2016. The Estate of Anthony Agustin Banta, et al. v. City of Walnut Creek, et al.  USDC Case No. C13-00342 CRB.

**Deposition:** October 7, 2016. Teresita Garcia, et al, v. County of Los Angeles, et al.  State of California, Superior Court (Los Angeles County), Case No. BC553204.

**Deposition:** October 17, 2016. Robert Zambrano, et al, v. Redondo Beach, et al.  State of California, Superior Court (Los Angeles County), Case No. BC566142.

**Deposition:** October 18, 2016.  Nyla Moujaes v. San Francisco Police Department Officer David Wasserman and Sergeant Gary Buckner, Case No.: 3:15-cv-03129 DMR.
Client Attorney:

**Deposition:** October 19, 2016.  Richard Vos, et al, v. City of Newport Beach, et al., Case No.: 8:15-cv-00768-JCG.

**Deposition:** November 1, 2016  Darren Donald Liess, et al. (Darren) v. City of Los Angeles, et al.  Superior Court Case No. BC541691.

**Trial:** November 3, 2016. 1506.  Gladis Herrera, et al. v. City of Ontario, et al.  Case No. 5:15-cv-01370.

**Deposition:** November 7, 2016. Adolfo Garcia, et al v. William Davidson, et al.  Superior Court (San Diego County) Case N0. 37-2014-00021070 CU-CR-CTL.

**Deposition:** November 15, 2016. 1546.  Keivon Young v. County of San Bernardino, et al.  Case No. 5:15-CV-01102 JGB-SP.

**Trial:** November 17, 2016. Lance McClain, et al, v. City of Eureka, et al. Case No. 3:15-cv-02070 WHO.

**Deposition:** November 21, 2016.  Mark Covert, v. City of San Diego, et al, USDC Case No.:

15cv2097 AJB (WVG).

**Trial:** November 23, 2016 and November 28, 2016. Emmanuel Bracy, v. City of Los Angeles, et al. Case No. C13-09350 (JC).

**Trial:** December 1, 2016. Keivon Young v. County of San Bernardino, et al. Case No. 5:15-CV-01102 JGB-SP.

**Trial:** December 2, 2016. Terence Wyatt, v. Gary Colbert, et al., USDC Case No. 5:15-cv-586.

**Trial:** December 8, 2016. People v. George Clayton Maurer II. Superior Court, State of California (Los Angeles County) Case No. 5JB09210.

**Trial:** December 9 & 12, 2016. Darren Donald Liess, et al. (Darren) v. City of Los Angeles, et al. Superior Court, State of California (Los Angeles County) Case No. BC541691.

**Trial:** December 16, 2016. Nyla Moujaes v. San Francisco Police Department Officer David Wasserman and Sergeant Gary Buckner, Case No.: 3:15-cv-03129 DMR.

**Deposition:** December 21, 2016. Anthony T. Baker, v. City of Glendale, et al., Case No.: 2:15-cv-02432-DLR.

**Deposition:** January 3, 2017. Wilmer Deckard and Nicol Deckard, v. City of Anaheim, et al., Superior Court, State of California (Los Angeles County), Case No 30-2015-00819021 CU-CR-CJC

**Deposition:** January 4, 2017. The Estate of Julian Ramirez-Galindo, et al., v. Untied States of America, et al., Case No.: 15-CV-1694 W(NLS).

**Deposition:** January 5, 2017. Karen Fusilier, v. County of San Bernardino. Superior Court, State of California (San Bernardino County), Case No. CIVDS1313206.

**Deposition:** January 11, 2017. I.A. and C.S., et al., vs. City of Emeryville, et al., Case No.: 4:15-cv-04973-DMR.

**Deposition:** January 13, 2017. The Estate of Ashley DiPiazza, et al., v. City of Madison, and Justin Bailey, Gary Pihlaja, and Carey Leerek, Case No.: 16cv060.

**Trial:** January 18, 2017. Arthur Scott, v. City of San Diego, et al. Superior Court, State of California, (San Diego County). Case No. 37-2015-00001940 CU-OE-CTL

**Deposition:** January 24, 2017. William Mears, et al., v. City of Los Angeles, Case No.: CV 15-08441 JAK (AJWx).

**Deposition:** January 27, 2017, Sylvia Perkins, as Personal Representative of the Estate of Bobby Moore, III, Deceased, vs. Joshua Hastings, et al., Case No.: 4:14-CV-310-BSM.

**Deposition:** January 31, 2017. Ian Medjes v. City of Los Angeles, et al. Case No. CD Cal. 2:14-cv-5377-DDP-RZ.

**Deposition:** February 3, 2017. S.R. Nehad (Rawshaneehad), et al v. City of San Diego, et al. Case No. 15-cv-1386-WQH-NLS

**Deposition:** February 21, 2017. Osvaldo Ureta, et al. v. County of Los Angeles, et al. Superior Court, State of California (Los Angeles County), Case No. BC501051.

**Trial:** February 22, 2017. Maria Teresa Abrego, et al, v. City of Los Angeles, et al. Case No. CV15-00039 BRO (JEMx).

**Trial:** February 28, 2017. 1428. Alice Smithen, v. United States of America (U.S. Marshall), et al. Case No. CV 09-0414 GW (PJWx).

**Trial:** March 1, 2017. Wilmer Deckard and Nicol Deckard, v. City of Anaheim, et al., Superior Court, State of California (Los Angeles County), Case No 30-2015-00819021 CU-CR-CJC.

**Trial:** March 6, 2017. Regarding: Russell Martinez v. Joseph Salazar, et al., D.N.M. Case No. 14-cv-00534 KG/WPL (Albuquerque, NM.)

**Deposition:** March 9, 2017. Maria Delores Ramirez, v. City of Los Angeles, et. al. USDC Case No: CV 15-02179 MWF (FFMx).

**Deposition:** March 17, 2017. Lisa Lopez, et. al., v. County of Los Angeles, et al., USDC Case No.: CV 16-00098-AB-KS

**Deposition:** March 24, 2017. Monica Ramirez, et al, v. City of Los Angeles, et al. Superior Court State of California (Los Angeles County), Case No. BC597276.

**Deposition:** March 27, 2017. Sheronda A. Byrd-Givens, et al, v. Stephen E. Asch, et al., Case No. 2 :16-cv-00410-MHW-KAJ D.

**Trial:** March 28, 2017. Maria Delores Ramirez, v. City of Los Angeles, et. al. USDC Case No: CV 15-02179 MWF (FFMx).

**Deposition:** April 3, 2017. Walter Deleon, et al., vs. City of Los Angeles, et al., Case No.: 2:16-cv-03721-FMO-RAO. 1595

**Trial:** April 5, 2017. Joshua Osorio, et al. v. State of California (CHP) et al. Superior Court

State of California (San Diego County) Case No. 37-2013-0072536 CU-CR-CTL

**Deposition**  April 7, 2017.  Channel Centeno, et al., v. City of Fresno, et al., Case No.: 1:16-CV-00653-DAD-SAB.

**Deposition:**  April 10, 2017.  Allen B. Shay v. County of Los Angeles – Case No. 15-CV-4607 CAS (RAO).

**Deposition:**  April 14, 2017.  Eliel Paulino, v. Marco Cruz, et al., Case No. CV16-02642-NC.

**Trial:**  April 20, 2017.  Marius Mitchell v. Neal A. Robertson, Case No.: 2:16.

**Deposition:**  April 24, 2017.  Mercedes Hernandez, v. Department of Motor Vehicles, et al. Superior Court Case No. BC588742.

**Deposition:**  April 26, 2017.  Daniel Smith v. City of Anaheim, et al.  Case No. SACV15-1776 CJC (DFMx).

**Trial:**  April 27 &28, 2017.  Ray Webb, v. Officer J. Ackerman, (Long Beach) et al., Case No.: CV013-09112.

**Deposition:**  May 8, 2017.  Ethan Morse vs. County of Merced, et al., Case No.: 1:16-CV-00142-DAD-SKO.

**Deposition:**  May 10, 2017.  Dyrone Leake, Sr. v. City of Los Angeles, et al.  Superior Court Case No. BC 606819.

**Deposition:**  May 22, 2017.  Isabel Bel Montez, et al., v. City of Stockton, et al., Case No.: 2:10-cv-03149 MCE FEB.

**Deposition:**  May 26, 2017.  Antonio Ortiz, Luiz Ortiz, vs. City of Fullerton, et al., Case No.: CV-16-01499 DOC (DFMx).

**Deposition:**  May 30, 2017.  Estate of Derek Williams Jr., et al., vs. City of Milwaukee, et al., Case No.: 2:16-cv-00869.

**Deposition:**  June 5, 2017.  Lee Darnell Watson, vs. City of San Jose, et al., Case No.: 3:15-cv-04054.

**Deposition:**  June 12, 2017.  Estate of Gustavo Najera, et al. v. City of Anaheim, et al., Case No. 8:16-CV-01243 JLS (JCG).

**Deposition:**  June 15, 2017.  Estate of Danny Cecil Jones, et al., vs. City of Spokane, et al., Case

Page 12 of 23

No.: 2:16-cv-00325.

**Trial:** June 16 & 19, 2017.  People v. Robert Branch, Superior Court, State of California, (San Diego County)  Case No. CD264516.

**Deposition:** June 20 &26, 2017.  Kierra Williamson, Princeton Williamson, and Michael Williamson, vs. Chicago Police Officer Wilfredo Ortiz, et al., Case No.: 14 CV 6397.

**Deposition:** June 27, 2017.  Doyma Vanessa Michel, v. United States of America.  Case No. Case No.16-CV-0277 GBC-RBB.

**Trial:** July 12, 2017.  The Estate of Ashley DiPiazza, et al., v. City of Madison, and Justin Bailey, Gary Pihlaja, and Carey Leerek, Case No.: 16cv060.

**Deposition:** July 21, 2017.  Graciela Lopez Franco, et al, v. United States, et al.  Case No. 15-cv-2626 - JM (RBB).

**Trial:** July 24, 2017.  Maria Del Carmen Rivas, et al., v. City of Los Angeles, et al., Case No.:2:15-CV-000456-JFW-JEM.

**Trial:** July 31, 2017.  People v Amanda Christine Jaramillo.  Superior Court, Orange County, Case CHPW 14-1404

**Deposition:** August 1, 2017.  Randy Conan v. City of Fontana, et. al. Case No. 15:16-cv-01261.

**Trial:** August 4, 2017.  Shirar et al, v. CHP Officer Miguel Guerrero, et al,   USDC Case No. EDCV 13 - 0906 JGB (OPx).

**Deposition:** August 14, 2017.  Breanna Cooke, et al., vs. City of Stockton et al, Case No. 2:14-cv-00908-KJM-KJN.

**Deposition:** August 15, 2017. Marcus Vaughn, et al. v. City of Los Angeles, et al.  Case No. 2:16-cv-03086 AB-AJW.

**Deposition:** August 17, 2017.  Shawna Brown, et al., vs. City of Stockton, et al., Case No. 2:13-CV-01007-KJM-KJN.

**Deposition:** August 21, 2017.  Sandra Salazar, et al., vs. Deputy Shandon Deasey, et al., Case No. 5:16-cv-01103-JFW-KK.

**Deposition:** August 21, 2017.  Sufle v. City of Gardena, et al., Case No. CV 16-00384-GW-MRWx

Page 13 of  23

**Deposition:** August 22, 2017.  Andrew Jeremy Garcia v. City of Garden Grove, et al.  Case No. 8:16-cv-00154 DOC (KESx).

**Trial:** August 28, 2017.  The Estate of Angel Lopez, et al., v. City of San Diego, et al.  Case No.: 13CV2240 GPC BGS.

**Deposition:** September 7, 2017.  Arthur Moore, et al, v. City of Berkeley et al, Case No.: 14-cv-000669 CRB.

**Deposition:** September 8, 2017.  Estate of Ruben Nunez, et al v. County of San Diego, et al., Case 3:16-cv-01412-BEN-MDD.

**Trial.** September 11, & 12, 2017.  Kierra Williamson, Princeton Williamson, and Michael Williamson, vs. Chicago Police Officer Wilfredo Ortiz, et al., Case No.: 14 CV 6397.

**Trial.** September 15, & 18, 2017.  Lee Darnell Watson, vs. City of San Jose, et al., Case No.: 3:15-cv-04054.

**Deposition:** September 20, 2017.  Aubrey Williams vs. City of Birmingham, et al., Case No.: 2:16-cv-00650-JEO.

**Deposition:** September 25, 2017, Douglas Cruse and Iveta Cruse, v. Jacob Emory Swigger, and Signal Hill Police Department, et al.  Superior Court (Los Angeles County) Case No. BC602211.

**Deposition:** September 27, 2017.  Lastenia Marizol Rodriguez, vs. City of Fontana, et al., Case No. 5:16-cv-01903 JGB-KK.

**Deposition:** September 28, 2017.  Herbert O. Allen v. City of Santa Monica, et al, USDC Case No. 2:11-cv-10139 R-GJS

**Trial:** October 5, 2017.  Graciela Herrera, et. al., v. City of Los Angeles, et al., USDC Case No.:2:16-cv-02719-DSF-SK.

**Deposition:** October 9, 2017.  Dionne Smith-Downs, et al v. City of Stockton, et al.  Case No. 2:10-cv-02495 MCE-GGH.

**Deposition:** October 12, 2017.  Evangelina Gonzalez and Victor Gonzalez vs. County of Los Angeles, Deputies Adrian Dominguez, Steven Velasquez, et al., Case No.: 2:16-cv-07018

**Deposition:** October 13, 2017, & December 15, 2017.  Felipe Navarro, et al., vs. State of New Mexico, et al., Case No.: 2:16-cv-01180 MCA/CG.

**Trial:** October 17, 2017.  Mayumi Donaldson, et al. v. Deputy U.S. Marshal Michael Hall, et al.

Case No. 3:15-cv-00908 BAS-KSC.

**Deposition:** October 19, 2017. Giselle Genesis Lopez, et al v. City of Inglewood, et al. Superior Court (Los Angles County) Case No. Case No. BC563203.

**Trial.** October 25, 2017.Randy Conan v. City of Fontana, et. al. Case No. 15:16-cv-01261.

**Trial.** October 27, 2017. Estate of Manuel Diaz, Genevieve Huizar, v. City of Anaheim, et al. USDC Case No. 12-01897 JVS (RNBx).

**Trial.** November 7, 2017. William Mears, et al., v. City of Los Angeles, Case No.: CV 15-08441 JAK (AJWx).

**Trial:** November 15, 2017. Shellabarger et al, v. Dicharry et al, Case No. 13-cv-00188-TLN-CMK.

**Deposition:** November 21, Heleine Tchayou, et al. v. City of Los Angeles, et al., Case No., 16-cv-06073-TJH-MRW

**Deposition:** November 27, 2017. Monica Ortiz, et al. v. City of Rialto, et al., Case No. 5:16-cv-01384-JGB. (KSx).

**Deposition:** December 1, 2017. C.R. Co-Successor-in-Interest to Decedent Rakeem Rucks, et al., vs. City of Antioch, et al., Case No.: C16-03742 JST.

**Trial:** December 8, 2017, Sammy Sanchez, et al v. City of Tucson, et al. USDC Case No. 72-1576857.

**Deposition:** December 11, 2017. Estate of Roshad McIntosh, v. City of Chicago, et al. USDC Case No. 1:15-cv-01920

**Deposition:** December 14, 2017. Taylor Swift vs. David Woo, Vera Hicks, et al. USDC Case No.: 3:17-cv-00866-VC.

**Deposition:** December 18, 2017. Domingo Davis, Jr., vs. City of Santa Clara and Cuong Phan, Case No. 5:15-CV-05603-EJD.

**Deposition:** December 27, 2017. Estate of Pierre Loury v. City of Chicago, et al. USDC Case No. 1:16-C-04452.

**Trial:** January 11, 2018. Giselle Genesis Lopez, et al v. City of Inglewood, et al. Superior Court (Los Angles County) Case No. Case No. BC563203.

**Deposition:** January 12, 2018.  Filiberto Valencia, Sr., et al., vs. City of Stockton, et al., Case No.: 2:16-cv-02081-JAM-AC.

**Deposition:** January 16, 2018.  Edmon Washington v. City of Los Angeles, et al., Case No. 2:17-02829-PA (FFMx)

**Deposition:** January 22, 2018.  Shainie Lindsey, et al., vs. City of Pasadena, et al., Case No.: CV 16-8602 SJO (RAOx).

**Trial:** January 24, 2018.  Penelope Armstrong, v. County of Los Angeles, et al., Superior Court Case No.:BC528453

**Deposition:** January 30, 2018.  Joe Robles and Elvira Robles vs. Aransas County, Texas: Matthew Campbell Individually, Civil Action No.: 2:15.

**Trial:** February 1, 2018.  S.B. a minor, et al (Brown), v. County of San Diego, et al., Case No. 14CV0072, JAH KSC.

**Deposition:** February 1, 2018.. Jenny Tucker, et al., v. The County of Riverside, et al., Case No.: 5:16-CV-02275-JGB (DTBx).

**Trial:** February 7, 2018.  People v. Gilberto Fajardo.  Superior Court, State of California, (Kern County). Case No. BF160536A

**Deposition:** February 8, 2018.  Archibald et al. v. County of San Bernardino et al. USDC Case No. CV 16-01128 AB (SPx). Mr. Dale K. Galipo

**Deposition:** February 12, 2018.  Estate of Johnny Martinez, et al. v. County of Los Angeles, et al., Superior Court, State of California, (Los Angeles County), Case No. BC579140 MPL (Dept 34).

**Deposition:** February 14, 2018.  Maria Hernandez; A.J., Jr., et al, . City of Los Angeles, et al Case No. 2:16-c-02689 AB (JEMx).

**Deposition:** February 15, 2018.  Marc Alan Corbin, v. County of Los Angeles, et al., Superior Court, State of California (Los Angeles County), Case No. BC 512036

**Trial:** February 22, 2018.  Maria Hernandez; A.J., Jr., et al, v. City of Los Angeles, et al. Case No. 2:16-c-02689 AB (JEMx).

**Deposition:** February 23, 2018.  Robert Ayala, vs. Aransas County, Texas and Anthony Ciarletta, In The United States District Court For The Southern District of Texas Corpus Christi Division, Case No. 1:15

**Hearing:** March 7, 2018.  People v. Michael David Suyssman, Superior Court, State of California (Los Angeles County), Case No. M232634DV.

**Trial:** March 13, 2018:  April 10, 2014.  Chien Van Bui, et al, vs. City and County of San Francisco, et al.  USDC Case No. CV 11-04189 LB.

**Deposition:** March 19, 2018.  Kevin Foy vs. Pulaski County, Arkansas, Austin Callahan, et al., Case No.: 4:17-cv-358-BSM.

**Deposition:** March 23, 2018.  Anthony Wilson, et al., vs. City of Douglasville, GA, et al.., Case No.: 1:17-cv-00634-ELR.

**Trial:** March 26, 2018.  Adolfo Garcia, et al v. William Davidson, et al.  Superior Court (San Diego County) Case N0. 37-2014-00021070 CU-CR-CTL.

**Deposition:** March 27, 2018.  Jane Doe vs. County of Fresno, et al.  Superior Court State of California, (Fresno County) Case No. 16CECG03273

**Deposition:** March 28, 2018.  Phillip Murry v. North Las Vegas Police Department, etal. Case No.: 2:17-cv-00157-APG-CWH.

**Deposition:** April 5, 2018.  Alma Ramirez, et al, v. City of Gilroy, et al.  Case No. 5:17-cv-00625 HRL

**Deposition:** April 12, 2018.  Melane Jackson v. City of Los Angeles, et al., Superior Court, State of California (Los Angeles County) Case No. BC609513.

**Deposition:** April 17, 2018.1701.  Leticia Solis, et al, v. City of City of Los Angeles, et al.  Case No. 2:17-cv-02352, AB-PJW

**Deposition:** April 19, 2018.  Jesse Sanchez, v. City of Stockton, et al.  Superior Court State of California (San Joaquin County), Case No. CV-2015-0006499.

**Trial:** April 20, 2018.  Ethan Morse vs. County of Merced, et al., Case No.: 1:16-CV-00142-DAD-SKO

**Deposition:** April 26, 2018.  Marco A. Figueroa vs. City of Casa Grande, et al., Case No: 2: 16-CV-03275-ROS

**Deposition:** April 27, 2018.  Tanya A., et al., v. City of San Diego, et al.,  Case No.: 3:14-cv-01942-L-RBB, and Jane Doe, v. City of San Diego, et al.  Case No.  14cv1941-L-AGS.

**Trial:** April 30, 2018. Melane Jackson v. City of Los Angeles, et al., Superior Court, State of

California (Los Angeles County) Case No. BC609513.

**Trial:** May 1, 2018. Estate of Gustavo Najera, et al. v. City of Anaheim, et al., Case No. 8:16-CV-01243 JLS (JCG).

**Trial:** May 3, 2018. Heleine Tchayou, et al. v. City of Los Angeles, et al., Case No., 16-cv-06073-TJH-MRW.

**Deposition:** May 8, 2018. Amber Wallisa, v. City of Hesperia, et al., Case No.: 5:16-cv-2638.

**Trial:** May 10, 2018. The People of the State of California v. Michael David Sussman. Case No. M232634DV.

**Deposition:** May 11, 2018. Rosamanda Flores vs. The City of Concord, et al., Case No.: 4:15-cv-05244-PJH, and Rosamanda Flores vs. The City of Concord, et al., Case No.: 4:17-cv-05810-PJH (Combined by the Court).

**Deposition:** May 18, 2018. Estrella Lysandra Zayas vs. State of California, et al., Case No.: 3:17-CV-02739-EMC.

**Deposition:** May 22, 2018. Denise Garcia vs. Harris County, Texas, et al., Case No.: 4:16-cv-2134.

**Trial:** May 24, 2018. Graciela Lopez Franco, et al, v. United States, et al. Case No. 15-cv-2626 - JM (RBB).

**Deposition:** May 29, 2018. Royce Belcher vs. Williamson County, Texas Deputy Jeremy Ellison, individually, and Deputy Gauna, Individually, Case No.: 1:17-cv-00153-SS.

**Deposition:** June 4, 2018. Cynthia Briones, et al., v. City of Ontario et al., Case No.: 5:17-cv-00590-DMG-JPR.

**Deposition:** June 5, 2018. E.H., (Martin Hurtado deceased) et al. v. City of Long Beach, et al. Case No. 2:16-v-09641-SJO (KSx).

**Deposition:** June 6, 2018. R.J. v. City of Los Angeles, et al., Case No. 2:16-CV-07232 CBM (Skx).

**Deposition:** June 11, 2018. Chandra Jacquez individually, and as successor-in-interest to Richard Jacquez (deceased), v. City of San Jose, et al. Case No. 5:16-CV-5343. NC.

**Deposition:** June 12, 2018. Kelly Carter vs. County of Alameda, et al., Case No.: 3:16-cv-05132-WHO.

**Trial:** June 14, 2018. Leticia Solis, et al, v. City of City of Los Angeles, et al. Case No. 2:17-cv-02352, AB-PJW

**Trial:** June 14, 2018, Alma Rosa Godinez, v. San Diego County, et al. Case No. 3:16-cv-00236 BAS-NLS.

**Trial:** June 19, 2018. Floyde Armbrester, v. City of Berkeley et al. Case No. 3:16-cv-04615.

**Deposition:** June 20, 2018. Ashley Lauren Watts vs. City of Newport Beach, Christine Maroney, Monica Aguilar, et al., Case No.: 8:17-cv-01099-AG (Skx).

**Deposition:** June 25, 2018. Matthew Francois, v. The City of San Diego, et al. Superior Court, State of California (San Diego County), Case No. 37-2016-00003251.

**Deposition:** July 12, 2018. Maurice Lallemand v. County of Los Angeles, et al., Case No. CV17-00781 JAK (SS)

**Trial:** July 19, 2018. Matthew Francois, v. The City of San Diego, et al. Superior Court, State of California (San Diego County), Case No. 37-2016-00003251, CU-OB-CTL.

**Deposition:** July 24, 2018.  Cesar Cuellar, Sr. et al. v. City of Laredo (Texas), et al. USDC Case No. 5:17-cv-00076.

**Trial:** July 26, 2018. Jesse Sanchez, v. City of Stockton, et al. Superior Court State of California (San Joaquin County), Case No. CV-2015-0006499.

**Trial:** August 7, 2018. Tan Lam v. City of Los Banos, et al.  Case No. 2:15-cv-00531 MCE, KJN.

**Deposition:** August 8, 2018.  Dane Zeen, v. County of Sonoma, et al, Case No. Case No: 3:17-cv-02056-LB

**Deposition:** August 9, 2018.  Aram Tagmazyan, Angela Tagmazyan, v. City of Los Angeles, et al.  Superior Court (Los Angeles County) Case No. BC561908.

**Deposition** August 13, 2018.  Marina Borawick, v. City of Los Angeles, et al. Case No. 2:17-cv-02036 BRO-JC

**Trial:** August 20, 2018.  Dane Zeen, v. County of Sonoma, et al, Case No. Case No: 3:17-cv-02056-LB.

**Trial:** August 24, 2018.  Gina Best and Shaun Lowrance, et al., vs. Virginia Beach Police Officers Ferreira, Roys, Thorson, and Ziemer, Case No.: CL17-1137.

**Trial:** August 29, 2018.  People v, Jon Luthuli Larson, Superior Court State of California (Napa County), Case No. CR

**Deposition:** August 30, 2018.  Wilson Ramos, As Administrator of the Estate of Jose A. Maldonado, v. Town of East Hartford, et al. Case No. 3:16-cv-00166 VLB

**Deposition:** September 5, 2018.  Teresa Dominguez, et al, vs. City of Los Angeles, et al.  Case No.: CV 17-04557 DMG (PLAx).

**Trial:** September 6, 2018.  Chandra Jacquez individually, and as successor-in-interest to Richard Jacquez (deceased), v. City of San Jose, et al.  Case No. 5:16-CV-5343. NC.

**Deposition:** September 7, 2018.  Teresa Todero, as Special Administrator of the Estate of Charles Todero vs. City of Greenwood, Brian Blackwell, Renee Elliott, and Elizabeth Laut, Case No. 1:17-cv-01698-TWP-MJD.

**Deposition:** September 14, 2018.  David P. Demarest vs. The City of Vallejo, et al.  Case No.: 2:16-cv-0227-GEB-KJN.

**Deposition:** September 21, 2018.  Taina Rozier, et al (Okwera Olango, deceased), v. City of El Cajon, et al. USDC Case No. 17-cv-347-BAS-NLS, and Case No. 3:17-cv-00089 BAS-NLS, and Lucy Olango, v. City of El Cajon, et al., Superior Court Case No. 37-2017-00005331 CU-PO-CTL

**Deposition:** October 9, 2018.  Joseph Earl Wheeler vs. Graves County Kentucky and Graves County Sheriff's Department and Dewayne Redmon, et al., Case No.: 5:17-cv-38-TBR.

**Deposition:** October 11, 2018.  Jimmy Brooks vs. City of Vallejo, et al., Case No.: 2:16-cv-02376-WBS - EFB.

**Trial:** October 19, 2018 and October 23, 2018.  People v. Steve Rodriguez, San Bernardino Case No: MWV1507990.

**Trial:** October 31, 2018 and November 1, 2018, Alma Rosa Godinez, v. San Diego County, et al. Case No. 3:16-cv-00236 BAS-NLS.

**Trial:** November 2, 2018.  Jenny Tucker, et al., v. The County of Riverside, et al., Case No.: 5:16-CV-02275-JGB (DTBx).

**Deposition:** November 6, 2018.  Ramon Cortesluna, v. City of Union City Police Officer Manuel Leon, et al, Case No.: 3:17-cv-05133-JSC.

**Deposition:** November 7, 2018.  Estate of Kevin Matthews, et al., vs. City of Dearborn

(Michigan), et al.  Case No. 2:16-cv-13763  GCS-SDD

**Deposition:** November 8, 2018.  D.F., M.F., A.F., N.F., (Minors), Panfilo Flores, and Yolanda Flores, v. City of Anaheim, et al. Case No. 8:17-cv-01194 AG-JCG.

**Trial:** November 14, 2018:  Estrella Lysandra Zayas vs. State of California, et al., Case No.: 3:17-CV-02739-EMC.

**Trial:** November 15, 2018.  Teresa Dominguez, et al, vs. City of Los Angeles, et al. Case No.: CV 17-04557 DMG (PLAx).

**Deposition:** November 16, 2018.  Roy Nelson III, Successor-in-Interest to Decedent Roy Nelson; Orenell Stevens, Individually, v. City of Hayward, et al. USDC Case No. 3:16-cv-7222

**Deposition:** November 20, 2018.  Neftali Monzon, et al. v. City of Murrieta, et al.  Case No. 2:17-cv-01371 ODW (Skx)

**Deposition:** November 21, 2018.  Leticia Barron vs. State of California, Case No.: 8:17-cv-01275-JVS-KES.

**Deposition:** November 27, 2018.  Estate of Juan Manuel Avila, JR., et al.  v. City of Long Beach, et al. Case No. 2:17-CV-05067 AB JPR.

**Deposition:** November 29, 2018.  Chris Mathis, v. Nicholas Stevens and Edward Black.  USDC (Texas) Case No. 3:17-cv-1835-S.

**Deposition:** November 30, 2018.  Trinidad Brown vs. Eddie Diaz, Eric Howard, Laertis Moraitis, and Daniel Villalobos, Case No.: 2:17-cv-01157-KJM-AC.

**Trial:** December 3, 2018 and December 4, 2018.  Donna Lancaster, v. Kansas City Board of Police Commissioners, et al., Case No.:4:14-cv-00171-SOW.

**Deposition:** December 5, 2018.  Ryan M. Larson vs. John L. Sander, et al., Case No.: 0:17-cv-00063.

**Deposition:** December 11, 2018.  Leslie A. Merritt, Jr. vs. State of Arizona, et al.,  United States District Court, District of Arizona, Case No. CV17-4540-PHX-DGC

**Trial:** December 13, 2018.  Leticia Barron vs. State of California, Case No.: 8:17-cv-01275-JVS-KES.

**Deposition:** December 14, 2018.  Estate of Joseph Valverde (Isabelle Padilla), et al, v. Justin Dodge, and the City and County of Denver, Colorado, Case No. 1:16-cv-01703 MSK-KMT.

Page 21 of 23

**Trial:** December 19, 2018. People v. Anthony J. McGaff. Superior Court, San Diago County, California, Case No. SCE379648, DA NO. MBQ014.

**Trial:** January 17, 2019. L. Alicia Rascon, individually, et al., vs. Clinton H. Brookins, et al. Case No.: 2:14-cv-00749-PHX-JJT.

**Deposition:** January 30, 2019.. Xaime Casillas v. City of Los Angeles, et al. USDC Case No. 2:16-cv-09606-TJH-GJS

**Deposition:** January 31, 2019. Tony Nunez, et al. v. City of San Jose, et al. Case No. 17-cv-03860 LHK.

**Deposition:** February 4, 2019, Kathryn Green (individually and as a representative of the Estate of Patrick Green, Deceased), David Green, vs. Harris County, Texas, Former Harris County Sheriff, et al., Case No.: 4:16-cv-00893.

**Deposition:** February 6, 2019. Sofia Valenzuela (Jose Romero), et al, v. City of Long Beach, et al. Superior Court Case No. BC672993.

**Deposition:** February 7, 2019. Rubia Rosaura Serna, et al. v. City of Bakersfield and Reagan Selman U.S. Dist. Court, Eastern District of CA - Case No. 1:17-CV-01290-LJO-JLT.

**Deposition:** February 11, 2019. Annice Evans (aka Ramos), et al. v. City of Vallejo, et al. Case No: 2:17-cv-01619-TLN-AC.

**Depositoin:** February 15, 2019  L.M., et al., vs. City of Redding, et al., Case No.: 2:14-CV-00767 MCE-AC.

**Trial:** February 20, 2019. Akrem Azzam vs. City of Houston, Texas, et al., Case No.: 4:17-cv-1242.

**Trial:** February 22, 2019. Moises Palacios, Victoria et al., v. City of Los Angeles, et al., Case No.: 14-cv-09639-MJF (AJWx).

**Trial:** February 27, 2019. Russell Tenorio v. Brian Pitzer, et al., Case No.: 2012-CV-01295 LH/KBM.

**Trial:** March 4, 2019. Sofia Valenzuela (Jose Romero), et al, v. City of Long Beach, et al. Superior Court Case No. BC672993.

**Deposition:** March 5, 2019. Puente, an Arizona Nonprofit Corporation, et al, v. City of

Phoenix, et al., Case No. 2:18-cv-02778-JJT.

**Deposition:** March 8, 2019. Lawrence, et al. v. Las Vegas Metropolitan Police Department, et al. (USDC Case No. 2:16-cv-03039-JCM-NJK)

**Deposition:** March 12, 2019. Estate of Omar Gonzalez, et al. vs . City of Los Angeles, Officer Eden Medina, et al., Case No.: BC660356.

**Deposition:** March 14, 2019. Jasmin Salcido, et al., vs. City of Whittier, et al., Case No.: 2:17-cv-8819-CBM (Asx).

**Deposition:** March 19, 2019. L.F., a minor, by and through Danisha Brown, and K.F., a minor, by and through Danisha Brown, vs. City of Stockton, et al. Case No.: 2:17-cv-01648-KJM-DB.

**Deposition:** March 25, 2019. Kevin DeCarlo, et al. v. City of Vallejo, et al. Case No. 4:18-cv-00109 JSW.

**Deposition:** April 5, 2019. Jacob Gorsky, and Olesya Gorsky, v. Harris County, Texas, et al. Case No; 4:16-cv-2877

**Trial:** April 11, 2019, &April 12, 2019. Estate of Omar Gonzalez, et al. vs . City of Los Angeles, Officer Eden Medina, et al., Case No.: BC660356.

**Trial:** April 15, 2019. The State of Arizona vs. John David Rothrock, Case No.: CR2016-137374-001.

**Deposition:** April 1, 2019. Estate of Mark Roshawn Adkins, et al. v. County of San Diego, et al. Case No 18-cv-0371-H-MDD.

**Deposition:** May 8, 2019. M.J.L.H. (Hurtado), et al, v. City of Pasadena, et al. Case No.: 2:18-cv-03249 JFW (SSx)

**Page 23 of  23**

# Roger A. Clark

## Police Procedures Consultant, Inc.

10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  Fax: (619) 258-0045
rclark9314@aol.com

### May 10, 2019

John L. Burris, Esq.
Lateef Gray, Esq.
Law Offices of John L. Burris
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, CA  94621

*Regarding:   Jason Anderson, v. City of Vallejo, et al.  Case No. 2:17-cv-00137-JAM-DB.*

Dear Mr. Burris:

My fee schedule is as follows:

- Travel time at the rate of $50.00 per hour.
- (Travel via automobile to and from San Diego to Los Angeles 8 hours $400.00)
- All case review, consulting, and writing of expert opinions (such as Rule 26 reports) at $250.00 per hour.
- All testimony (either at trial or deposition) at $350.00 per hour, with a two hour minimum required.
- A retainer fee of $3,500.00 when initially retained will be used against the above listed fees.  Subsequent billings at the rates specified.
- A "rush fee" of $500.00 for work required less than three weeks from notice/retention.
- An invoice will be submitted periodically upon request reflecting the activities and charges associated with the account.  Payment is due upon receipt of the invoice.

There is no formal contract required.  My Federal Tax ID Number is **72-1576857.**

Sincerely,

Roger A. Clark

Page 1 of 1