LAW OFFICES OF JOHN L. BURRIS
JOHN L. BURRIS, Esq., (SBN 69888)
LATEEF H. GRAY, Esq., (SBN 250055)
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
john.burris@johnburrislaw.com
lateef.gray@johnburrislaw.com

LAW OFFICES OF JOHN L. BURRIS
K. CHIKE ODIWE, Esq., (SBN 315109)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, California 90212
Telephone: (310) 601-7070
Facsimile: (510) 839-3882
chike.odiwe@johnburrislaw.com

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JASON ANDERSON,<br><br>    Plaintiff,<br><br> vs.<br><br>CITY OF VALLEJO, a municipal corporation; ROBERT HERNDON, individually and in his capacity as a Police Corporal for the Vallejo Police Department, individually and in his capacity as a Police Corporal for the Vallejo Police Department; JAMES MELVILLE, individually and in his capacity as a Officer for the Vallejo Police Department; JOSEPH COELHO, individually and in his capacity as a Officer for the Vallejo Police Department; and DOES 1-50, inclusive, individually, jointly and severally,<br><br>    Defendants. | Case No.: 2:17-cv-00137-JAM-DB<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS CITY OF VALLEJO, OFFICERS HERNDON, MELVILLE AND COELHO'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT [FRCP RULE 56]<br><br>Date: September 10, 2019<br>Time: 1:30 p.m.<br>Location: Courtroom 6 - 14th Floor<br>Robert T. Matsui United States Courthouse<br>501 I Street<br>Sacramento, CA 95814<br><br>**Hon. John A. Mendez** |

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................... iii

**Memorandum of Points and Authorities** ..................................................................**1**

Introduction ..................................................................................................................1

Statement of Facts ........................................................................................................2

**Argument** ...................................................................................................................**6**

A. Legal Standard on Summary Judgment ...................................................................6

B. Finding that Defendants Did Not Violate Plaintiff's Fourth Amendment Rights Requires
   Making a Credibility Determination in the Officers' Favor Which Is Prohibited on
   Summary Judgment ..................................................................................................8

C. Plaintiff's Third Cause of Action for Excessive Force Must Proceed. .......................8

D. Plaintiff's Fourth Cause of Action for *Monell* Liability against Defendant City of Vallejo Must
   Proceed....................................................................................................................12

E. Defendants are not Entitled to Qualified Immunity. ...............................................13

F. Plaintiff's Bane Act Claim Must Proceed ...............................................................17

G. Plaintiff's State Law Causes of Action Must Proceed .............................................19

**Conclusion** ...............................................................................................................**19**

# TABLE OF AUTHORITIES

**Statutes**

Federal Rule of Civil Procedure 56(a) ...................................................................................6

Federal Rule of Civil Procedure 56(e) ...................................................................................7

**Cases**

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) ..........................................................7

*Ashcroft v. al-Kidd*, 563 U.S. ——, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) .................14

*Brown v. Ransweiler,* 171 Cal.App.4th 516 (2009) ..............................................................19

*Bryan v. McPherson*, 630 F.3d 805 (9th Cir. 2010)……………………………………...9,11,15,16,17

*Christie v. Iopa*, 176 F.3d 1231 1238 (9th Cir. 1999)……………………………………12

*City of Canton*, 489 U.S. 378 (1989)……………………………………………………12

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)………………………………...12

*Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766 (Ct. App. 2017)……………………18

*Crawford-El v. Britton*, 523 U.S. 574, 587 (1998)………………………………………14

*Davis v. City of Las Vegas*, 478 F.3d. 1048, 1055 (9th Cir. 2007)……………………………10

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001)……………………………………10,16,17

*Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir.2003)……………………………17

*Estate of Lopez v. Gelhaus*, 878 F.3d 998 (9th Cir. 2017)………………………………8

*Estate of Villarreall ex rel. Villarreal v. Cooper*, 929 F.Supp.2d 1063 (2013)………………………13

*Freeman v. Arpaio*, 125 F.3d 723 (9th Cir. 1997) ...............................................................7

*Glenn v. Washington Cnty*., 673 F.3d 864 (9th Cir. 2011) ....................................................9

*Graham v. Connor*, 490 U.S. 386 (1989) ..........................................................................8, 9

*Gregory v. Cnty. of Maui*, 523 F.3d 1103 (9th Cir. 2008) ....................................................7

*Hope v. Pelzer*, 536 U.S. 730 (2002)………………………………………………………17

*In re Oracle Corp. Sec. Litig*., 627 F.3d 376 (9th Cir. 2010) .............................................7

*Isayeva v. Sacramento Sheriff's Department*., No. 15-17065 (9th Cir. 2017)………………………16

*Jones v. Las Vegas Metropolitan Police Dept*., No. 14-17388 (9th Cir. 2017)………………………16

*Keenan v. Allan*, 91 F.3d 1275 (9th Cir. 1996)......................................................................7

*Knox v. Southwest Airlines*, 124 F.3d 1103 (9th Cir. 1997)…………………………………15

*Lee v. Los Angeles*, 250 F.3d 668 (9th Cir. 2001)…………………………………………12

*Liston v. County of Riverside*, 120 F.3d 965 (9th Cir.1997)…………………………………..9

*Long v. County of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006)……………………………..12

*Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574 (1986)………………7

*Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011)…………………………………………..10,16,17

*Meredith v. Erath*, 342 F.3d 1057 (9th Cir. 2003)…………………………………………9

*Millender v. County of Los Angeles*, 564 F.3d 1143 (2009)…………………………………14

*Nelson v. City of Davis*, 709 F.Supp.2d 978 (ED Cal. 2010)...........................................9

*Newmaker v. City of Fortuna*, 842 F.3d 1108 (9th Cir. 2016)……………………………9

*Niblett v. City of Ceres*, No. 116CV01713LJOSAB, 2018 WL 4193192, (E.D. Cal. Aug. 31, 2018).18

*Reese v. Cty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018)……………………………...17,18

*Santos v. Gates*, 287 F.3d 846 (9th Cir.2002)......................................................................8,9

*Saucier v. Katz*, 533 U.S. 194 (2001) .............................................................................14

*Scott v. Henrich*, 39 F.3d 912 (9th Cir.1994).....................................................................7

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) .............................................9,10,11

Ziglar v. Abbasi, 137 S.Ct. 1843, (2017)……………………………………………14


**California Statutes**

California Civil Code section 52.1...................................................................................17

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Although Defendants style their motion as a summary judgment motion, Defendants fail to expressly address Plaintiff's central claims and more aptly move for summary adjudication of certain issues of Plaintiff's claims, brought under the Fourth Amendment and attendant state law causes of action, for the excessive force used on Plaintiff by Defendants. Defendants assert that the undisputed evidence confirms that Defendants reasonably believed that Plaintiff posed an immediate, serious threat and that Defendant Robert Herndon's response, in tasing Plaintiff, was objectively reasonable. Plaintiff maintains that the critical facts surrounding Defendant Herndon's decision to deploy and repeatedly cycle his taser are disputed or require the court to make credibility determinations, or to draw inferences in Defendants' favor, which is impermissible on summary judgment.

Defendants' Motion must be denied, as there exist numerous triable issues of material fact regarding Defendant Herndon's use of his taser, including but not limited to, Plaintiff's actions prior to and during the multiple cycles of Defendant Herndon's taser. Under Plaintiff's version of the incident, Defendant Herndon's deployment of his taser was excessive and unreasonable under the circumstances, as Defendant Herndon wrongfully deployed his taser while both of Plaintiff's hands were raised in a surrender, nonthreatening position. The disputed facts include but are not limited to: (1) whether Plaintiff's hands were raised in a surrender position before Defendant Herndon deployed his taser; (2) whether Plaintiff reached into his toolbox immediately before Defendant Herndon deployed his taser; (3) whether the taser cycles had an effect on Plaintiff; (4) whether Plaintiff ignored commands from the officers while the taser cycles were going; (5) whether Plaintiff appeared to try to get up after the first cycle of Defendant Herndon's taser; (6) whether Plaintiff appeared to try to get up after the second cycle of Defendant Herndon's taser; (7) whether Plaintiff posed a threat after the first cycle of Defendant Herndon's taser; (8) whether Plaintiff posed a threat after the second cycle of Defendant Herndon's taser: and (9) whether Defendants Herndon, Melville, Coehlo, along with Sergeant Steven Gordon, were captured on an audio fabricating a justification for deploying the taser.  Due to these genuine disputes of material facts, summary judgment must be denied.

Defendant Herndon's prior statements and on-the-scene response to the subject-incident are distinct from the convenient version of the incident that he now proffers in critically important respects. It is the jury's function to determine Defendants' credibility—not that of this court. Summary Judgment is simply not appropriate here.

Plaintiff's Opposition to Defendant's Motion for Summary Judgment is based on the arguments hereinafter made, on the Declaration of K. Chike Odiwe (hereinafter the "Odiwe Declaration"), filed herewith and all exhibits attached thereto, on the Court's file in this matter, and on such oral and/or documentary evidence presented at the hearing of this motion.

## STATEMENT OF FACTS

**The Events Preceding Defendants Use of Force**

From 2008 to 2015, Plaintiff Jason Anderson (hereinafter "Plaintiff") owned and operated, auto transportation company, Anderson Auto Transport. (SSF 1.) On the morning of June 9, 2015, Plaintiff had a work order to pick up two vehicles that were to be transported to AutoLinx Car Dealership in Vallejo, CA. (SSF 2.) Plaintiff drove to the car auction in Tracy, CA to pick up the first vehicle, then drove to the car auction in Hayward, CA to pick up the second vehicle. (SSF 2.) Plaintiff was hauling the vehicles for his business as a "motor carrier of property," which was licensed with the California Department of Transportation.  (UMF No. 4.) On the same date, Defendant Vallejo Police Officer James Melville (hereinafter "Defendant Melville") was in full uniform on traffic patrol riding a police motorcycle equipped with emergency lights and sirens. (UMF No. 1.) Also, on this day, defendant officers Joseph Coelho (hereinafter "Defendant Coelho") and Robert Herndon (hereinafter "Defendant Herndon") were each in full uniform on patrol driving a police cruiser equipped with emergency lights and sirens. (UMF No. 2.)

While on patrol riding on Sonoma Boulevard in the City of Vallejo, Defendant Melville observed Plaintiff operating a commercial truck that was towing vehicles on a trailer. (UMF No. 5.) As Plaintiff drove on Sonoma Boulevard towards AutoLinx, he stopped at a stopping point that appeared to be created for purposes related to the construction work that was happening in the area. (SSF 3.) Defendant Melville pulled alongside Plaintiff and ordered him to pull over. (SSF 3.) Plaintiff asked Defendant Melville why he had to pull over. (SSF 3.) Defendant Melville replied by telling

Plaintiff, "because I told you to pull over." (SSF 3.) While stopped in the construction zone, Plaintiff observed that there was not an area to his right or to his left where he could safely pull his commercial truck over. (SSF 4.) Plaintiff estimated that he was one block away from AutoLinx, his vehicle drop-off destination, when Defendant Melville attempted to pull him over. (SSF 4.) Plaintiff told Defendant Melville that he was on his way to drop off cars at AutoLinx. (SSF 4.) Plaintiff pointed to AutoLinx and told Defendant Melville that he would stop at AutoLinx. (SSF 4.) Plaintiff then proceeded towards AutoLinx. (SSF 5.) Defendant Melville then pulled behind Plaintiff and requested backup over the dispatch radio for a failure to yield at the intersection of Arkansas Street and Sonoma Boulevard.  (UMF No. 7.)

After Plaintiff arrived at AutoLinx, he exited his truck, and began the process of unloading the vehicles from his commercial trailer. (SSF 6.) Plaintiff went to his toolbox to get gloves to begin the process of unstrapping the vehicles from the trailer. Plaintiff was not stopped by any officer before he retrieved his gloves from his toolbox. (SSF 7.)

**Defendant Herndon's Use of his taser According to Plaintiff Jason Anderson**

According to Plaintiff, he made his way to the rear of his trailer when multiple officers arrived on the scene. Defendants Herndon and Coelho, as well as multiple unidentified officers, immediately drew their firearms and aimed them at Plaintiff. (SSF 8). The officers then commanded Plaintiff to put his hands up. (SSF 8.) Plaintiff put his hands up in order to comply with the officers' commands. (SSF 9.)  Plaintiff repeatedly told the officers that he was "just working." (SSF 10.) While Plaintiff's hands were in the air, Defendant Herndon deployed his taser in dart mode, without a warning of his intent to do so, striking Plaintiff, and sending a current of electricity through Plaintiff's body. (SSF 11.) Plaintiff collapsed onto his back after getting tased. (SSF 12.) After Plaintiff collapsed, multiple officers commanded him to roll over onto his stomach. (SSF 13.) Plaintiff repeatedly told the officers that he could not roll over because of the effect of the taser deployment. (SSF 13). Even still, Defendant Herndon continued to tase Plaintiff two (2) more times while Plaintiff was on his back and could not move. (SSF 13.) Plaintiff recalls multiple officers striking him with their hands, knees, and elbows around his torso area while he was on the ground. (SSF 14.)

**Defendant Herndon's Use of his taser According to Defendants**

According to Defendants within 20 seconds of the Officers pulling up, Plaintiff began shouting at the Officers something to the effect of "let me do my job!" (UMF No. 18). Defendant Herndon knew that Plaintiff was driving a commercial truck and he believed that Plaintiff was delivering cars. (SSF 15.) Defendant Herndon did not have any information that Plaintiff was armed or dangerous. (SSF 15.) According to Defendant Herndon, after Plaintiff got out of his work truck- he did not verbally threaten to harm anybody, did not get into fighting stance, did not charge at any of the officers on the scene, and did not have a weapon in his hand. (SSF 16.) Even still, Defendants Herndon and Coelho submit that they perceived Plaintiff to be a potential threat. Each drew their firearm and ordered Plaintiff to show his hands.  (UMF No. 19.) Officers Herndon and Coelho assert that they observed Plaintiff continue on foot to the rear of his vehicle near a toolbox attached to his trailer. Herndon and Coelho claim that Plaintiff positioned himself into a space between his truck and the attached trailer where the toolbox was located. (UMF No. 20.)  Coelho and Herndon further claim that Plaintiff began to open the toolbox at the rear of his trailer.  Defendants Herndon and Coelho submit that they again ordered Plaintiff to show his hands.  (UMF No. 21.) Defendants Herndon and Coelho claim that they then observed Plaintiff begin reaching into the toolbox.  Defendant Herndon claims that around this time, he deployed his TASER, striking Plaintiff and causing him to fall to the ground. (UMF No. 22.)  Herndon claims that Plaintiff resisted the TASER and it took a cycle of approximately 6 seconds for him to go down to the ground.  (UMF No. 23.) Herndon and Coelho submit that after Defendant Herndon's TASER completed its first cycle, Defendants Herndon and Coelho ordered Plaintiff to roll over and to place his hands behind his back. Herndon and Coelho further submit that they observed Plaintiff appear to try to get back up. (UMF No. 24.) When Defendant Herndon was questioned at his deposition as to whether Plaintiff posed a threat of harm when he observed him attempting to get up, Herndon replied, "he was just trying to get up. He was on his back, and he was trying to get back up." (SSF 17.) Herndon admits that when he observed Plaintiff attempt to get up after being tased the first time that Plaintiff did not verbally express any threats towards the officers, did not ball his fists, and did not have a weapon in his hands. (SSF 18.) Further, Plaintiff did not say anything that indicated that he was resisting arrest. (SSF 18.) Herndon

tased Plaintiff a second time while he was on the ground (SSF 19.) Herndon claims that while this second cycle was running, he continued ordering Plaintiff to roll over and place his hands behind his back.  (UMF No. 25.)

According to Defendant Herndon, as soon as the second cycle ended it appeared to him that Plaintiff again was attempting to get up. (SSF 20.) Herndon admits that when he observed Plaintiff attempt to get up after being tased the second time that Plaintiff did not verbally express any threats towards the officers, did not ball his fists, and did not have a weapon in his hands. (SSF 21.) Defendant Herndon testified at his deposition that Plaintiff posed a threat of harm before he tased him the second time because of the *potential* that Plaintiff could get up and attack the officers. (SSF 22.) Defendant Herndon then ran a third cycle of his TASER on Plaintiff. (SSF 23.) Plaintiff was handcuffed after the third cycling of the taser. (SSF 23.)

**Defendant Herndon's Taser Log**

On the date on the incident, Defendant Herndon used a Model X26 TASER, Serial Number X00-066754. (SSF 24.) The X26 TASER has a memory device that records each trigger pull in terms of date, time and duration, and does not override itself until around 1500 separate events are recorded. (SSF 24.) The separate events from each Model X26 TASER device can be downloaded and printed out as a report. (SSF 24.)

The printout of Defendant Herndon's Taser report shows the events related to the tasing of Plaintiff. (SSF 25.) The event numbers are 43 to 46. (SSF 25.)

Event Number 43, occurred on June 9, 2015 at 12:33:41 and lasted for six seconds, meaning that Defendant Herndon pulled the trigger at 12:33:35. (SSF 26.) Event Number 44 ends at 12:33:47 and is cited as a three-second cycle -- meaning that the trigger was pulled at 12:33:44 -- three seconds after the initial cycle of the TASER ended. (SSF 27.) Event Number 45 ends at 12:33:49 and goes for two seconds, which means that Defendant Herndon pulled the trigger at 12:33:47, the end time of Event Number 44. (SSF 28.)

Once the trigger on a Model X26 TASER is pulled, it cycles for five seconds unless it is manually manipulated. (SSF 29.) An officer can stop the device from performing a full five-second

cycle by lifting their finger from the trigger or an officer can extend the duration of the cycle by keeping their finger on the trigger beyond the five-second cycle. (SSF 29.)

**Audio After the Incident**

An audio recording immediately after the incident captured Defendant Herndon, Defendant Melville and Sergeant Steven Gordon fabricating a story and attempting to develop a justification for tasing Plaintiff (SSF 30.) On the recording, Defendant Herndon is heard inquiring about how to deal with Plaintiff being 'tased on video.' (SSF 31.) In reference to justifying the tasing, Defendant Herndon is heard saying, "well he was running." (SSF 31.) Defendant Herndon then states that "It looked like he was running…It look like he was gonna grab a …"   In response to Defendant Herndon, Sergeant Gordon immediately tells him to "get your story straight." (SSF 31.) Defendant Herndon then offered that it looked like Plaintiff was "gonna to grab a tool out of his toolbox." (SSF 31.) Defendant Herndon then changed the justification by saying, "no. he looked like he was gonna run.  Would you shut up and listen." (SSF 31.)

**The City's Response to Defendants Conduct**

Sergeant Gordon was the highest-ranking officer to arrive at the scene of Plaintiff's arrest. (SSF 32.) Sergeant Gordon and Defendants Melville, Coelho, Herndon did not receive any remedial training or discipline from the Vallejo Police department as a result of their conduct during Plaintiff's arrest. (SSF 33.) Further, no member of the Vallejo Police Department received remedial training or discipline from the Vallejo Police department as a result of their conduct during Plaintiff's arrest. (SSF 34.)

**ARGUMENT**

**A. LEGAL STANDARD ON SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense-or the part of each claim or defense-on which summary judgment is sought." It further provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are those that may affect the outcome of the

case. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id*. (citing Fed.R.Civ.P., Rule 56(e)). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

In resolving a motion for summary judgment, the evidence of the opposing party is to be believed. See *Anderson*, 477 U.S. at 255. Moreover, all reasonable inferences that may be drawn from the facts placed before the court must be viewed in a light most favorable to the opposing party. See *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the nonmoving party." *Freeman v. Arpaio*, 125 F.3d 723, 735 (9th Cir. 1997).

The Ninth Circuit has explained, "[c]ases in which the victim of alleged excessive force has died 'pose a particularly difficult problem' in assessing whether the police acted reasonably, because 'the witness most likely to contradict [the officers'] story... is unable to testify.'" *Gregory v. Cnty. of Maui*, 523 F.3d 1103, 1107 (9th Cir. 2008) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994)). Because of the danger posed by self-serving testimony in such situations, a district court "may not simply accept what may be a self-serving account by the police officer. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story." *Henrich*, 39 F.3d at 915. Following from these precepts, courts "have denied summary judgment to defendant police officers in cases where 'a jury might find the officers' testimony that they were

restrained in their use of force not credible, and draw the inference from the medical and other circumstantial evidence that the plaintiff's injuries were inflicted on him by the officers' use of excessive force.'" *Gregory*, at 1107 (quoting *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002)).

Here, Defendant relies on the interpretations of and inferences drawn from the evidence that favor their theory of the case and that intentionally misrepresents the record in asserting that they are entitled to summary judgment.

## B. FINDING THAT DEFENDANTS DID NOT VIOLATE PLAINTIFF'S FOURTH AMENDMENT RIGHTS REQUIRES MAKING A CREDIBILITY DETERMINATION IN DEFENDANTS' FAVOR, WHICH IS PROHIBITED ON SUMMARY JUDGMENT

Defendants assert that they reasonably believed that Plaintiff posed an immediate threat and that Defendant Herndon's use of his taser was reasonable. In so arguing, Defendants ask this court to impermissibly make credibility determinations, and draw inferences, and make factual determinations on issues that are disputed, in their favor. Of course, any such determinations are the province of the finder of fact and are not allowed to be made by this Court on summary judgment. Defendants' arguments for dismissal Plaintiff's Fourth Amendment claims must be denied.

## C. PLAINTIFF'S THIRD CAUSE OF ACTION FOR EXCESSIVE FORCE MUST PROCEED

Generally, use of force claims are "governed by an 'objective reasonableness standard,' which requires a 'careful balancing of the nature and quality of the intrusion on the individual's []interests against the countervailing governmental interests at stake.'" *Estate of Lopez v. Gelhau*s, 878 F.3d 998, 1005 (9th Cir. 2017) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).[1] This analysis involves three steps: 1) assess the severity of the intrusion by evaluating the type and amount of force inflicted; 2) evaluate the government's interest in the use of force, and 3) balance the gravity of the

---

[1] "Because this inquiry is inherently fact specific, the determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." *Green v. City & County of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (internal quotes omitted).

intrusion on the individual against the government's need for that intrusion. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016).

The Court must "'balance the amount of force applied against the need for that force.'" *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)). In balancing Defendant Herndon's use of his taser against the need for that force, the court must consider the following non-exhaustive factors: (1) Whether Plaintiff posed an immediate threat to the safety of Defendant Herndon or others; (2) The severity of the crime at issue; and (3) Whether Plaintiff was actively resisting arrest or attempting to evade arrest. See *Graham*, 490 U.S. at 396. The most important of those factors is whether Plaintiff posed an immediate threat to the safety of Defendant Herndon or others. See *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). Other factors relevant to the inquiry include the feasibility of alternative methods of capturing or subduing a suspect, *Bryan v. McPherson*, 630 F.3d 805, 813 (9th Cir. 2010), and the giving of a warning prior to the use of force, *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012). Information unknown to an officer at the time of his use of force – or information acquired after the incident by investigators or during discovery – cannot be considered in evaluating a Fourth Amendment claim of excessive force. *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 (9th Cir. 2011).

"Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); see also *Liston v. County of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir.1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."). "This is because such cases almost always turn on a jury's credibility determinations." *Smith*, 394 F.3d at 701.

1.     **Plaintiff was Not an Immediate Threat of Harm to Anyone**

Plaintiff was not an immediate threat of harm to anyone when Defendant Herndon deployed his taser, as Plaintiff's hands were raised in a surrender position before Defendant Herndon's first taser deployment. Additionally, Plaintiff never made any threatening motions or furtive gestures to

indicate that he was about to harm Defendant Herndon or any other person.  Instead, Plaintiff only raised his hands to comply with the officers' commands, while repeatedly telling them that he was just trying to complete his work order. Further, Defendant Herndon observed Plaintiff driving a commercial truck and believed that Plaintiff was in the process of delivering cars.  As such, Defendant Herndon's representation that Plaintiff posed a legitimate threat of harm to him while in the middle of a work order and surrounded by multiple police officers with firearms trained on him is nonsensical. Defendant Herndon had other alternatives to take Plaintiff into custody, including but not limited to using verbal communication to explain to Plaintiff the reason for his detention.

Defendant Herndon's second and third cycles of his taser are just as egregious and unreasonable, as Defendant Herndon tased Plaintiff two additional times while Plaintiff was on the ground, defenseless, unarmed and unresisting.

A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). Further, an officer's "desire to resolve quickly a potentially dangerous situation" does not, on its own, justify the use of force. *Id*. Thus, Defendant Herndon's subjective belief that Plaintiff was going to be harmed is not enough to justify the use of his taser. Further, Defendant Herndon's subjective belief that Plaintiff was still a threat after the first deployment of his taser, even though Plaintiff was still unarmed and incapacitated while lying on his back on the ground, is not enough to justify his second and third cycles of his taser. Defendant Herndon's subjective belief that there was the *potential* for Plaintiff to get up and attack the officers is not sufficient to justify his irrational conduct under the circumstances.

### 2.   Plaintiff's Alleged Crimes Were Not Serious

Plaintiff's underlying crimes were not serious - at most, it was an unwitting violation of Vehicle Code 2800.1 for driving one block to the AutoLinx dealership before pulling his commercial work truck over. (*See Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) (driving 32 miles per hour in a 20-mile per-hour zone is not a serious offense); *Davis v. City of Las Vegas*, 478 F.3d. 1048, 1055 (9th Cir. 2007) (noting that trespassing and obstructing a police officer were not severe crimes); and *City of Hemet*, 394 F.3d at 702 (concluding that suspect was not "particularly dangerous" and his

offense was not "especially egregious" where his wife had "called 911 to report that her husband 'was hitting her and/or was physical with her,' [and] that he had grabbed her breast very hard.") While "the commission of a misdemeanor offense is 'not to be taken lightly,' it militates against finding the force used to effect an arrest reasonable where the suspect was also nonviolent and 'posed no threat to the safety of the officers or others.'" *Bryan v. McPherson*, 630 F.3d at 828–29.

### 3. Plaintiff was Not Actively Resisting or Trying to Flee from Arrest

The Ninth Circuit has cautioned that because "Resistance…should not be understood as a binary state, with resistance being either completely passive or active[, r]ather, it runs the gamut from the purely passive protestor who simply refuses to stand, to the individual who is physically assaulting the officer," the nature of any resistance should be viewed in light of the particular facts of the case. Bryan, 630 F.3d at 830. In *Smith v. City of Hemet*, the Ninth Circuit found that although the plaintiff continually ignored commands, physically resisted for "only a brief time," and was not "perfectly passive," ultimately this factor did not provide much support for the officers' use of significant force because "it does not appear that Smith's resistance was particularly bellicose or that he showed any signs of fleeing the area." 394 F.3d at 703.

Here, Plaintiff did not actively resist arrest or try to flee from the officers. Plaintiff informed Defendant Melville that he intended to pull over at the AutoLinx car dealership, which was only a block away.  Plaintiff subsequently pulled over at AutoLinx.  When multiple officers confronted Plaintiff with their firearms drawn, Plaintiff simply raised his hands in order to comply with the officers' commands, while questioning the nature of the detention and repeatedly informing the officers that he was in the middle of completing a work order. While Plaintiff was on the ground after being tased, multiple officers were commanding him to get on his stomach.  However, Defendant Herndon's taser log demonstrates that Defendant Herndon did not give Plaintiff time to comply with any commands that may have been given. Defendant Herndon's first deployment of his taser lasted for six seconds. Defendant Herndon's second cycle of his taser occurred three seconds after the first deployment. This means that Defendant Herndon gave Plaintiff, who was still incapacitated from the first taser deployment, at most, three seconds to comply with *multiple commands* to get on his stomach before he tased Plaintiff a second time. Further, Defendant Herndon's taser log reveals that

he would have had to form his subjective belief that Plaintiff was attempting to get back up and posed a potential threat of harm within three seconds after a six second taser deployment that caused Plaintiff to collapse onto his back. Further, Defendant Herndon tased Plaintiff a third time less than one second after the second taser cycle ended. As such, Defendant Herndon's representations that Plaintiff was resisting multiple commands to get on his stomach are simply not credible as the timeline of his taser deployments contradicts his testimony because he did not give Plaintiff time to comply with any commands. Defendant Herndon unreasonably tased Plaintiff multiple times without an objective justification.

For all of the aforementioned reasons, Defendant's Motion for Summary Judgment on Plaintiff's Fourth Amendment claim for excessive force should be denied.

### D. PLAINTIFF'S FOURTH CAUSE OF ACTION FOR *MONELL* LIABILITY AGAINST DEFENDANT CITY OF VALLEJO MUST PROCEED

Isolated constitutional violations may give rise to municipal liability where an agent of the municipal corporation possesses final policymaking authority and "ratifies" a subordinate's actions. *Christie v. Iopa*, 176 F.3d 1231 1238 (9th Cir. 1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  To establish ratification, a plaintiff must prove that the authorized policymaker approved the subordinate's position and the basis for the decision. *Id.* at 1239.

Here, the City of Vallejo has engaged in a practice of failing to discipline officers who fail to follow policy.  The failure to train and/or supervise may give rise to a "policy or custom" sufficient to impose liability on these Defendants. *City of Canton*, 489 U.S. 378 (1989) at 389-90.  A municipality's failure to train its employees may create § 1983 where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton*, 489 U.S. at 388; *Lee v. Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001).  "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006).

Defendants produced police reports that lay in stark contrast to Plaintiff's version of events, the taser log and the audio of the inadvertently recorded post-incident conversation between

Defendants and a Sergeant.  Supervising officers are required to review the police reports and evidence accompanying the reports (here the taser log and the inadvertently recorded post-incident conversation) to ensure completeness, accuracy, and compliance with policy.  No supervisory personnel ever attempted to obtain a corrected version of any Defendant's police report, nor noted the obvious discrepancies between the officers' version of events and the objective evidence, e.g. the taser log and the inadvertently recorded post-incident conversation.  Additionally, Defendant Herndon was trained that it is the policy of the Vallejo Police Department that a verbal warning should be given to a suspect before a taser is deployed. (SSF 35) Even still, Defendant Herndon failed to warn Plaintiff before he deployed his taser and further failed to document the reason why he failed to give Plaintiff a taser warning in his police report. (SSF 39) More troubling is the fact that the City had access to an audio recording confirming that the Defendant officers collaborated to fabricate a justification for Plaintiff being tased.  Further, despite knowing that no officer used their body worn cameras during the force portion of this incident, no officer was disciplined or retrained on the importance of utilizing the tools available to document citizen contact, justify force and/or secure criminal convictions.

This failure to discipline or retrain certainly gives rise to *Monell* liability for Defendant City. See e.g., *Estate of Villarreall ex rel. Villarreal v. Cooper*, 929 F.Supp.2d 1063, 1077 (2013) (denying summary judgment because issues of material fact remain).  The City's failure to even retrain these officers creates an ongoing *Monell* violation, as the City is permitting officers to continue to engage in abuses of force, which are dangerous and contradictory to known and accepted police practices.

There is a material dispute regarding the City's constitutional obligation to retrain and/or discipline Defendants under the circumstances described herein.  As such, this claim cannot properly be decided on summary judgment.

### E. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Defendants lodge a perfunctory qualified immunity argument. Without citation to any relevant authority, Defendants simply argue that, "no court has ever held that the use of a taser under the specific facts of this case violates a suspect's Fourth Amendment rights." Defendants' misguided

argument views the facts in the light most favorable to them and fails to address Plaintiff's version of the incident. To overcome a claim of immunity, plaintiffs must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The first step requires the court to ask whether taking the facts "in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Millender v. County of Los Angeles*, 564 F.3d 1143, 1148 (2009).  If Defendant Herndon's conduct in this case violated constitutional rights, the second inquiry is whether the right was clearly established. The Supreme Court recently confirmed the true contours of finding a "clearly established" constitutional violation:

> By its plain terms, the [Fourth] Amendment forbids unreasonable searches and seizures, yet it may be difficult for an officer to know whether a search or seizure will be deemed reasonable given the precise situation encountered. For this reason, '[t]he dispositive question is 'whether the violative nature of particular conduct is clearly established.' It is not necessary, of course, that 'the very action in question has previously been held unlawful.' That is, an officer might lose qualified immunity even if there is no reported case 'directly on point.' But 'in the light of pre-existing law,' the unlawfulness of the officer's conduct 'must be apparent.'

*Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866-67 (2017) (emphasis original; internal citations omitted). The *Ziglar* Court reiterated that "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law." *Id*. at 1867. And "[t]o determine whether a given officer falls into either of those two categories, a court must ask whether it would have been clear to a reasonable officer that the alleged conduct 'was unlawful in the situation he confronted.'" *Id*. (citation omitted). Defendants bear the burden of establishing that there is no genuine issue of material fact and the affirmative defense of qualified immunity is established as a matter of law. *Crawford-El v. Britton*, 523 U.S. 574, 587 (1998).

**1. Defendant Herndon's Use of the Taser Violated a Constitutionally Protected Right**

Defendant Herndon's use of the taser was in violation of the Fourth Amendment's prohibition against excessive force. Here, there are triable issues of fact and evidence supporting a finding that Defendant Herndon's use of his taser was excessive and unreasonable under the circumstances. Further, as indicated above and in the attached Separate Statement of Facts, there are disputed issues of material fact as to how the incident unfolded. *Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997) (no qualified immunity where there are triable issues of fact).

The Ninth Circuit has repeatedly held an officer's use of a taser as unconstitutionally excessive in cases involving comparable circumstances as present here. See *Bryan v. McPherson*, 630 F.3d 805 (9th Cir. 2009) (holding that officer's use of a taser in a 2005 incident was unconstitutionally excessive wherein the tased person was unarmed, tased without warning and was tased at least once in dart mode). As previously explained, Plaintiff's underlying crimes were not serious, as at most, it was an unwitting violation of Vehicle Code 2800.1.

As previously explained, Plaintiff did not pose an immediate threat to the safety of the officers or others, as he was unarmed and did not harm or threaten to harm anyone. At the time Defendant Herndon initially deployed his taser in dart mode, Plaintiff's hands were raised in the air in a surrender position. After Plaintiff collapsed to the ground as a result of the first tasing, nothing happened to create a justification for two (2) additional taser cycles. Defendants' claims that Plaintiff appeared to be attempting to get up is not sufficient to justify the use of this significant force, as Defendants did not perceive a weapon on Plaintiff's person either before, during, or after any of the taser cycles and Plaintiff did not attempt to assault any of the officers at any point during the subject incident. The Ninth Circuit has held, "[t]he problems posed by, and thus the tactics to be employed against, an unarmed, emotionally distraught individual who is creating a disturbance or resisting

arrest are ordinarily different from those involved in law enforcement efforts to subdue an armed and dangerous criminal who has recently committed a serious offense." *Bryan v. McPherson*, 630 F.3d at 829 (citing *Deorle v. Rutherford*, 272 F.3d 1272, 1282–83 (9th Cir. 2001)). Even considering Defendant Herndon's testimony that Plaintiff was attempting to get up after getting tased, it is undisputed that Plaintiff did not strike, kick, or otherwise attempt to assault them.

Several other factors support a finding of unreasonable force as a matter of law. Multiple applications of the taser have been found to be an "overwhelmingly salient factor" in the *Graham* calculus; here, Defendant Herndon deployed three total cycles with the second cycle starting only three-seconds after the first cycle ended and the third cycle starting less than one-second after the second cycle ended. Compare *Mattos*, 661 F.3d at 445 (involving three drive-stun deployments in less than a minute); also see *Jones v. Las Vegas Metropolitan Police Dept*., No. 14-17388 (9th Cir. 2017) ("But, as we explain above, continuous, repeated and simultaneous tasings are different from isolated shocks. Any reasonable officer would have known that such use can only be justified by an immediate or significant risk of serious injury or death to officers or the public." *Jones v. LVM PD*, No. 14-17388, pg. 16). Failure to warn that they would use the taser is also a factor to consider, which Defendant Herndon failed to do. *Bryan*, 630 F.3d at 831 (finding that police officers normally provide such warnings where feasible, even when the force is less than deadly). It also must be considered that Plaintiff was not engaged in a struggle with the officers, was not physically resisting them, and was not tossing the officers around. see *Isayeva v. Sacramento Sheriff's Department*., No. 15-17065 (9th Cir. 2017) (Distinguishing, *Bryan*, 630 F.3d, and finding that Tereschenko posed a greater and more immediate threat than Bryan because he was engaged in a struggle with the deputies, physically resisting them, and was tossing them around.)

Even if the above cases were insufficient, state officials are not entitled to qualified immunity simply because no case with materially similar facts has held their conduct unconstitutional. See *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002); *Deorle*, 272 F. 3d at 1286 ("When the defendant's conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established."). Additionally, Defendant Herndon was trained that officers cannot tase an unresisting suspect. (SSF 40.); See *Drummond v. City of Anaheim*, 343 F.3d 1052, 1061-62 (9th Cir.2003) (holding that an officer's training from their own police department alerting officers to the risk of serious injury or death with regards to a specific type of force used under certain circumstances is "fair warning" that the force is unreasonable under those circumstances).

### 2.    The Right to Not be Tased In Situations Analogous to this Was Clearly Established As of June 9, 2015

Prior to June 9, 2015, it had been clearly established that tasing a person who was unarmed and posed no immediate threat was unreasonable under the Fourth Amendment. See *Bryan v. McPherson*, 630 F.3d 433 (9th Cir. 2011) (based on a 2005 incident); see also *Mattos v. Agarano*, 661 F.3d. 433 (9th Cir. 2011) (based on 2004 and 2006 incidents respectively).

For all of the aforementioned reasons, Defendants are not entitled to qualified immunity.

### F. PLAINTIFF'S BANE ACT CLAIM MUST PROCEED

The Bane Act, California Civil Code section 52.1, prohibits a person from interfering "by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a). Under this law, plaintiffs can collect damages from individuals who violate their constitutional rights. *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1044 (9th Cir. 2018). Even where officers are entitled to qualified immunity in the face of

alleged violations of the Fourth Amendment, they may remain liable for damages under the Bane Act. See *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1038–39, 1045 (9th Cir. 2018) (affirming qualified immunity on a Fourth Amendment excessive force claim but reversing summary judgment on a Bane Act claim based on the same facts). Relying on state court authority, the Ninth Circuit recently held that the threat, intimidation, or coercion alleged under the Bane Act need not be "transactionally independent" from the alleged constitutional violation. Id. at 1043; see *Cornell v. City & Cty. of San Francisco,* 17 Cal. App. 5th 766, 799 (Ct. App. 2017), as modified (Nov. 17, 2017), review denied (Feb. 28, 2018) ("[T]he use of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of Section 52.1.").

In addition to a Fourth Amendment violation, the Bane Act requires a showing that an officer had "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese*, 888 F.3d at 1043, (quoting *Cornell*, 17 Cal. App. 5th at 801). The plaintiff must show that the officer "intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Reese*, 888 F.3d at 1045 (internal quotation marks omitted). Reckless disregard is sufficient to show specific intent. *Id.*; see S.T. by & through *Niblett v. City of Ceres*, No. 116CV01713LJOSAB, 2018 WL 4193192, at *14 (E.D. Cal. Aug. 31, 2018) (holding that a jury could find that officers acted with reckless disregard for a decedent's rights when they shot him in the back as he fled).

For all of the aforementioned reasons, a reasonable jury could conclude that Defendant Herndon possessed the requisite intent, as Defendant Herndon recklessly disregarded Plaintiff's constitutional right to be free from unreasonable seizure and excessive force when: (1) Defendant Herndon clearly and intentionally tased Plaintiff while Plaintiff was unarmed with his hands raised in a surrendering position; (2) Defendant Herndon clearly and intentionally tased Plaintiff two (2) more times while Plaintiff was unarmed lying on the ground; (3) the Defendant Officers and a Sergeant engaged in a conversation wherein they fabricated a justification for tasing Plaintiff.

Based on the aforementioned reasoning, Defendants' Motion for Summary Judgment as to Plaintiff's Bane Act claims must be denied.

## G. PLAINTIFF'S STATE LAW CAUSES OF ACTION MUST PROCEED

Plaintiff urges that summary judgment must be denied as to his state law causes of action because they are also predicated on the objective reasonableness analysis identical to that of finding a constitutional violation. See *Brown v. Ransweiler*, 171 Cal.App.4th 516, 527 (2009).

## CONCLUSION

For the reasons set forth above and the supporting papers filed concurrently herewith, Plaintiff Jason Anderson respectfully submits that summary judgment, or alternatively, partial summary, should be DENIED.

Dated:  August 27, 2019                              **Law Offices of John L. Burris**

                                                     */s/ K. Chike Odiwe*_____
                                                       K. Chike Odiwe, Esq.,
                                                       Attorney for Plaintiff
                                                       JASON ANDERSON