LAW OFFICES OF JOHN L. BURRIS
JOHN L. BURRIS, Esq., (SBN 69888)
LATEEF H. GRAY, Esq., (SBN 250055)
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
john.burris@johnburrislaw.com
lateef.gray@johnburrislaw.com

LAW OFFICES OF JOHN L. BURRIS
K. CHIKE ODIWE, Esq., (SBN 315109)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, California 90212
Telephone: (310) 601-7070
Facsimile: (510) 839-3882
chike.odiwe@johnburrislaw.com

Attorneys for Plaintiff
JASON ANDERSON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON ANDERSON,<br><br>　　　　　　　Plaintiff,<br>　vs.<br>CITY OF VALLEJO, a municipal corporation; ROBERT HERNDON, individually and in his capacity as a Police Corporal for the Vallejo Police Department; JAMES MELVILLE, individually and in his capacity as a Officer for the Vallejo Police Department; JOSEPH COELHO, individually and in his capacity as a Officer for the Vallejo Police Department; and DOES 1-50, inclusive, individually, jointly and severally,<br><br>　　　　　　　Defendants. | Case No. 2:17-cv-00137-JAM-DB<br><br>PLAINTIFF'S SEPARATE STATEMENT OF DISPUTED MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Date: September 10, 2019<br>Time: 1:30 p.m.<br>Location: Courtroom 6 - 14th Floor<br>Robert T. Matsui United States Courthouse<br>501 I Street<br>Sacramento, CA  95814<br><br>**Hon. John A. Mendez** |

Pursuant to E.D. Cal. L.R. 260(b), Plaintiff Jason Anderson ("Plaintiff") submits the

following separate statement of disputed material facts in opposition to Defendants City of Vallejo,

Case No. 2:17-cv-00137-JAM-DB

**PLAINTIFF'S SEPARATE STATEMENT OF DISPUTED MATERIAL FACTS**

Officers Robert Herndon, James Melville, and Joseph Coelho's (collectively, "Defendants") motion for summary judgment.

| # | PLAINTIFF'S DISPUTED FACTS | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|
| 1. | From 2008 to 2015, Plaintiff Jason Anderson (hereinafter "Plaintiff"), owned and operated, auto transportation company, Anderson Auto Transport. | (Declaration of K. Chike Odiwe ("Odiwe Decl."), Ex. 1 [Anderson Depo] at 16:4-24). |
| 2. | On the morning of June 9, 2015, Plaintiff had a work order to pick up two vehicles that were to be transported to AutoLinx Car Dealership in Vallejo, CA. Plaintiff drove to the car auction in Tracy, CA to pick up the first vehicle, then drove to the car auction in Hayward, CA to pick up the second vehicle. | (Odiwe Decl., Ex. 1 [Anderson Depo.] at 21-23: 13-5). |
| 3. | As Plaintiff drove on Sonoma Boulevard towards AutoLinx, he stopped at a stopping point that appeared to be created for purposes related to the construction work that was happening in the area. Officer Melville pulled alongside Plaintiff and ordered him to pull over. Plaintiff asked officer Melville why he had to pullover. | (Odiwe Decl., Ex. 1 [Anderson Depo.] at 42-43:7-20). |
| 4. | While stopped in the construction zone, | (Odiwe Decl., Ex. 1 [Anderson Depo.] at |

| # | **PLAINTIFF'S DISPUTED FACTS** | **PLAINTIFF'S SUPPORTING EVIDENCE** |
|---|---|---|
|  | Plaintiff observed that there was not an area to his right or to his left where he could safely pull his commercial truck over. Plaintiff estimated that he was one block away from AutoLinx, his vehicle drop-off destination, when officer Melville attempted to pull him over. Plaintiff told officer Melville that he was on his way to drop off cars at AutoLinx. Plaintiff pointed to AutoLinx and told officer Melville that he would stop at AutoLinx. | 113-114:23-14). |
| 5. | Plaintiff proceeded towards AutoLinx. | (Odiwe Decl., Ex. 1 [Anderson Depo.] at 43-44:21-4). |
| 6. | After Plaintiff arrived at AutoLinx, he exited his truck, and began the process of unloading the vehicles from his commercial trailer. | (Odiwe Decl., Ex. 1 [Anderson Depo.] at 49:13-22). |
| 7. | Plaintiff went to his toolbox to get gloves to begin the process of unstrapping the vehicles from the trailer. Plaintiff was not stopped by any officer before he retrieved his gloves from his toolbox. | (Odiwe Decl., Ex. 1 [Anderson Depo.] at 55:7-24). |
| 8. | Plaintiff made his way to the rear of his trailer when multiple officers arrived on the scene. Defendants Herndon and | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 49-50:23-10; 58:18-22; and 64:16-18); (Odiwe Decl., Ex. 3 [Coelho Depo.] at 47:1-10). |

| # | PLAINTIFF'S DISPUTED FACTS | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|
|  | Coelho as well as multiple unidentified officers immediately drew their firearms and aimed them at Plaintiff. The officers then commanded Plaintiff to put his hands up. |  |
| 9. | Plaintiff put his hands up in order to comply with the officers' commands. | (Odiwe Decl., Ex. 1 [Anderson Depo.] at 58:18-22). |
| 10. | Plaintiff repeatedly told the officers that he was "just working." | (Odiwe Decl., Ex. 1 [Anderson Depo.] at 49-50:23-10; and 58:18-22). |
| 11. | While Plaintiff's hands were in the air, Defendant Herndon deployed his TASER in Dart Mode, without a warning of his intent to do so, striking Plaintiff, and sending a current of electricity through his body. | (Odiwe Decl., Ex. 1 [Anderson Depo.] at 59:2-24; 64:14-19 ); (Odiwe Decl., Ex. 2 [Herndon Depo.] 81:1-2). |
| 12. | Plaintiff collapsed onto his back after getting tased. | (Odiwe Decl., Ex. 1 [Anderson Depo.] at 59:2-24). |
| 13. | After Plaintiff collapsed, multiple officers commanded him to roll over onto his stomach. Plaintiff repeatedly told the officers that he could not roll over because of the effect of the Taser | (Odiwe Decl., Ex. 1 [Anderson Depo.] at 64:4-19; 68-69:12-1; 69:3-25; and 72:22-24). |

| # | PLAINTIFF'S DISPUTED FACTS | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|
|  | deployment. Even still, Defendant Herndon continued to tase Plaintiff multiple while he was on his back and could not move. |  |
| 14. | Multiple officers struck Plaintiff with their hands, knees, and elbows around his torso area while he was on the ground. | (Odiwe Decl., Ex. 1 [Anderson Depo.] at 74:1-24). |
| 15. | Defendant Herndon knew that Plaintiff was driving a commercial truck and he believed that Plaintiff was delivering cars. Defendant Herndon did not have any information that Plaintiff was armed or dangerous. | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 40:24-25; 41:1-5; 64:19-21;65:4-6; and 65:16). |
| 16. | After Plaintiff got out of his work truck he did not verbally threaten to harm anybody, did not get into fighting stance, did not charge at any of the officers on the scene, and did not have a weapon in | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 44:23-25; and 45:1-14). |

| # | PLAINTIFF'S DISPUTED FACTS | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|
| | his hand. | |
| 17. | When Defendant Herndon was questioned at his deposition as to whether Plaintiff posed a threat of harm when he observed him attempting to get up, Herndon replied, "he was just trying to get up. He was on his back, and he was trying to get back up." | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 83:8-15). |
| 18. | Defendant Herndon states that when he observed Plaintiff attempt to get up after being tased the first time that Plaintiff did not verbally express any threats towards the officers, did not ball his fists, and did not have a weapon in his hands. Further, Plaintiff did not say anything that indicated that he was resisting arrest. | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 83:24-25; 84:1-11; 71:14-25; 72:1). |
| 19. | Defendant Herndon tased Plaintiff a second time while he was on the ground. | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 84:20-22; 85:4-10). |
| 20. | According to Defendant Herndon, as soon as the second cycle of the TASER | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 85:4-10). |

| # | PLAINTIFF'S DISPUTED FACTS | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|
|  | ended it appeared to him that Plaintiff again was attempting to get up. |  |
| 21. | Herndon admits that when he observed Plaintiff attempt to get up after being tased the second time that Plaintiff did not verbally express any threats towards the officers, did not ball his fists, and did not have a weapon in his hands. | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 85:12-20) |
| 22. | Defendant Herndon testified at his deposition that Plaintiff posed a threat of harm before he tased him the second time because of the *potential* that Plaintiff could get up and attack the officers. | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 85:4-10). |
| 23. | Defendant Herndon ran a third cycle of his TASER on Plaintiff. Plaintiff was handcuffed after the third cycling of the taser. | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 86:9-14). |
| 24. | On the date on the incident, Defendant Herndon used a Model X26 TASER, Serial Number X00-066754. The X26 TASER has a memory device that records each trigger pull in terms of date, time and duration, and does not override itself until around 1500 separate events | (Odiwe Decl., Ex. 4 [Clark Depo.] at 51-53:3-5); (Odiwe Decl., Ex. 5 [Herndon Taser Log.]) |

| # | PLAINTIFF'S DISPUTED FACTS | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|
| | that are recorded. The separate events from each Model X26 TASER device can be downloaded and printed out as a report. | |
| 25. | The printout of Defendant Herndon's TASER report shows the events related to the tasing of Plaintiff. The event numbers are 43 to 46. | (Odiwe Decl., Ex. 4 [Clark Depo.] at 51-53:3-5) |
| 26. | Event Number 43, occurred on June 9, 2015 at 12:33:41 and lasted for six seconds, meaning that Defendant Herndon pulled the trigger at 12:33:35. | (Odiwe Decl., Ex. 4 [Clark Depo.] at 51-53:3-5) |
| 27. | Event Number 44 ends at 12:33:47 and is cited as a three-second cycle -- meaning that the trigger was pulled at 12:33:44 -- three seconds after the initial cycle of the TASER ended. | (Odiwe Decl., Ex. 4 [Clark Depo.] at 51-53:3-5) |
| 28. | Event Number 45 ends at 12:33:49 and goes for two seconds which means that Defendant Herndon pulled the trigger at 12:33:47, the end time of Event Number 44. | (Odiwe Decl., Ex. 4 [Clark Depo.] at 51-53:3-5) |
| 29. | Once the trigger on a Model X26 TASER | (Odiwe Decl., Ex. 4 [Clark Depo.] at 51- |

| # | **PLAINTIFF'S DISPUTED FACTS** | **PLAINTIFF'S SUPPORTING EVIDENCE** |
|---|---|---|
|  | is pulled, it cycles for five seconds unless it is manually manipulated. An officer can stop the device from performing a full five second cycle by lifting their finger from the trigger or an officer can extend the duration of the cycle by keeping their finger on the trigger beyond the five second cycle. | 53:3-5) |
| 30. | An audio recording immediately after the incident captured Defendant Herndon, Defendant Melville and Sergeant Steven Gordon fabricating a story and attempting to develop a justification for tasing Plaintiff. | (Odiwe Decl., Ex. 6 [Audio After the Incident]). |
| 31. | On the recording, Defendant Herndon is heard inquiring how to deal with Plaintiff being 'tased on video.' In reference to justifying the tasing, Defendant Herndon is heard saying, "well he was running." (Defendant Herndon then states that "It looked like he was running…It look like he was gonna grab a …" In response to Defendant Herndon, Sergeant Gordon immediately tells him to "get your story straight." Defendant Herndon then offered that it looked like Plaintiff was | (Odiwe Decl., Ex. 6 [Audio After the Incident]); (Odiwe Decl., Ex. 2 [Herndon Depo.] at 91-97:18-21). |

| # | PLAINTIFF'S DISPUTED FACTS | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|
|  | "gonna to grab a tool out of his toolbox." Defendant Herndon then changed the justification by saying, "no. he looked like he was gonna run. Would you shut up and listen." |  |
| 32. | Sergeant Gordon was the highest-ranking officer to arrive at the scene of Plaintiff's arrest. | (Odiwe Decl., Ex. 7 [Defendant City of Vallejo's Response to Plaintiff's Request for Admissions, Set One.] |
| 33. | Sergeant Gordon and Defendants Melville, Coelho, Herndon did not receive any remedial training or discipline from the Vallejo Police department as a result of their conduct during Plaintiff's arrest. | (Odiwe Decl., Ex. 7 [Defendant City of Vallejo's Response to Plaintiff's Request for Admissions, Set One.] |
| 34. | No member of the Vallejo Police Department received remedial training or discipline from the Vallejo Police department as a result of their conduct during Plaintiff's arrest. | (Odiwe Decl., Ex. 7 [Defendant City of Vallejo's Response to Plaintiff's Request for Admissions, Set One.] |
| 35. | Defendant Herndon understands that the policy of the Vallejo Police Department is that a verbal warning should be given to a suspect before a TASER is deployed. | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 79:3-12). |

| # | PLAINTIFF'S DISPUTED FACTS | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|
| 36. | Defendant Herndon understands that it is policy of the Vallejo Police Department that the fact that a verbal or other warning was given or the reason it was not given shall be documented by the officer deploying the TASER device in the related report. | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 79-80:3-3). |
| 37. | Defendant Herndon does not believe that he warned Plaintiff that he intended to deploy his TASER before he tased Plaintiff. | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 79:3-12). |
| 38. | Defendant Herndon failed to document whether he warned Plaintiff that he intended to deploy his TASER in his police report. | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 79-80:13-17). |
| 39. | Defendant Herndon failed to document the reason why he failed to give Plaintiff a TASER warning in his police report. | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 79-80:13-17). |
| 40. | Defendant Herndon understands from his training as a police officer that it is wrong to deploy his TASER on an unresisting individual that does not pose a threat of harm. | (Odiwe Decl., Ex. 2 [Herndon Depo.] at 57-58:13-6). |

1  Respectfully submitted,

2  August 27, 2019

                            **LAW OFFICES OF JOHN L. BURRIS**

By:  */s/ K. Chike Odiwe*
      K. Chike Odiwe, Esq.
      *Attorney for Plaintiff*
      JASON ANDERSON